IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, *et al.*, <br><br> *Plaintiffs*, <br> v. <br><br> JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*, <br><br> *Defendants*. | Case No: 5:21-cv-01136-F |

### Declaration of The Acting Adjutant General, Brigadier General Thomas H. Mancino

1. I am Thomas H. Mancino. I received my undergraduate degree from Oklahoma State University in 1988. I graduated from the University of Oklahoma College of Law in 1997. I also attended the Harvard Kennedy School as a National Security Fellow in 2013-14.

2. I currently serve as the Acting Adjutant General of Oklahoma. I have held this post since November 2021. Prior to holding this position, I served as Assistant Adjutant General in Oklahoma City, Oklahoma. I held that position from September 2019 through November 2021.

3. Prior to holding the position of Assistant Adjutant General, I served as Commander, 90th Troop Command, Oklahoma City, Oklahoma. I did so from July 2018 through September 2019.

4. I have been informed by the United States Department of Defense that Exec. Order No. 14043, *Requiring Coronavirus Disease 2019 Vaccination for Federal Employees*, 86 Fed. Reg. 50989 (Sept. 9, 2021) ("EO 14043"), applies to Oklahoma Guard members.

5. Many of the men and women who serve in the Oklahoma Air National Guard face imminent, irreparable harm from failing to comply with the Department of Defense ("DoD") Vaccine Mandate. As a practical matter, the DoD is using its control over the apparatus of military pay to unconstitutionally "govern" the Oklahoma National

Guard ("OKNG"). These actions are against the express orders of the OKNG's Commander in Chief ("CnC"), Governor Kevin J. Stitt.

6. The DoD is unlawfully and unconsitutionaly using its control of the mechanism of military pay to constructively terminate airmen without proper consideration for the rule of law or due process. As of December 1, no pay will be authorized for Air National Guard members who are unvaccinated.

7. The inability to pay Airmen, despite having the congressionaly appropriated funds and legislative authority to do so, will result in constructive termination of their employment, given these Airmen will have to work for free or suffer discharge. This could result in a negative characterization of their service that has lifetime implications. Additionally, they will be subject to immense repercussions, including the recoupment of training dollars, loss of educational benefits, and more.

8. The deadline for vaccination for Oklahoma Air National Guard members varies. The Oklahoma Military Department ("OMD") is an agency of the government of the State of Oklahoma. It is staffed by a complex interconnected web of employees and military members in a number of different capacities, including:

    (a) Title 5 Federal Technicians: These are non-uniformed full time DoD civilian employees. Their service is not tied to military service. Their deadline for vaccination was November 22.

    (b) Title 32 Technicians: These are uniformed full time DoD civilian employees under the control of the Governor under Title 32. Even though these employees wear a uniform on a daily basis, they are not in a full-time military status. However, their employment is conditional on them maintaining their military status. This class of employees suffers irreparable harm from the vaccine mandate on employees. If an employee in this class is forced out of her military membership, she will also lose her civilian job. For Title 32 Technicians, the deadline for vaccination as federal employees was November 22 or, as military members, is December 31.

    (c) Title 32 Active Guard and Reserve ("AGR"): AGRs are full time uniformed service members. They are analogous to active-duty military personnel but are appointed by and under the command of the Governor. Their deadline for vaccination is December 31.

    (d) Drill Status Guardsmen ("DSG"): DSGs make up the bulk of the military membership of the Oklahoma National Guard. They are traditional national guardsmen serving at a minimum, one weekend a month and two weeks in the summer. Their deadline for vaccination is December 31.

9. I have been made aware that the United States Secretary of Defense, Lloyd Austin wrote to Governor J. Kevin Stitt of Oklahoma on November 29 of this year suggesting that the President has the authority under Title 32, specifically 32 U.S.C. § 110, to mandate this vaccine on members of the Oklahoma National Guard. *See* Letter from Sec. Austin to Gov. Stitt, Nov. 29, 2021. For reasons that follow in this exhibit, and with all respect to the Secretary, that invocation as statutory authority is misplaced and inaccurate.

10. Pursuant to Secretary of the Air Force, Frank Kendall's Memorandum dated December 7, 2021, and titled *Supplemental Coronavirus Disease 2019 Vaccination Policy*, many Oklahoma Guard members would be classified by December 31, 2021, as having declined to be vaccinated. That would lead to their inability to be paid and eventually their discharge from service. Such a course of action would be unlawful and inflict irreparable unconstitutional harm to the discharged Guard members as well as the prerogatives and sovereignty of the State of Oklahoma. Moreover, the vaccine mandate's imposition on Oklahoma National Guard members directly commandeers the resources of the State of Oklahoma and the Governor as CnC.

11. My conclusions are based on the following principles: (1) Guard members not mobilized under Title 10 orders are under Title 32 authority, under which it is the *Governor of Oklahoma* who is the Commander-in-Chief of the Oklahoma National Guard; (2) Per my order (at Governor Stitt's direction), no Oklahoma National Guard member would be forced to be vaccinated against COVID-19; and (3) Per my order (at Governor Stitt's direction), no adverse actions would be taken against any Oklahoma National Guard member for his or her failure to be vaccinated against COVID-19.

12. Under Title 32, Congress established a dual framework for the National Guard. *See, e.g.*, 32 U.S.C. § 325. The States were authorized to receive federal funding in exchange for being made available to the federal government when called into active duty by the President of the United States, and training to a common standard.

13. Under Title 32, the Oklahoma National Guard is a state-controlled and federally-funded entity and takes orders from the Governor of Oklahoma and his designated chain of command. The Adjutant General is that designee in Oklahoma. Only when mobilized by the President under Title 10 does the Oklahoma National Guard take its orders from the President and his designated chain of command.

14. Until a Guard member is mobilized by the President under Title 10, he or she follows the orders of the Governor of Oklahoma, who has declined to mandate the COVID-19 vaccine for the Oklahoma National Guard. Once mobilized under Title 10,

Guard members are *subject to all Title 10-based orders* until they return to the State's Title 32 authority.

15. It is my opinion, as well as the opinions of multiple National Guard Judge Advocate General ("JAG") officers with whom I have consulted, and the findings of a written ethics opinion, that this was a lawful order of the Governor and must be followed while the National Guard was under Title 32 authority.

16. That is why I previously have publicly stated: "If [Oklahoma National Guard members] are not mobilized on Title 10 orders, the only entity that can give [National Guard members] a 'lawful' order - that is an order backed by the authority of law - is the Governor and his designated State chain of command. That 'law' is Title 32 U.S. code." Statement on COVID vaccination policy, Oklahoma National Guard, https://ok.ng.mil/News/Article/2842627/statement-on-covid-vaccination-policy/. I added: "This [concept] is easily seen by the fact that the [Uniform Code of Military Justice (UCMJ)] does not apply to [National Guard members] in Title 32 status. Instead, [National Guard members] are governed by the Oklahoma Code of Military Justice (OCMJ)." *Id.*

17. It is a well-established legal principle that Governors of the States are the Commanders–in–Chief of their National Guards. *See Gilbert v. United States*, 165 F.3d 470, 473 (6th Cir. 1999). Unless and until Guard members are called into federal service, they remain state officers with the governors as their commanders-in-chief. *See id.* That is why the United States Supreme Court, in *Perpich v. Dep't of Defense*, 496 U.S. 334, 345 (1990), declared that "unless and until ordered to active duty in the Army, [Guardsmen] retained their status as members of a separate State Guard unit."

18. It follows—and has long been thus understood—that "[e]xcept when employed in the service of the United States, officers of the National Guard continue to be officers of the state and not officers of the United States or of the Military Establishment of the United States." *United States v. Dern*, 74 F.2d 485, 487 (D.C. Cir. 1934).

19. The Tenth Circuit observed almost a quarter century ago that "[g]uardsmen do not become part of the Army itself until such time as they may be ordered into active federal duty by an official acting under a grant of statutory authority from Congress." *United States v. Hutchings*, 127 F.3d 1255, 1258 (1997).

20. It is only when "that triggering event occurs [does] a Guardsman become[] a part of the Army and lose his status as a state serviceman." *Id.*; *see generally* Steven B. Rich, *The National Guard, Drug Interdiction and Counterdrug Activities and Posse*

*Comitatus: The Meaning and Implications of "in Federal Service,"* 1994 Army Law. 16.

21. That the federal government might fund any part of the compensation of National Guard members or the National Guard's budget is legally irrelevant, as the Title 10/Title 32 distinction is sacrosanct.

22. As the Sixth Circuit noted in *Gilbert*, "[t]he issue of status depends on command and control and not on whether: state or federal benefits apply; state or federal funds are being used; the authority for the duty lies in state or federal law; or any combination thereof." 165 F.3d at 473 (cleaned up). In fact, the Gilbert court stated that "[a]lthough National Guard members receive federal pay and allowances ... while performing full-time National Guard Duty, they remain members of the state National Guard and *not* members on active duty in federal service with the United States [Department of Defense]." *Id.* (emphasis added).

23. This prevailing legal view is also consistent with, and required by, the Posse Comitatus Act ("PCA"), 18 U.S.C. § 1385, which states: "Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both."

24. The PCA kept the state and federal chains of command distinct and separate to protect the sovereignty of the States but also to stop the military from "aid[ing] civil authorities in the enforcement of civilian laws." *Gilbert*, 165 F.3d at 472. An older version of the current PCA was enacted by Congress in 1878 as a reaction to military abuses occurring in some parts of the South in the Civil War's immediate aftermath. *See id.*; *United States v. Hartley*, 486 F. Supp. 1348, 1356 (M.D. Fla. 1980). "The [PCA] reflects a concern, which antedates the Revolution, about the dangers to individual freedom and liberty posed by use of a standing army to keep civil peace." *Gilbert*, 165 F.3d at 472 (citing David E. Engdahl, *Soldiers, Riots and Revolution: The Law and History of Military Troops in Civil Disorders*, 57 Iowa L. Rev. 1 (1971)).

25. Nor does anything else in the U.S. Code authorize this executive branch intrusion into the Oklahoma National Guard. 32 U.S.C. § 108 only permits the President to deprive "the National Guard [of a State] ... from receiving money or any other aid, benefit, or privilege authorized by law" if that State has violated some pertinent statutory or regulatory provision covered by Title 32. *See id.*

26. Furthermore, contrary to Secretary Austin's suggestion in his November 29 letter to Governor Stitt, 32 U.S.C. § 110—"The President shall prescribe regulations, and issue orders, necessary to organize, discipline, and govern the National Guard"—this section does not authorize vaccine mandates imposed on National Guard members either. Neither the ordinary, contemporary meaning of "organize" nor that of "discipline" has anything to do with the imposition of a vaccine mandate. Nor still does "govern" in this context because a vaccine mandate is not "necessary," as Section 110 requires that it be for the functioning of the National Guard. This is because, from coast to coast, National Guards have been functioning without interruption in service or quality for almost two years since the COVID-19 outbreak. Another reason is that the Supreme Court repeatedly has admonished courts not to assume that Congress implicitly has delegated questions of "'deep economic and political significance'" to the Executive Branch. *Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.*, 141 S. Ct. 2485, 2489 (2021) (quoting *Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 324 (2014)). In fact, a clear statement from Congress is required before the courts are permitted to so infer. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000). And finally, the "govern[ance]" of which Section 108 speaks can pertain only to the National Guard when it is federally mobilized. That would be consistent with the judicial duty to avoid serious constitutional questions, *see Jones v. United States*, 529 U.S. 848, 858 (2000); *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916), like the grave federalism questions a contrary approach would trigger; as well as to interpret this clause of Section 108 most naturally and in harmony with the rest of the statute, *see Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989).

27. By excerting consititional and legal authorities against the State of Oklahoma's National Guard, the Executive Branch are aggressively encroaching on the sovereignty, laws, public policy, and resources of the State of Oklahoma. The harm is irreparable because the State and it's Governor, does not wish to have its resources—here, the National Guard—subject to the vaccine mandate. Such forced federal commandeering risks turning Oklahoma into a vassal state, whose resources, including its National Guard, are at the Executive's disposal without being mobilized under Title 10 in violation of the constitution. That irreparable harm will be finalized no later than December 31, 2021, thus necessitating this Court's expeditious intervention.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on December 15, 2021.

_____
Thomas H. Mancino
The Acting Adjutant General of Oklahoma