## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

STATE OF OKLAHOMA, *et al.*,

    Plaintiffs,

       v.

JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*,

    Defendants.

Civil Action 21-1136-F

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................ 3

I.     Department Of Defense COVID-19 Vaccination Directive .......................... 3

II.    Organization And Regulation Of The National Guard ................................ 5

III.   Executive Order 14043 ................................................................................ 6

IV.   This Lawsuit .................................................................................................. 7

LEGAL STANDARD ........................................................................................ 7

ARGUMENT ...................................................................................................... 8

I.     Plaintiffs Fail To Challenge The Order Governing The National Guard, Which Is Unquestionably Lawful. .................................................................. 8

II.    Plaintiffs' Challenge To EO 14043 Fails On Threshold Grounds. ..................11

    A.    Plaintiffs Lack Standing. ........................................................................11

         1.    The Individual Plaintiffs Lack Standing. ...........................................12

              a)    The Court Lacks Jurisdiction Over The Anonymous Individual Plaintiffs. ...............................................................12

              b)    No Individual Plaintiff Has Standing To Challenge EO 14043......12

              c)    Plaintiffs Have Not Exhausted Available Remedies. .....................14

         2.    Oklahoma Lacks Standing. ...............................................................15

         3.    Plaintiffs Fail To Adequately Allege That The Relief They Seek Can Redress Their Injuries...............................................................18

III.   Plaintiffs Fail To Establish Irreparable Injury. ............................................ 20

IV.   Plaintiffs Are Unlikely To Succeed On The Merits Of Their Challenge To EO 14043............................................................................... 23

    A.    EO 14043 Is A Valid Exercise Of The President's Constitutional And Statutory Authority...............................................................................23

         1.    The Civil Service Statutes Do Not Create A Private Right Of Action....23

         2.    EO 14043 Falls Within The President's Constitutional And Statutory Authority. .........................................................................25

         3.    The Major Questions Doctrine Does Not Apply. .............................27

    B.    Plaintiffs' APA Claim Fails.....................................................................28

         1.    The CSRA Precludes Jurisdiction Over Plaintiffs' APA Claim. ...............28

         2.    Plaintiffs Do Not Challenge Reviewable Agency Action. .........................29

         3.    Plaintiffs' APA Claim Fails On The Merits.................................................30

C.     Plaintiffs' Tenth Amendment Claim Fails.................................................32

D.     Plaintiffs' Nondelegation Claim Fails. .................................................34

E.     Plaintiffs' Fourth Amendment Claim Fails. .........................................35

F.     Plaintiffs' Take Care Clause And Separation Of Powers Claim Fails. ..............37

**V.     The Equities And Public Interest Weigh Against Injunctive Relief................ 37**

**CONCLUSION............................................................................................................ 40**

# TABLE OF AUTHORITIES

**CASES**

*Advance Am. v. FDIC,*
   No. 14-593, 2017 WL 2672741 (D.D.C. Feb. 23, 2017)..........................................................13

*Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.,*
   141 S. Ct. 2485 (2021).................................................................................................................28

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
   458 U.S. 592 (1982).....................................................................................................................17

*Am. Fed. of Gov't Emps. v. Hoffman,*
   543 F.2d 930 (D.C. Cir. 1976) ....................................................................................................26

*Armstrong v. Exec. Off. of the President,*
   90 F.3d 553 (D.C. Cir. 1996) ......................................................................................................29

*B.A.B., Jr. v. Board of Education of the City of St. Louis,*
   698 F.3d 1037 (8th Cir. 2012).....................................................................................................36

*Bennett v. Spear,*
   520 U.S. 154 (1997).....................................................................................................................29

*Blevins v. Werholtz,*
   No. 09-3033-SAC, 2009 WL 539913 (D. Kan. Mar. 4, 2009)................................................ 8-9

*Bois v. Marsh,*
   801 F.2d 462 (D.C. Cir. 1986) ....................................................................................................40

*Bors v. Allen,*
   607 F. Supp. 2d 204 (D.D.C. 2009) ............................................................................................21

*Brendlin v. California,*
   551 U.S. 249 (2007).....................................................................................................................36

*Bridges v. Hous. Methodist Hosp.,*
   --- F. Supp. 3d ---, 2021 WL 2399994 (S.D. Tex. June 12, 2021) ...........................................23

*Chappell v. Wallace,*
   462 U.S. 296 (1983).....................................................................................................................40

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
   467 U.S. 837 (1984) ................................................................27

*Chilcott v. Orr,*
   747 F.2d 29 (1st Cir. 1984) ........................................... 21, 40

*Church v. Biden,*
   No. 21-cv-2815, 2021 WL 5179215 (D.D.C. Nov. 8, 2021) ............................................*passim*

*Clarry v. United States,*
   85 F.3d 1041 (2d Cir. 1996) ...........................................26

*Colorado v. EPA,*
   989 F.3d 874 (10th Cir. 2021) ........................................20

*CREW v. Off. of Admin.,*
   566 F.3d 219 (D.C. Cir. 2009) .......................................29

*Ctr. for Biological Diversity v. U.S. Dep't of Interior,*
   563 F.3d 466 (D.C. Cir. 2009) .......................................15

*Cuba Soil & Water Conservation Dist. v. Lewis,*
   527 F.3d 1061 (10th Cir. 2008) ......................................24

*Dalton v. Spector,*
   511 U.S. 462 (1994) .....................................................37

*Diraffael v. Cal. Mil. Dep't,*
   No. 10-cv-7240, 2011 WL 13274364 (C.D. Cal. Mar. 21, 2011)............................14

*Doe #1–14 v. Austin,*
   --- F. Supp. 3d ----, 2021 WL 5816632 (N.D. Fla. Nov. 12, 2021)....................4

*Doe v. Bd. of Educ. of City of Chi.,*
   --- F. Supp. 3d ----, 2020 WL 1445638 (N.D. Ill. Mar. 24, 2020) .........................36

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.,*
   269 F.3d 1149 (10th Cir. 2001)...................................... 7, 22

*Dowds v. Bush,*
   792 F. Supp. 1289 (D.D.C. 1992).....................................21

*Dyer v. Dep't of the Air Force,*
   971 F.3d 1377 (Fed. Cir. 2020) ......................................25

*Elgin v. Dep't of Treasury,*
  567 U.S. 1 (2012) ........................................................................................24, 28, 30

*Farris v. Rice,*
  453 F. Supp. 2d 76 (D.D.C. 2006) ...............................................................21

*FCC v. Fox Television Stations, Inc.,*
  556 U.S. 502 (2009) ......................................................................................32

*FDA v. Brown & Williamson Tobacco Corp.,*
  529 U.S. 120 (2000) ...............................................................................27-28

*Femedeer v. Haun,*
  227 F.3d 1244 (10th Cir. 2000)....................................................................12

*Florida v. U.S. Dep't of Health & Human Servs.,*
  ---F.4th ----, 2021 WL 5768796 (11th Cir. Dec. 6, 2021)...................15, 17, 20, 28

*Franklin v. Massachusetts,*
  505 U.S 788 (1992) ................................................................................18, 29

*Franks v. Nimmo,*
  683 F.2d 1290 (10th Cir. 1982)....................................................................22

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
  561 U.S. 477 (2010) ......................................................................................25

*Gaytan v. New Mexico,*
  No. 19-cv-0778, 2021 WL 1634383 (D.N.M. Apr. 27, 2021) ..................36

*Giesler v. Merit Sys. Prot. Bd. of the U.S.,*
  686 F.2d 844 (10th Cir. 1982).......................................................................26

*Gonzaga Univ. v. Doe,*
  536 U.S. 273 (2002)......................................................................................24

*GTE Corp. v. Williams,*
  731 F.2d 676 (10th Cir. 1984)......................................................................23

*Guerra v. Scruggs,*
  942 F.2d 270 (4th Cir. 1991).................................................................21, 40

*Guitard v. U.S. Sec'y of Navy,*
   967 F.2d 737 (2d Cir. 1992) ............................................................................21

*Gundy v. United States,*
   139 S. Ct. 2116 (2019) ...........................................................................34-35

*Habecker v. Town of Estes Park,*
   518 F.3d 1217 (10th Cir. 2008) .......................................................................18

*Hartikka v. United States,*
   754 F.2d 1516 (9th Cir. 1985) ........................................................................21

*Hays Med. Ctr. v. Azar,*
   956 F.3d 1247 (10th Cir. 2020) ..................................................................30-31

*Hill v. Dep't of Air Force,*
   844 F.2d 1407 (10th Cir. 1988) .......................................................................30

*Hodel v. Va. Surface Mining & Reclamation Ass'n,*
   452 U.S. 264 (1981) ............................................................................17, 32-33

*Hollingsworth v. Perry,*
   570 U.S. 693 (2013) ......................................................................................15

*Houston v. Moore,*
   18 U.S. (5 Wheat) 1 (1820) ...............................................................................9

*In re MCP No. 165,*
   --- F., 4th ----, 2021 WL 5989357 (6th Cir. Dec. 17, 2021) .............................27-28

*In re Nat'l Sec. Agency Telecomms. Recs. Litig.,*
   671 F.3d 881 (9th Cir. 2011) .........................................................................35

*Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.,*
   448 U.S. 607 (1980) ......................................................................................35

*Kan. Health Care Ass'n v. Kan. Dep't of Soc. & Rehab. Servs.,*
   31 F.3d 1536 (10th Cir. 1994) ........................................................................23

*Kelley v. United States,*
   69 F.3d 1503 (10th Cir. 1995) ........................................................................33

*KeyView Labs, Inc. v. Barger,*
   No. 20-cv-2131, 2020 WL 8224618 (M.D. Fla. Dec. 22, 2020) .............................12

*KH Outdoor, LLC v. Clay Cnty.*,
    482 F.3d 1299 (11th Cir. 2007)......................................................................19

*Klaassen v. Trs. of Ind. Univ.*,
    --- F. Supp. 3d ---, 2021 WL 3073926 (N.D. Ind. July 18, 2021)...................23, 37

*Massachusetts v. EPA*,
    549 U.S. 497 (2007).....................................................................................15

*McCray v. Biden*,
    No. 21-2882, 2021 WL 5823801 (D.D.C. Dec. 7, 2021) .................................14, 19

*McCurdy v. Zuckert*,
    359 F.2d 491 (5th Cir. 1966)........................................................................21

*Mississippi v. Johnson*,
    71 U.S. (4 Wall.) 475 (1866) .......................................................................37

*Mistretta v. United States*,
    488 U.S. 361 (1989)....................................................................................34

*Morris v. Noe*,
    672 F.3d 1185 (10th Cir. 2012).....................................................................36

*NASA v. Nelson*,
    562 U.S. 134 (2011)....................................................................................33

*Nat'l Commodity & Barter Ass'n v. Gibbs*,
    886 F.2d 1240 (10th Cir. 1989).....................................................................12

*Navy Seal 1 v. Biden*,
    --- F. Supp. 3d ----, 2021 WL 5448970 (M.D. Fla. Nov. 22, 2021) ..................4, 18

*Newdow v. Roberts*,
    603 F.3d 1002 (D.C. Cir. 2010) ....................................................................18

*Nken v. Holder*,
    556 U.S. 418 (2009).....................................................................................37

*Norris v. Stanley*,
    --- F. Supp. 3d ---, 2021 WL 4738827 (W.D. Mich. Oct. 8, 2021) .....................37

*Noyd v. McNamara,*
    378 F.2d 538 (10th Cir. 1967) ................................................................................14

*Okla ex rel. Okla. Dep't of Pub. Safety v. United States,*
    161 F.3d 1266 (10th Cir. 1998) .............................................................................32

*Orloff v. Willoughby,*
    345 U.S. 83 (1953) .................................................................................................40

*Petrini v. Howard,*
    918 F.2d 1482 (10th Cir. 1990) .............................................................................25

*Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health,*
    699 F.3d 962 (7th Cir. 2012) .................................................................................36

*Port City Props. v. Union Pac. R. Co.,*
    518 F.3d 1186 (10th Cir. 2008) .............................................................................21

*Prairie Band of Potawatomi Indians v. Pierce,*
    253 F.3d 1234 (10th Cir. 2001) .............................................................................20

*Reedy v. Werholtz,*
    660 F.3d 1270 (10th Cir. 2011) .............................................................................36

*Reinhard v. Johnson,*
    209 F. Supp. 3d 207 (D.D.C. 2016) ................................................................ 21, 40

*Rodden v. Fauci,*
    No. 21-cv-317, 2021 WL 5545234 (S.D. Tex. Nov. 27, 2021) ..............................7, 14, 19, 29

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
    141 S. Ct. 63 (2020) ...............................................................................................38

*Rostker v. Goldberg,*
    453 U.S. 57 (1981) .................................................................................................30

*Rydie v. Biden,*
    No. 21-cv-2696, 2021 WL 5416545 (D. Md. Nov. 19, 2021) ............................*passim*

*Sampson v. Murray,*
    415 U.S. 61 (1974) ............................................................................................21-22

*Schmerber v. California,*
    384 U.S. 757 (1966) ...............................................................................................36

*Schrier v. Univ. of Colo.*,
   427 F.3d 1253 (10th Cir. 2005).................................................................22

*Schroder v. Bush*,
   263 F.3d 1169 (10th Cir. 2001).................................................................16

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
   140 S. Ct. 2183 (2020)..............................................................................25

*Serv. Emps. Int'l Union Local 200 United v. Trump*,
   419 F. Supp. 3d 612 (W.D.N.Y. 2019) .....................................................34

*Shaw v. Austin*,
   --- F. Supp. 3d ----, 2021 WL 1840397 (D.D.C. May 7, 2021)......................... 21, 40

*Skinner v. Ry. Labor Execs.' Ass'n*,
   489 U.S. 602 (1989)...................................................................................36

*Smith v. Biden*,
   No. 21-cv-19457, 2021 WL 5195688 (D.N.J. Nov. 8, 2021).............................*passim*

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 84 (1998).....................................................................................11

*Steele v. United States*,
   19 F.3d 531 (10th Cir. 1994)......................................................................25

*Stone v. Austin*,
   No. 21-cv-4822, 2021 WL 4443733 (E.D.N.Y. Sept. 28, 2021) ................4

*Texas v. United States*,
   523 U.S. 296 (1998)...................................................................................14

*Tigges v. Northam*,
   473 F. Supp. 3d 559 (E.D. Va. 2020).........................................................38

*Tompkins v. U.S. Dep't of Veterans Affs.*,
   16 F.4th 733, (10th Cir. 2021).....................................................................28

*Town of Johnston v. FHFA*,
   765 F.3d 80 (1st Cir. 2014)........................................................................33

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ................................................................................. 11, 15

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) ...........................................................................................40

*Trump v. New York*,
    141 S. Ct. 530 (2020) ...................................................................................... 13-14

*United States v Comstock*,
    560 U.S. 126 (2010) .............................................................................................32

*United States v. Easley*,
    911 F.3d 1074 (10th Cir. 2018) ..........................................................................36

*United States v. Fausto*,
    484 U.S. 439 (1988) .............................................................................................25

*United States v. Hatch*,
    722 F.3d 1193 (10th Cir. 2013) ..........................................................................32

*United States v. Jones*,
    565 U.S. 400 (2012) ...................................................................................... 35-36

*United States v. Nichols*,
    184 F.3d 1169 (10th Cir. 1999) ..........................................................................26

*United States v. Poe*,
    556 F.3d 1113 (10th Cir. 2009) ..........................................................................35

*United States v. Smythe*,
    84 F.3d 1240 (10th Cir. 1996) ............................................................................35

*Utah Div. of Consumer Prot. v. Stevens*,
    398 F. Supp. 3d 1139 (D. Utah 2019) ................................................................17

*Utah v. Babbitt*,
    137 F.3d 1193 (10th Cir. 1998) ..........................................................................16

*Utility Air Regulatory Grp. v. EPA*,
    573 U.S. 302 (2014) .............................................................................................28

*Vaughan v. Ky. Army Nat'l Guard*,
    No. 12-cv-35, 2013 WL 211075 (E.D. Ky. Jan. 18, 2013) ................................14

*W.N.J. v. Yocom,*
    257 F.3d 1171 (10th Cir. 2001)................................................................12

*White v. Carlucci,*
    862 F.2d 1209 (5th Cir. 1989)................................................................40

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 471 (2001)................................................................34

*Wilburn v. Dalton,*
    832 F. Supp. 943 (E.D. Pa. 1993)................................................................21

*Wilderness Soc'y v. Kane Cnty.,*
    632 F.3d 1162 (10th Cir. 2011)................................................................16

*Willis v. U.S. Dep't of Health & Human Servs.,*
    38 F. Supp. 3d 1274 (W.D. Okla. 2014)................................................................18

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008)................................................................7, 20, 39

*Wyoming ex rel. Sullivan v. Lujan,*
    969 F.2d 877 (10th Cir. 1992)................................................................15

*Wyoming v. U.S. Dep't of Interior,*
    674 F.3d 1220 (10th Cir. 2012)................................................................15-16

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952)................................................................33

## CONSTITUTION

U.S. Const. art. I ................................................................5, 16

U.S. Const. art. II................................................................25

U.S. Const. art. VI................................................................33

## STATUTES

5 U.S.C. § 701................................................................29

5 U.S.C. § 702................................................................29

5 U.S.C. § 704................................................................................................29

5 U.S.C. § 1214..............................................................................................24

5 U.S.C. § 2105...........................................................................................5-6

5 U.S.C. § 2302.........................................................................................5, 24

5 U.S.C. § 3301................................................................................23, 26, 35

5 U.S.C. § 3302................................................................................23, 26, 35

5 U.S.C. § 7301................................................................................23, 26-27

5 U.S.C. § 7512..............................................................................................24

5 U.S.C. § 7513..............................................................................................24

5 U.S.C. § 7703..............................................................................................24

10 U.S.C. § 10202.........................................................................................10

10 U.S.C. § 10503.........................................................................................10

10 U.S.C. § 12301...........................................................................................5

10 U.S.C. § 12302...........................................................................................5

10 U.S.C. § 12641.........................................................................................10

32 U.S.C. § 108.......................................................................................11, 17

32 U.S.C. § 109..............................................................................................11

32 U.S.C. § 110........................................................................................passim

32 U.S.C. § 301..............................................................................................10

32 U.S.C. § 323..............................................................................................10

32 U.S.C. § 328........................................................................................5, 10

32 U.S.C. § 501...............................................................................................5

32 U.S.C. § 709 .................................................................................1, 5, 19, 25

44 Okla. Stat. Ann. tit. 44, § 23...................................................................... 9, 17

**RULES**

Fed. R. Civ. P 10.................................................................................................12

**REGULATIONS**

Executive Order 12564,
    51 Fed. Reg. 32889 (Sept. 17, 1986) ...........................................................27

Executive Order 14043,
    86 Fed. Reg. 50989 (Sept. 14, 2021) .....................................................*passim*

**OTHER AUTHORITIES**

1 Annals of Cong. 463 (1789)............................................................................25

Alexander Hamilton,
    Federalist No. 29 ...........................................................................................2

CDC COVID Data Tracker Weekly Review (updated Dec. 17, 2021),
    https://perma.cc/QNV6-6HVZ.......................................................................2

CDC, *Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity*
    (updated Oct. 29, 2021), https://perma.cc/CMT3-XU8X....................................31

Cong. Rsch. Serv., Defense Health Primer: Military Vaccinations (updated Aug. 6, 2021),
    https://perma.cc/BMW3-HGJW.....................................................................2

DoD Instruction 6205.02,
    https://perma.cc/ZU4H-CBA3 .......................................................................8

Emily Eslinger & Michael Paradis, Lawfare,
    *Federalism and Coronavirus Vaccination Mandates for Military Personnel* (Dec. 9, 2021),
    https://perma.cc/6KY5-5H4X ........................................................................5

Military Times, *Military COVID-19 Deaths on Upswing as Vaccination Deadlines Pass*
    (Dec. 15, 2021),
    https://perma.cc/T438-3TK5 .........................................................................2

Office of Mgmt. & Budget, Update on Implementation of COVID-19 Vaccination
    Requirement for Federal Employees (Dec. 9, 2021),
    https://perma.cc/V7DR-5NC6.................................................................................31

Pandemic Response Accountability Committee, Top Challenges Facing Federal Agencies
    (June 2020),
    https://perma.cc/9D8L-J5MN ...............................................................................3

Stanley Lemon et al., *Protecting Our Forces: Improving Vaccine Acquisition and Availability in the
    US Military*, National Academies Press (2002),
    https://perma.cc/E545-TQ9G ...............................................................................2

**INTRODUCTION**

This is a case brought by the State of Oklahoma and sixteen pseudonymous members of the Oklahoma Air National Guard ("OKANG") who seek to challenge federal requirements that they receive a COVID-19 vaccination.  Plaintiffs' request for extraordinary preliminary relief fails on numerous grounds.

As an initial matter, Plaintiffs fail to challenge the vaccine requirements that apply to the National Guard.  OKANG members are subject to military vaccine requirements, issued under the President's unambiguous authority to "prescribe regulations, and issue orders, necessary to organize, discipline, and govern the National Guard."  32 U.S.C. § 110.  But instead of challenging the military order issued pursuant to that authority, Plaintiffs challenge Executive Order 14043 ("EO 14043"), which applies to civilian federal employees.  *See* Requiring Coronavirus Disease 2019 Vaccination for Federal Employees, EO 14043, 86 Fed. Reg. 50,989 (Sept. 14, 2021); *see generally* ECF No. 1 ("Compl."); ECF No. 9 ("Mot."). Plaintiffs' motion should be rejected on this basis alone—Plaintiffs' failure to challenge the applicable requirements or even address the proper statutory authority negates every ground they raise for preliminary injunctive relief.

At most, Plaintiffs allege that two members of the OKANG are dual-status technicians under 32 U.S.C. § 709(b), who are simultaneously members of the National Guard and federal civilian employees for certain purposes.  *See* Compl. ¶ 36; *see also* OKANG Member 4 Decl. ¶ 5, ECF No. 32; OKANG Member 13 Decl. ¶ 4, ECF No. 31.  Yet these two individuals have not sought the Court's leave to proceed pseudonymously, so they are not parties to this action under clear Tenth Circuit precedent, and Defendants are unable to discern anything

about their employment status. And because these individuals are unquestionably also subject to the military vaccination order, an injunction against the civilian requirement would bring them no redress. Nor does Oklahoma have standing: a state lacks *parens patriae* standing to sue the federal government, and the injuries Oklahoma claims are purely conjectural.

Even if Plaintiffs could show standing, emergency relief would still be improper because no Plaintiff is facing irreparable injury: National Guard members and civilian federal employees can generally pursue reinstatement with potential back pay if wrongfully discharged, and Oklahoma fails to show that EO 14043 will cause the state to suffer any irreparable injury.

Finally, Plaintiffs cannot show any likelihood of success on the merits. The President has authority under Article II to oversee both the National Guard and the federal workforce. Congress has provided further authority by statute. The EO that Plaintiffs challenge is not subject to arbitrary-and-capricious review under the APA, and if it were, it would easily satisfy that lenient standard. Plaintiffs' various constitutional claims are meritless for the reasons stated more fully below. Finally, the requested injunction would undermine important public interests in public health, military readiness, and the efficiency of the civil service.

The Court should therefore deny Plaintiffs' request for emergency injunctive relief.[1]

---

[1] For the reasons explained herein—including Plaintiffs' failure to challenge the military vaccination requirement that applies to the National Guard—Defendants respectfully submit that Plaintiffs' motion can and should be denied without a hearing. Most importantly, live testimony is unnecessary because the legal issues are dispositive. Moreover, Plaintiffs have already submitted their direct testimony through declarations, Defendants are not seeking to present any additional live testimony, and Defendants do not believe that cross-examination is necessary (though they reserve the right to cross-examine any witnesses who are permitted to present live testimony). Defendants further note that, if a hearing is held, they intend to object to any testimony from pseudonymous Plaintiffs because these individuals have neither sought nor been granted leave to proceed pseudonymously, and Defendants are unable to prepare an effective cross-examination of these individuals without knowing their identities.

## BACKGROUND

The United States is in the midst of the most serious public health crisis it has faced in at least a century. Over 120,000 new COVID-19 infections are being reported in the United States every day. *See* CDC COVID Data Tracker Weekly Review (updated Dec. 17, 2021), https://perma.cc/QNV6-6HVZ. Eighty service members have died from COVID-19 complications. Military Times, *Military COVID-19 Deaths on Upswing as Vaccination Deadlines Pass* (Dec. 15, 2021), https://perma.cc/T438-3TK5. None were fully vaccinated. *Id.*

## I.    Department Of Defense COVID-19 Vaccination Directive

The U.S. military instituted its first immunization program in 1777, when General Washington directed the inoculation of the Continental Army for smallpox. Stanley Lemon et al., *Protecting Our Forces: Improving Vaccine Acquisition and Availability in the US Military*, National Academies Press (2002), https://perma.cc/E545-TQ9G. For generations, the military has implemented a variety of inoculation measures to maintain military readiness by reducing infectious disease morbidity and mortality within the force. *See* Cong. Rsch. Serv., Defense Health Primer: Military Vaccinations (updated Aug. 6, 2021), https://perma.cc/BMW3-HGJW. Nine vaccines are currently required for all service members, including the annual flu shot. *See* AR 40-562, https://perma.cc/MB96-5JK3; *see also* Decl. of S. Bradley, Ex. B, ¶ 5. .

On August 9, 2021, the Secretary of Defense announced that he would add the COVID-19 vaccine to the list of required vaccines by the earlier of mid-September or upon approval by the Food and Drug Administration ("FDA"). *See* Aug. 9, 2021 SecDef Memo, https://perma.cc/6PFX-Q64G. After FDA approved the Pfizer COVID-19 vaccine, Secretary Austin directed the Secretaries of the Military Departments to immediately vaccinate

all members of the armed forces, including the National Guard, under Department of Defense ("DoD") authority.  *See* Aug. 24, 2021 SecDef Memo, ECF No. 26-2.[2]

On November 2, 2021, Oklahoma wrote a letter to the Secretary of Defense asking him to reconsider the vaccine requirement for Oklahoma's National Guard.  Nov. 2, 2021 Ltr., https://perma.cc/76G4-74Z5.  The Secretary of Defense responded on November 29, 2021, explaining the importance of the vaccine requirement and noting that the President has authority under 32 U.S.C. § 110 to regulate the non-Federalized National Guard.  Nov. 29, 2021 Ltr., ECF No. 36-1.

On November 30, 2021, the Secretary of Defense issued supplemental guidance to members of the National Guard on Title 32 duty as opposed to active duty under Title 10.  Nov. 30, 2021 SecDef Memo, ECF No. 26-3; *see also* Decl. of Col. K. Mulcahy, Ex. A ¶ 12.  The memo explained that no DoD "funding may be allocated for payment of duties performed under title 32 for members of the National Guard who do not comply with [DoD] COVID-19 vaccine requirements."  Nov. 30. 2021 SecDef Memo.  The Secretary of the Air Force followed with specific regulatory guidance applicable to members of the Air National Guard serving under Title 32.  *See* Secretary of the Air Force Memo, Supplemental Coronavirus Disease 2019 Vaccination Policy (Dec. 7, 2021), ECF No. 36-2.

---

[2] The DoD mandate has been subject to extensive litigation, and every request to enjoin it has failed.  *See Navy Seal 1 v. Biden*, --- F. Supp. 3d ----, 2021 WL 5448970 (M.D. Fla. Nov. 22, 2021); *Doe #1–14 v. Austin*, --- F. Supp. 3d ----, 2021 WL 5816632 (N.D. Fla. Nov. 12, 2021); *Church v. Biden*, No. 21-cv-2815, 2021 WL 5179215 (D.D.C. Nov. 8, 2021); *Stone v. Austin*, No. 21-cv-4822, 2021 WL 4443733 (E.D.N.Y. Sept. 28, 2021); *Robert v. Austin*, 21-cv-2228, ECF No. 12 (D. Colo. Sept. 1, 2021).

**II.     Organization And Regulation Of The National Guard**

The National Guard both (1) is a part of the official state militia and (2) includes reserve members of the national military.[3]  The Oklahoma National Guard includes employees and military members serving in different roles.

- <u>Active Duty.</u>  Under Title 10, active duty National Guard members serve under the direct control of a federal official.  They are subject to the active duty COVID-19 vaccination compliance deadlines set by each Service (Nov. 2, 2021 for Air Force; Dec. 15, 2021 for Army), and are not subject to EO 14043.  *See, e.g.*, 10 U.S.C. §§ 12301, 12302.

- <u>Title 32 Drill Status Guardsmen ("DSG").</u>  Most members of the National Guard are DSGs. Ex. A ¶ 4.  These individuals train pursuant to Title 32 at least one weekend a month and two weeks a year.  *Id.*  Title 32 training is conducted by the State, but DSGs must comply with federal rules, including military vaccination requirements.  *See* 32 U.S.C. §§ 110, 501; U.S. Const., art. I., sec. 8, cl. 15-16.  DSGs are not subject to EO 14043.  Ex. A ¶ 4.

- <u>Title 32 Active Guard and Reserve ("AGR").</u>  AGR members are full-time, uniformed service members serving under Title 32 under the direction of a State official.  Ex. A ¶ 5.  AGRs must comply with Title 32 regulations set by the President and Secretaries, and continued service in the AGR requires the consent of the applicable service Secretary.  32 U.S.C. § 328.  AGRs are not subject to EO 14043, but they are required to adhere to military vaccination requirements.  Ex. A ¶ 5.

- <u>Military Technicians (Dual-Status).</u>  Some National Guard members are "dual-status," meaning they work for the National Guard as full-time civilian employees but are also required to maintain National Guard Membership.  *See* 32 U.S.C. § 709(b), (f).  Dual-status technicians are subject to the military vaccination requirement in their capacity as members of the National Guard.  Ex. A ¶ 6.

- <u>Title 5 Civilians.</u>  These civilians are non-uniformed, civilian staff of the state National Guard (*e.g.*, accountants) and are federal employees as defined by 5 U.S.C. § 2105.  They are therefore subject to EO 14043.  Ex. A ¶ 7.

---

[3] *See* Emily Eslinger & Michael Paradis, Lawfare, *Federalism and Coronavirus Vaccination Mandates for Military Personnel* (Dec. 9, 2021), https://perma.cc/6KY5-5H4X.

The National Guard Bureau ("NGB") has issued guidance that the civilian vaccination requirement "only applies to National Guard Title 5 Civilian Employees." Ex. A ¶ 10; Oct. 8, 2021 NGB Memo, Ex. A, Att. A. The civilian vaccination guidance "does not apply to Title 32 Military Technicians, Active Guard and Reserve personnel or M-Day / Drill Status Guardsmen" who must "comply with applicable DoD COVID-19 vaccine policies." Ex. A ¶¶ 10–11; *see also* Nov. 10, 2021 NGB Memo, Ex. A, Att. B ("This guidance is not applicable to individuals employed under Title 32. . . . Those individuals will be subject to vaccination requirements outlined by their respective service components.").

## III.  Executive Order 14043

EO 14043 reflects the President's determination that COVID-19 threatens "[t]he health and safety of the Federal workforce, and the health and safety of members of the public with whom they interact, [which] are foundational to the efficiency of the civil service." EO 14043 § 1. "[I]n light of public health guidance," EO 14043 instructs each federal agency to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its federal employees, with exceptions only as required by law." *Id.* §§ 1, 2. It also directs the Safer Federal Workforce Task Force ("Task Force") to "issue guidance . . . on agency implementation of this requirement." *Id.* § 2. EO 14043 applies to federal "employees" as defined by 5 U.S.C. § 2105, *see* EO 14043 § 3(b), which would not include members of the National Guard unless they separately held a federal civilian position.

Task Force guidance recognizes that federal employees may be eligible for exceptions based on a medical condition or religious objection, and advises that federal employees who have not requested or received an exception should be fully vaccinated no later than

November 22, 2021.  It further advises that an employee who requests an exception should not be disciplined while the request is pending.  *See generally* Task Force, Frequently Asked Questions ("Task Force FAQs"), Vaccinations, https://perma.cc/B2YZ-76PT.[4]

## IV.   This Lawsuit

Plaintiffs filed a complaint on December 2, 2021, *see* Compl., and they filed an emergency motion the following day, *see* Mot.  Plaintiffs seek an order enjoining Defendants from "enforcing, implementing, or giving any effect, in the State of Oklahoma, to EO 14043, the consequent [Task Force] guidance, or agency action," and from "withholding federal funding from the Oklahoma National Guard or its members or depriving them of any of their usual rights and privileges."  Mot. at 25.

## LEGAL STANDARD

"[A] preliminary injunction is an extraordinary remedy," so "the movant's right to relief must be clear and unequivocal."  *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001) (citation omitted).  The moving party must show (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

---

[4] EO 14043 has been subject to extensive litigation, and every request to enjoin it has failed. *See Donovan v. Vance*, No. 21-cv-5148, ECF No. 58 (E.D. Wa. Dec. 17, 2021); *McCray v. Biden*, No. 21-cv-2882, ECF No. 11 (D.D.C. Dec. 7, 2021); *Rodden v. Fauci*, No. 21-cv-317, 2021 WL 5545234 (S.D. Tex. Nov. 27, 2021); *Rydie v. Biden*, No. 21-cv-2696, 2021 WL 5416545 (D. Md. Nov. 19, 2021), *appeal pending*, No. 21-2359 (4th Cir.); *Brnovich v. Biden*, No. 21-cv-01568, ECF No. 64 (D. Ariz. Nov. 10, 2021); *Altschuld v. Raimondo*, No. 21-cv-2779, ECF No. 23 (D.D.C. Nov. 8, 2021); *Church*, 2021 WL 5179215; *Smith v. Biden*, No. 21-cv-19457, 2021 WL 5195688 (D.N.J. Nov. 8, 2021), *appeal pending*, No. 21-3091 (3d Cir.); *Foley v. Biden*, No. 21-cv-01098, ECF No. 18 (N.D. Tex. Oct. 6, 2021).

## ARGUMENT

### I.   Plaintiffs Fail To Challenge The Order Governing The National Guard, Which Is Unquestionably Lawful.

Plaintiffs challenge the President's vaccination requirements for federal employees in EO 14043, issued pursuant to his authority under Title 5. Yet the vaccination requirements for members of the National Guard are issued pursuant to Titles 10 and 32 and have required members of the National Guard to be vaccinated against various diseases for decades. *See, e.g.*, DoD Instruction ("DoDI") 6205.02 §§ 1.2(c), 2.12(b); AR 40-562, §§ 3–2(b), 4–7(b), https://perma.cc/ZU4H-CBA3. The Secretary of Defense simply added another vaccination to the long list of vaccines already required.

Plaintiffs nowhere challenge the military's authority to require vaccinations pursuant to the correct statutory authorities. While the Mancino Declaration alludes to new legal challenges to the military vaccination requirement, *see* ECF No. 27, Plaintiffs obviously cannot add new legal claims to their complaint through declaration. *See Blevins v. Werholtz*, No. 09-3033-SAC, 2009 WL 539913, at *6 (D. Kan. Mar. 4, 2009) (claims must be added by amending complaint).[5] The current motion is thus based on a complaint that fails to challenge the federal vaccination requirements applicable to the military members of the National Guard.

In any event, a challenge the military's vaccination requirement for National Guard members pursuant to Titles 10 and 32 would fail. Those requirements are unquestionably lawful, and the novel arguments raised in the Mancino Declaration are inconsistent with the text of the Constitution and contrary to centuries of statutory and legal precedent.

---

[5] Defendants submit Ex. A to provide some historical, factual, and regulatory background to put the assertions from the Mancino Declaration in proper context.

The Constitution explicitly tasks Congress with "organizing, arming, and disciplining, the Militia and [with] governing such Part of them as may be employed in the Service of the United States."  U.S. Const., art. I, § 8, cl. 15-16.  The States may appoint militia officers and conduct training, provided the training conforms with federal regulations.  *Id.*  In Federalist No. 29, Alexander Hamilton described the States' role as limited to "the appointment of the officers" and "training the militia according to the discipline prescribed by Congress" because "[i]f a well-regulated militia be the most natural defense of a free country, it ought certainly to be under the regulation and at the disposal of that body which is constituted the guardian of the national security"—*i.e.*, the federal government.  Likewise, the Supreme Court has long recognized the States' subordinate role to Congress in military affairs.  *See, e.g.*, *Houston v. Moore*, 18 U.S. (5 Wheat) 1, 16 (1820) ("Congress has power to provide for organizing, arming, and disciplining them; and this power being unlimited, except in the two particulars of officering and training them, according to the discipline to be prescribed by Congress, it may be exercised to any extent that may be deemed necessary by Congress.").  Oklahoma law also recognizes the supremacy of the federal government over the Oklahoma National Guard.  While the Governor is authorized under State law to act as commander-in-chief of National Guard members "in the service of the state" (in Title 32 status), all orders of the Governor are "subject to the laws of the United States and regulations prescribed by the President of the United States."  44 Okla. Stat. Ann. tit. 44, § 23.

Moreover, Congress has unambiguously delegated the authority to regulate the National Guard to federal officials.  "The President shall prescribe regulations, and issue orders, necessary to organize, discipline, and govern the National Guard."  32 U.S.C. § 110.

The Secretaries of the Army and Air Force likewise have authority to "prescribe such regulations as the Secretary considers necessary to carry out provisions of law relating to the reserve components," which include the National Guard. 10 U.S.C. § 10202(a). And each Service Secretary is "[s]ubject to the authority, direction, and control of the Secretary of Defense." *Id.* §§ 7013(b)(9), 9013(b)(9), 113(b). Congress further tasked the National Guard Bureau with "[i]ssuing directives, regulations, and publications consistent with approved policies of the Army and Air Force." 10 U.S.C. § 10503(11).

These prescribed regulations set the conditions that must be met by all members of the National Guard to meet the readiness standards of the Army Reserve or Air Force Reserve (of which National Guard members are a part). 10 U.S.C. § 12641(a). The regulations currently require a service member to receive nine immunizations, in addition to the COVID-19 vaccination, to be deemed medically qualified for military service. *See* AR 40-562, ("Reserve component Servicemembers receive the same immunizations as active duty personnel . . . ."); Ex. B, ¶ 5. "If a [member of the] Reserve fails to comply with the standards and qualifications prescribed under subsection (a), he shall—(1) if qualified, be transferred to an inactive reserve status; (2) if qualified, be retired without pay; or (3) have his appointment or enlistment terminated." 10 U.S.C. § 12641(b). Thus, members of the reserve components, including members of the Air National Guard, must comply with federal readiness standards (regardless of duty status) or risk disqualification and termination of their status as a reservist. *See, e.g.*, DoDI 6205.02 § 1.2(c); 32 U.S.C. §§ 301,323.

Moreover, service in the Active Guard or reserve duty may only be performed with the consent of the Secretary of the Army or Air Force. 32 U.S.C. § 328. And the Secretary of the

Air Force has withdrawn consent for Air National Guard members who have not complied with the Air Force's current medical readiness requirements. The federal government is not required to pay for reserve training that does not meet federal regulations. *See* 32 U.S.C. § 108; Nov. 30, 2021 Memo, ECF No. 26-3 ("No Department of Defense funding may be allocated for payment of duties performed under title 32 for members of the National Guard who do not comply with Department of Defense COVID-19 vaccination requirements.").

The law is thus clear: Congress and those federal officers using the authority delegated from Congress set the standards for service in the United States military, including service in the National Guard. The State of Oklahoma is of course free to establish a separate state defense force under the exclusive control of the state. *See* 32 U.S.C. § 109. But as far as the *National* Guard is concerned, the State of Oklahoma cannot allow service members to defy the lawful orders and rules of federal military authorities.

## II.     Plaintiffs' Challenge To EO 14043 Fails On Threshold Grounds.

Instead of challenging the military vaccine requirements governing the OKANG, Plaintiffs challenge EO 14043. That challenge fails on numerous threshold grounds.

### A.     Plaintiffs Lack Standing.

Plaintiffs bear the burden of proving the "irreducible constitutional minimum of standing," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 84, 102 (1998)—*i.e.*, (1) "an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Neither the unnamed individual Plaintiffs nor Oklahoma can carry that burden here.

11

1.     **The Individual Plaintiffs Lack Standing.**

a)     **The Court Lacks Jurisdiction Over The Anonymous Individual Plaintiffs.**

At the threshold, the Plaintiffs proceeding under pseudonyms have failed to comply with the Rules of Civil Procedure, which "make no provision of suits by persons using fictitious names or for anonymous plaintiffs." *Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989); *see* Fed. R. Civ. P 10(a).  Although there may be "exceptional circumstances warranting some form of anonymity in judicial proceedings," *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000), the burden is on the party seeking anonymity to "first petition the district court for permission to do so," *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001).  Plaintiffs have not done so here, and the Court thus "lack[s] jurisdiction over the unnamed parties, as a case has not been commenced with respect to them." *Id.* (citation omitted).  These non-parties cannot carry Plaintiffs' burden of demonstrating standing or irreparable harm.  *See KeyView Labs, Inc. v. Barger*, No. 20-cv-2131, 2020 WL 8224618, at *6 (M.D. Fla. Dec. 22, 2020) (anonymous declaration could not meet the "high burden" for obtaining a preliminary injunction and collecting cases rejecting anonymous declarations).[6]

b)     **No Individual Plaintiff Has Standing To Challenge EO 14043.**

Even putting the anonymity issue aside, the individual Plaintiffs lack standing to challenge EO 14043.  Fourteen of the anonymous Plaintiffs allege only that they are members of the OKANG, which is not, standing alone, federal civilian employment subject to the

---

[6] Multiple courts have denied requests to proceed under pseudonym in cases challenging EO 14043.  *See Doe v. Raimondo*, No. 21-mc-127 (D.D.C. Oct. 14, 2021), ECF No. 1; *Rydie v. Biden*, No. 21-cv-2696 (D. Md. Nov. 18, 2021), ECF No. 24; *Brnovich v. Biden*, No. 2:21-cv-1568 (D. Ariz. Dec. 15, 2021), ECF No. 122.

Executive Order.  Some of these individuals assert that they "have been informed by [DoD] that Exec. Order No. 14043 . . . applies to" them, *e.g.*, OKANG Member 9 Decl. ¶ 4, ECF No. 30, but such "anonymous double hearsay" is "problematic," "unreliable and of little persuasive value," *Advance Am. v. FDIC*, No. 14-593, 2017 WL 2672741, at *8 (D.D.C. Feb. 23, 2017).   And, in any event, what matters for purposes of jurisdiction is the actual requirement at issue, not what someone claims to have been told.

Two of the Plaintiffs—OKANG Members 4 and 13—allege that they are also dual-status civilian federal employees with DoD. *See* OKANG Member 4 Decl. ¶ 5; OKANG Member 13 Decl. ¶ 4.  But National Guard Bureau guidance directs each state's National Guard to apply only the "applicable DoD COVID-19 vaccine policies"—not civilian requirements—to dual-status, Title 32 Military Technicians.  *See* Ex. A ¶¶ 10–11, Att. A & B. Based on these anonymous Plaintiffs' allegations, it is impossible to discern whether they are subject to EO 14043.  Therefore, they have not carried their burden to establish standing.

Even if these individuals were parties and were subject to EO 14043, none has provided any evidence demonstrating that EO 14043 is likely to cause him any imminent, concrete injury sufficient to satisfy Article III.  Federal employees may request exceptions from EO 14043; they are not subject to discipline while a request is pending; and the ultimate discipline any federal employee might face is uncertain given the procedural protections to which most federal employees are entitled under federal law.  Any claims that purport to challenge EO 14043 are thus unripe because they depend on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *see also Church*, 2021

WL 5179215, at *8-10; *Rodden*, 2021 WL 5545234, at *3; *McCray v. Biden*, No. 21-2882, 2021 WL 5823801, at *8-9 (D.D.C. Dec. 7, 2021).

### c)    Plaintiffs Have Not Exhausted Available Remedies.

Plaintiffs do not challenge the military vaccination requirement applicable to the National Guard, and thus cannot seek any injunctive relief as to that requirement.  But if they were to challenge the military requirement, the Court would still lack jurisdiction.  A plaintiff challenging a military decision or regulation must exhaust *all* available military remedies before bringing a lawsuit.  *See Noyd v. McNamara*, 378 F.2d 538, 539–40 (10th Cir. 1967) (per curiam) ("Although appellant has exhausted his administrative remedies as that term is concerned with Air Force regulations, he has not exhausted the military process and has not been denied, nor can we anticipate that he will be denied, a full consideration of his constitutional rights within the complete scope of that process").

A claim challenging a potential National Guard discharge is not ripe if there has been no final decision.  *See Vaughan v. Ky. Army Nat'l Guard*, No. 12-cv-35, 2013 WL 211075, at *6 (E.D. Ky. Jan. 18, 2013) ("Nor has Vaughan's federal recognition been finally withdrawn.  A claim is not justiciable where it hinges on hypothetical future events."); *Diraffael v. Cal. Mil. Dep't*, No. 10-cv-7240, 2011 WL 13274364, at *3 (C.D. Cal. Mar. 21, 2011) (suit "premature" where "discharge proceedings are still underway").  Here, that means a plaintiff must seek any applicable exemptions, pursue all appeals, and then if those are denied, must still wait until the military concludes any adverse action, and pursue all available appeals of adverse action.  Decl. of Col. C. Nichols, Ex. C ¶¶ 4–23.  There is no evidence that any of the individual Plaintiffs has done so.

2.    **Oklahoma Lacks Standing.**

The State of Oklahoma also lacks standing to challenge EO 14043. As an initial matter, Oklahoma cannot establish standing under *Massachusetts v. EPA*, 549 U.S. 497 (2007). *See* Mot. at 5. The "unique circumstances" on which that decision was based—the state's "interests in ensuring the protection of the land and air within its domain, and its 'well-founded desire to preserve its sovereign territory'"—are not present here. *See Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 476 (D.C. Cir. 2009). Moreover, the Supreme Court clearly did "*not* eliminate the state petitioner's obligation to establish a concrete injury." *Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1238 (10th Cir. 2012). Oklahoma posits three theories (but no facts or evidence) to support its standing here. None demonstrates the requisite "concrete and particularized injury." *TransUnion*, 141 S. Ct. at 2203.

Oklahoma's primary theory is that it has standing "under the *parens patriae* doctrine." Mot. at 5. But a state "does not have standing as a *parens patriae* to bring an action on behalf of its citizens against the federal government because the federal government is presumed to represent the State's citizens." *Wyoming ex rel. Sullivan v. Lujan*, 969 F.2d 877, 883 (10th Cir. 1992); *see also Wyoming,* 674 F.3d 1220 (similar); *Florida v. U.S. Dep't of Health & Human Servs.*, --- F.4th ----, 2021 WL 5768796, at *16 (11th Cir. Dec. 6, 2021) (rejecting state *parens patrie* standing in a challenge to federal vaccination requirement).

Nor is Oklahoma otherwise entitled to assert the rights of federal employees not before the court. *See, e.g.*, *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013) (describing rule against third-party standing). In some limited circumstances, courts have made exceptions to the rule against third-party standing, but typically only where "a close relationship exists between the

15

litigant and the third party" and where "'some genuine obstacle' to the third party asserting his own rights" exists. *The Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1172 (10th Cir. 2011) (citation omitted). Oklahoma has not even attempted to demonstrate a "close relationship" with any third-party federal employee, and there are no obstacles to such employees asserting their own rights—as many have endeavored to do in challenges to EO 14043.

Oklahoma further argues that it has standing "when it has suffered an economic injury or is forced to deploy its resources." Mot. at 5. Yet it presents no evidence that EO 14043 has caused it any economic injury. Its claim that "State tax dollars" would be lost if hypothetical federal employees, through a speculative chain of events, were to "lose [their] federal employment," Compl. ¶ 91, is insufficient. Because Oklahoma has presented "no evidence that specific loss of tax revenues have occurred, and its assertions of future lost tax revenues are merely speculative," it cannot establish standing on this basis. *Wyoming*, 674 F.3d at 1235; *see also Utah v. Babbitt*, 137 F.3d 1193, 1212 (10th Cir. 1998).

To the extent Oklahoma complains about the potential loss of federal National Guard funding for National Guard members serving under Title 32, Oklahoma fails to show that any significant portion of its Guard members are at risk of noncompliance with EO 14043, which does not apply to Title 32 service. Even if Oklahoma made such a showing, the question of whether the President should withhold funds is nonjusticiable. *See Schroder v. Bush*, 263 F.3d 1169, 1174 (10th Cir. 2001). The Constitution unambiguously commits decisions about funding and regulation of the National Guard to the political branches. *See* U.S. Const., art. I, § 8, cl. 15-16. Congress authorized the President, in his sole discretion, to bar states "from receiving money or any other aid benefit or privilege" if a state fails to comply with "a

regulation prescribed" under Title 32.   *See* 32 U.S.C. § 108.  There are no judicially manageable standards for reviewing the President's funding decisions.

Oklahoma has similarly failed to demonstrate any "sovereign" injury.  Mot. at 5.  Its alleged injury is that EO 14043 "contravenes Oklahoma's law and public policy" and deprives the state of "the law enforcement support it needs to protect itself and its citizens."  Compl. ¶¶ 88-91.  But Oklahoma does not identify any state "law [or] public policy" that the Executive Order "contravenes," *id.*, much less show that the EO 14043 interferes with the state's ability to "create and enforce a legal code," Mot. at 5 (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601 (1982)); *cf. Utah Div. of Consumer Prot. v. Stevens*, 398 F. Supp. 3d 1139, 1143-44 (D. Utah 2019) (noting that state may have standing to vindicate its sovereign interests where "a federal court holds that a state law is unconstitutional" or in cases involving "the maintenance and recognition of borders").  As discussed in Part I, above, any argument that Oklahoma has the authority to supersede the President's regulation of the National Guard is legally meritless and ignores Oklahoma's own state laws, which provide that all orders of the Governor concerning the National Guard are "subject to the laws of the United States and regulations prescribed by the President of the United States." 44 Okla. Stat. tit. 44, § 23. And in any event, "it is black-letter law that the federal government does not 'invade' areas of state sovereignty 'simply because it exercises its authority in a way that . . . 'displaces the States' exercise of their police powers.'"  *Florida*, 2021 WL 5768796, at *15 (alterations omitted) (quoting *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 291 (1981)).

Moreover, Oklahoma's claim that EO 14043 will adversely affect state law enforcement is pure speculation.  Again assuming that the EO concerning federal civilian employment were

even applicable here, Oklahoma submits no facts demonstrating that the speculative chain of events on which it relies—*i.e.*, that the executive order will cause the state to lose law enforcement officers and suffer a measurable harm to public safety. Each outcome in that causal chain is speculative and unsupported, and the theory of injury relies on "the independent action of some third party not before the court," which makes Oklahoma's standing burden "substantially more difficult." *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1225 (10th Cir. 2008) (citations omitted). In any case, Oklahoma fails to explain its counterintuitive conjecture that the hypothetical loss of certain *federal* employees based in the state interferes with the state's *own* law enforcement function.

### 3. Plaintiffs Fail To Adequately Allege That The Relief They Seek Can Redress Their Injuries.

Plaintiffs lack standing for the additional reason that an order against the Defendants sued here would not redress their alleged injuries. To begin with, neither declaratory nor injunctive relief is proper against the President in his official capacity. Rather, "[w]ith regard to the President, courts do not have jurisdiction to enjoin him and have never submitted the President to declaratory relief." *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) (citations omitted); *see also Franklin v. Massachusetts*, 505 U.S 788, 802-03 (1992); *Willis v. U.S. Dep't of Health & Human Servs.*, 38 F. Supp. 3d 1274, 1277 (W.D. Okla. 2014) ("Longstanding legal authority establishes that the judiciary does not possess the power to issue an injunction against the President or Congress."). Multiple courts have thus rejected requests for declaratory or injunctive relief against EO 14043 itself. *See Rydie*, 2021 WL 5416545, at *3; *Foley*, No. 21-cv-1098, ECF No. 18; *Navy Seal 1 v. Biden*, No. 21-cv-2429, 2021 WL 5448970, at *2 (M.D. Fla. Nov. 22, 2021); *McCray*, 2021 WL 5823801, at *5-8.

18

Nor can Plaintiffs obtain relief by asserting claims against the Task Force, the White House COVID-19 Response Team, and their members.  The federal employee vaccination requirement flows from EO 14043 and implementing actions by each federal agency, not from the nonbinding guidance issued by the Task Force and the Response Team.  Relief against these Defendants therefore cannot redress Plaintiffs' asserted injuries.  *See Rodden*, 2021 WL 5545234, at *2-3 (so holding, in challenge to EO 14043).

Finally, an order enjoining DoD, Secretary Austin, the various service branches, and the heads of those branches from implementing EO 14043 could not provide Plaintiffs relief, even as to any Plaintiffs to whom EO 14043 might separately apply.  The two unnamed OKANG members who allege that they are dual-status technicians are unquestionably subject (like all of the individual Plaintiffs) to the separate military vaccination requirement for members of the National Guard, which are not challenged here.  *See* OKANG Member 13 Decl. ¶ 6 (providing "deadline for receiving this vaccination regiment as a Guard member"); OKANG Member 4 Decl. ¶ 7 (same).  Indeed, civilian employment as a dual-status technician is contingent upon being a military member of the National Guard.  *See* 32 U.S.C. § 709(b)(2).  Setting aside that the National Guard Bureau has directed each state's National Guard not to require dual-status technicians to comply with civilian vaccine requirements, even if the Court enjoined Secretary Austin from enforcing EO 14043, these Plaintiffs would receive no relief because the military mandate would still apply to them, and they would need to comply with the military mandate to maintain their civilian employment.  *See, e.g.*, *KH Outdoor, LLC v. Clay Cnty.*, 482 F.3d 1299, 1303 (11th Cir. 2007) (no redressability where plaintiff also "failed to meet the requirements of other statutes and regulations not challenged").

### III.     Plaintiffs Fail To Establish Irreparable Injury.

To satisfy their burden of proving irreparable harm, Plaintiffs must demonstrate irreparable harm that is *likely*, not merely possible. *Winter*, 555 U.S. at 20. The harm shown "must be both certain and great," not "merely serious or substantial." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (citations omitted). The showing also must be "clear and unequivocal." *Colorado v. EPA*, 989 F.3d 874, 886 (10th Cir. 2021). Plaintiffs have not carried their burden here.

Oklahoma argues that it will suffer imminent irreparable harm because EO 14043 places the state "at risk of having her laws and public policy preferences usurped by this vaccine mandate" and because the Executive Order will cause OKANG members to quit, which will allegedly jeopardize Oklahomans' safety and security and cause economic injury. Mot. at 6. But all of this is speculative, and Oklahoma fails to identify any law or public policy contravened by the Executive Order. *See supra* Part I.A.2. Nor does Oklahoma "clear[ly] and unequivocal[ly]" show, *see Colorado*, 989 F.3d at 886, that EO 14043 will prompt a single service member to quit. Because Oklahoma has alleged only speculative harms, it has failed to carry its burden. *See Pierce*, 253 F.3d at 1250; *see also Florida*, 2021 WL 5768796, at *16 (holding that state's claims that vaccination requirements would cause staffing shortages were wholly "speculative" and "conclusory" and did not establish irreparable harm).

Oklahoma also asks this court to "preliminarily enjoin Defendants from withholding federal funding from the Oklahoma National Guard." Mot. at 25. Plaintiffs have not even challenged the regulations that apply to the National Guard, but even if they had, "[e]conomic loss usually does not, in and of itself, constitute irreparable harm." *Port City Props. v. Union Pac.*

*R. Co.*, 518 F.3d 1186, 1190 (10th Cir. 2008) (citation omitted).

The service member Plaintiffs likewise will not suffer irreparable harm in the absence of an injunction. To be sure, a National Guard member who refuses vaccination may be subject to a range of administrative and disciplinary actions. *See* Ex. C, ¶¶ 4–23. But those administrative and disciplinary actions, including separation, are not irreparable injuries because service members could later be reinstated and provided back pay if they prevailed on their claims. *See, e.g.*, *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 742 (2d Cir. 1992); *Guerra v. Scruggs*, 942 F.2d 270, 274 (4th Cir. 1991); *Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985); *Chilcott v. Orr*, 747 F.2d 29, 34 (1st Cir. 1984); *McCurdy v. Zuckert*, 359 F.2d 491, 494 (5th Cir. 1966); *Shaw v. Austin*, --- F. Supp. 3d ----, 2021 WL 1840397, at *10 (D.D.C. May 7, 2021); *Reinhard v. Johnson*, 209 F. Supp. 3d 207, 220 (D.D.C. 2016) (military separation not irreparable harm); *Bors v. Allen*, 607 F. Supp. 2d 204, 211 (D.D.C. 2009); *Farris v. Rice*, 453 F. Supp. 2d 76, 79 (D.D.C. 2006) ("cases are legion holding that loss of employment does not constitute irreparable injury"); *Wilburn v. Dalton*, 832 F. Supp. 943, 948 (E.D. Pa. 1993); *Dowds v. Bush*, 792 F. Supp. 1289, 1291 (D.D.C. 1992) ("where the claim is for unlawful exclusion from the military or improper denial of promotion, the delay can be compensated by awarding backpay, seniority, etc. . . . [and] the damages suffered are not irreparable.").

Indeed, the Supreme Court has long held that, absent a "genuinely extraordinary situation," the loss of employment is not an irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). This is so at least in part because loss of employment is usually compensable by monetary damages. *See id.* at 90. And irreparable injury occurs only when the "court would be unable to grant an effective monetary remedy . . . because such damages would be

inadequate or difficult to ascertain." *Dominion Video Satellite*, 269 F.3d at 1156; *see also Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) ("[S]imple economic loss" does not constitute irreparable harm). That is not the case here. Even if the individual Plaintiffs were certain to be terminated for their refusal to be vaccinated—and they are not[7]—any financial consequences of termination would not be irreparable. *See Sampson*, 415 U.S. at 92 n.68; *see also Franks v. Nimmo*, 683 F.2d 1290, 1294 (10th Cir. 1982).[8]

The service members' second asserted harm—violation of "their rights to individual autonomy and bodily integrity" and "against forced medical intervention," Mot. at 6—also fails. Given that the service members chose not to seek a preliminary injunction on their substantive-due-process claim, they cannot meet their burden of showing irreparable harm in relation to that claim. *See Schrier*, 427 F.3d at 1267. In any event, no one is at risk of being forcibly vaccinated: if the individual Plaintiffs are right on the merits of their claims, they can decline vaccination and seek remedies for any adverse employment consequences at the conclusion of litigation. *See e.g.*, *Smith*, 2021 WL 5195688, at *8 ("Plaintiffs are undeniably being presented with a difficult choice—comply with the vaccine mandate or risk losing their employment. They are, however, presented with a choice . . . ."); *Klaassen v. Trs. of Ind. Univ.*, ---

---

[7] As discussed in Part I.A.I(b), any civilian employee subject to EO 14043 may request a religious or medical exception and, per the Task Force Guidance, should not be subject to any discipline while any such request is pending (or if it is granted). The DoD mandate likewise provides religious and medical exemptions, and suspends vaccination requirements while those requests are pending. Aug. 24, 2021 SecDef Memo; Ex. C, ¶¶ 4–7. Consequently, Plaintiffs' allegations "call into question the 'imminence' of the harm" they allegedly face. *Church*, 2021 WL 5179215, at *14.

[8] As many federal courts have held, a federal employee's choice between complying with a COVID-19 vaccination mandate and suffering job-related consequences is not irreparable harm. *See Rydie*, 2021 WL 5416545, at *5; *Altschuld*, ECF No. 23, at 8; *Church*, 2021 WL 5179215, at *13–15; *Smith*, 2021 WL 5195688, at *8–9.

F. Supp. 3d ---, 2021 WL 3073926, at *25 (N.D. Ind. July 18, 2021) (similar), *denying mot. for inj. pending appeal*, 7 F.4th 592 (7th Cir. 2021) (Easterbrook, J.), *emergency application for relief denied*, No. 21A15 (Barrett, J., in chambers) (Aug. 12, 2021); *Bridges v. Hous. Methodist Hosp.*, --- F. Supp. 3d ---, 2021 WL 2399994, at *2 (S.D. Tex. June 12, 2021) (similar), *appeal filed*, No. 21-20311 (5th Cir. June 14, 2021).

Finally, Plaintiffs' delay in seeking relief further confirms the absence of any irreparable injury.  Plaintiffs waited eleven weeks from the issuance of EO 14043 to file suit, and "[a]s a general proposition, delay in seeking preliminary relief cuts against finding irreparable injury." *Kan. Health Care Ass'n v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543–44 (10th Cir. 1994) (citation omitted); *see also GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

## IV.  Plaintiffs Are Unlikely To Succeed On The Merits Of Their Challenge To EO 14043.

Even if the Court had jurisdiction to review Plaintiffs' challenge to EO 14043, their claims would fail on the merits.

### A.  EO 14043 Is A Valid Exercise Of The President's Constitutional And Statutory Authority.

Counts I, II, and III are asserted directly under the federal civil service statutes: Plaintiffs allege that EO 14043 is not authorized by 5 U.S.C. § 3301 (Count I); 5 U.S.C. § 3302 (Count II); or 5 U.S.C. § 7301 (Count III).  Those assertions fail both for lack of a cause of action and on the merits.

#### 1.  The Civil Service Statutes Do Not Create A Private Right Of Action.

"[E]ven where a statute is phrased in . . . explicit rights-creating terms," a plaintiff still must show that Congress has created "not just a private *right* but also a private *remedy*." *Gonzaga*

23

*Univ. v. Doe*, 536 U.S. 273, 284 (2002) (citation omitted)).  "Absent Congressional intent to create both a right and a remedy in favor of a plaintiff, a cause of action does not exist, . . . no matter how desirable that might be as a policy matter."  *Cuba Soil & Water Conservation Dist. v. Lewis*, 527 F.3d 1061, 1064 (10th Cir. 2008) (quotation omitted).  None of the statutes that Plaintiffs invoke creates a private right of action: they are silent about a "private remedy," and they are not "phrased" in "rights-creating terms."  *Gonzaga*, 536 U.S. at 284; *see also id.* at 287 (statute must reflect "congressional intent to create new rights").  Instead, these statutes speak exclusively to the authority of the *President* to issue rules.  *Cf. id.* at 287 (statute did not create individual rights because its "provisions speak only to the Secretary of Education").

To the contrary, Congress has spoken clearly as to how federal employees must allege violations of their rights in the workplace: through the Civil Service Reform Act ("CSRA").  Under the CSRA, "adverse actions," including removals and suspensions of more than fourteen days, *see* 5 U.S.C. § 7512, can generally only be appealed directly to the Merit Systems Protection Board ("MSPB"), with judicial review in the Federal Circuit.  *Id.* §§ 7513(d), 7703(b)(1).[9]  This scheme provides the exclusive and preemptive means for federal employees to challenge workplace decisions and conditions.  *See, e.g., Elgin v. Dep't of Treasury*, 567 U.S. 1, 11-12 (2012) ("Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that

---

[9] Corrective action for a less severe "personnel action" may generally be sought from any agency administrative or negotiated grievance rights, through Equal Employment Opportunity Commission complaints if an EEO protected basis is alleged, or from the Office of Special Counsel ("OSC") if the applicant or employee alleges a prohibited reason for the action.  5 U.S.C. §§ 1214(a)(3), 2302.

Congress intended to deny such employees an additional avenue of review in district court."); *United States v. Fausto*, 484 U.S. 439, 455 (1988); *Steele v. United States*, 19 F.3d 531, 532-33 (10th Cir. 1994); *Petrini v. Howard,* 918 F.2d 1482, 1483–85 (10th Cir. 1990).[10]

### 2.     EO 14043 Falls Within The President's Constitutional And Statutory Authority.

In any event, EO 14043 is a valid exercise of the President's authority.  At the outset, Plaintiffs' assumption that the President required explicit congressional authorization to set terms of employment in the Executive Branch is wrong.  The President is the head of the Executive Branch, and, "[u]nder our Constitution, the 'executive power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'"  *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2191 (2020) (quoting U.S. Const. art. II, § 1, cl. 1 & § 3).  And "if any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws."  *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492 (2010) (quoting 1 Annals of Cong. 463 (1789)).  Thus, as another court explained in rejecting a challenge to EO 14043, "The President derives his authority to regulate the federal workforce from the Constitution, not from Congress's enactments."  *Rydie*, 2021 WL 5416545, at *3.  And nothing in the text of the statutes on which Plaintiffs rely purports to limit the President's Article II authority, for each is phrased to *grant* authority.  *See* 5 U.S.C. §§ 3301 ("The President may . . . ."); 3302 (same); 7301 (same); *see also*

---

[10] Dual-status technicians as defined in 32 U.S.C. § 709(f) may not appeal to the MSPB termination from federal employment that results from separation from the National Guard. *See Dyer v. Dep't of the Air Force*, 971 F.3d 1377 (Fed. Cir. 2020).  Yet the Supreme Court has been clear that the CSRA precludes district court review not only for federal employees to whom Congress has given MSPB appeal rights, but also for those to whom such rights are denied.  *See Fausto*, 484 U.S. at 488.

*Clarry v. United States*, 85 F.3d 1041, 1047 (2d Cir. 1996) ("The President has broad authority pursuant to 5 U.S.C. §§ 3301 and 7301 to regulate employment matters").

Far from limiting the President's authority, Congress has "endorsed his action here," *Rydie*, 2021 WL 5416545, at *3. *First*, Plaintiff's contention that the vaccination requirement is not tied to the "efficiency of th[e] service" under 5 U.S.C. § 3301 is wrong. Plaintiffs claim that efficiency "does not concern matters such as public-health mandates," Mot. at 8, but the President specifically found that "[t]he health and safety of the Federal workforce, and the health and safety of members of the public with whom they interact, are foundational to the efficiency of the civil service." EO 14043 § 1. Nor can Plaintiffs dispute that COVID-19 has caused serious disruptions to the operations of employers, including the federal government. *See infra* Part V. In light of "the obvious intent of Congress to confer broad discretion upon the President," this Court must "restrict [itself] to the limited scope of judicial review which follows." *Am. Fed. of Gov't Emps. v. Hoffman*, 543 F.2d 930, 938 (D.C. Cir. 1976); *see also, e.g.*, *Giesler v. Merit Sys. Prot. Bd. of the U.S.*, 686 F.2d 844, 849 (10th Cir. 1982). There is no basis for this Court to second-guess the President's finding that requiring federal civilian employees to be vaccinated would serve the efficiency of the civil service. *See also, e.g.*, *Rydie*, 2021 WL 5416545, at *5 (EO 14043 serves "[t]he effective administration of the federal government")

*Second*, Plaintiffs' suggestion that 5 U.S.C. § 3302 "concerns only selection procedures for the competitive service," Mot. at 10, is also wrong. The text of the statute authorizes "rules governing the competitive service," 5 U.S.C. § 3302, and there is no warrant for this Court to read into the statute language that is not there. *See United States v. Nichols*, 184 F.3d 1169, 1171 (10th Cir. 1999) ("[W]here a statute is clear on its face, we give its words literal effect.").

*Third*, Congress has confirmed the President's authority to "prescribe regulations for the conduct of employees in the executive branch."  5 U.S.C. § 7301.  Plaintiffs suggest that "conduct" is limited to "behavior and activity" as opposed to "status," but the act of becoming vaccinated plainly is conduct that the President may require—just as the act of taking illegal drugs is conduct that the President may prohibit (as Plaintiffs concede).  *See* Mot. at 13 (discussing Executive Order 12564).[11]

### 3.    The Major Questions Doctrine Does Not Apply.

Plaintiffs' invocation of the so-called major questions doctrine misses the mark.  The cases Plaintiffs invoke limit the deference that agencies receive under *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), on the theory that Congress does not silently give unelected agency heads power to regulate on questions of major significance.  *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132, 147 (2000); *see also In re MCP No. 165*, --- F. 4th ----, 2021 WL 5989357 (6th Cir. Dec. 17, 2021) (vacating stay of OSHA ETS: "The seldom-used major questions doctrine . . . has been described as an exception to *Chevron* deference.").  But that doctrine does not apply here for many reasons, including that EO 14043 is presidential authority, not agency authority, the government is not seeking *Chevron* deference, and the constitutional and statutory provisions here speak in unmistakable terms.

Most fundamentally, the terms of employment that the government sets for its own workforce is not a question of "vast economic and political significance"; the government is not seeking to ban evictions across the United States, *see Ala. Ass'n of Realtors v. Dep't of Health*

---

[11] Further, these Title 5 sections are irrelevant to the military mandate, which was issued pursuant to other constitutional and statutory authority not challenged by Plaintiffs.

*& Human Servs.*, 141 S. Ct. 2485 (2021), regulate billions of dollars of carbon emissions, *Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302 (2014), or regulate the entire tobacco industry, *see Brown & Williamson*, 529 U.S. 120.  Plaintiffs offer no evidence that the federal employee mandate has had any meaningful economic impact, nor does the "unprecedented politicization" surrounding COVID-19 limit the President's existing authority, especially since "mandatory vaccinations for the public at large have long been held valid," and so "there was no reason for Congress to be more specific" in confirming the President's authority to require vaccination as a term of federal employment.  *Florida*, 2021 WL 5768796, at *12; *see also In re MCP No. 165*, 2021 WL 5989357, at *7 ("The ETS is not a novel expansion of OSHA's power; it is an existing application of authority to a novel and dangerous worldwide pandemic.").

## B.    Plaintiffs' APA Claim Fails.

In Count IV, Plaintiffs purport to challenge the federal employee vaccination requirement under the APA.  *See* Compl. ¶¶ 145-162; Mot. at 14-17.  This claim also fails.

### 1.    The CSRA Precludes Jurisdiction Over Plaintiffs' APA claim.

As noted above, *see supra* Part IV.A.1, Congress has provided an exclusive mechanism for challenging federal employment actions:  the CSRA, which precludes "an additional avenue of review in district court."  *Elgin*, 567 U.S. at 11-12.  That preclusion extends to suits under the APA.  *See Tompkins v. U.S. Dep't of Veterans Affs.*, 16 F.4th 733, 741-42 (10th Cir. 2021).  Thus, even if the federal employee vaccination requirement were applicable in this case, Plaintiffs could not bring an employment dispute in this Court.  *See Rydie*, 2021 WL 5416545, at *2; *see also Tompkins*, 16 F.4th at 743 (an employee "cannot utilize the APA to obtain the very review he is denied by" a comprehensive federal employment scheme).

### 2.   Plaintiffs Do Not Challenge Reviewable Agency Action.

Even if the CSRA did not preclude Plaintiffs' APA claim, a plaintiff invoking the APA must challenge action taken by an "agency." *See* 5 U.S.C. §§ 701(b)(1), 702, 704.  Plaintiffs' APA claim is directed solely at the actions of the President and the Task Force. *See, e.g.*, Compl. ¶¶ 148, 151.  But neither is an "agency" for purposes of the APA.  The Supreme Court has squarely held that the President "is not an agency" subject to APA review.  *See Franklin*, 505 U.S. at 796.  The Task Force is also not an agency: it is an advisory body created by executive order, and its guidance is not binding on the public, nor even on any federal agency. "[U]ltimate authority to set objectives, determine policy, and establish programs rests elsewhere . . . ." *Armstrong v. Exec. Off. of the President*, 90 F.3d 553, 564 (D.C. Cir. 1996) (National Security Council not an agency).  Thus, it does not wield substantial authority independently of the President and so cannot be an agency subject to APA review. *See Rodden*, 2021 WL 5545234, at *3; *see also CREW v. Off. of Admin.*, 566 F.3d 219, 222 (D.C. Cir. 2009).

In all events, Plaintiffs do not challenge *final* agency action.  Final agency action (1) "must mark the consummation of [an] agency's decisionmaking process" and (2) must determine legal "rights or obligations" or have other "legal consequences." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).  Yet there remain myriad steps before any federal employee may face a "final" decision from an employer.  *See Rodden*, 2021 WL 5545234, at *3.  And neither EO 14043 nor the Task Force Guidance bears on regulatory guidance applicable to the Army National Guard and Air National Guard.  In the absence of any final agency action, Plaintiffs' APA claim cannot succeed.

### 3.     Plaintiffs' APA Claim Fails On The Merits.

Even if the Court were to consider the merits of Plaintiffs' APA claim, it should find that Plaintiffs are unlikely to prevail.  As set forth above, *see supra* Section IV.A, EO 14043 was issued pursuant to ample statutory and constitutional authority.  The Court should likewise reject Plaintiffs' arbitrary-and-capricious challenge.  "[T]he arbitrary-and-capricious standard is very deferential to the agency," *Hays Med. Ctr. v. Azar*, 956 F.3d 1247, 1264 (10th Cir. 2020) (citation omitted), and courts must "presume that an agency action is valid unless the party challenging the action proves otherwise." *Id.*[12]

Plaintiffs complain that the Task Force failed to account for "costs to the States," Mot. at 14, Plaintiffs' own legal challenges, and Oklahoma's sovereignty, laws, and reliance interests, *see id.* at 16.  But none of these considerations are implicated in EO 14043 or the Task Force guidance, which only apply to the conduct of federal employees and do not require any action by state governments.  And while Plaintiffs fault the Task Force for failing to offer exemptions for federal employees with natural immunity or remote work environments, *see* Mot. at 16, it was the *President* who determined that federal employees would be required to be vaccinated against COVID-19, with only legally required exceptions.  In any event, the Task Force and

---

[12] Had Plaintiffs challenged the DoD vaccination requirement, their APA claim would be subject to an even higher bar.  *See Rostker v. Goldberg*, 453 U.S. 57, 66 (1981).  Indeed, judicial review of military decisions under the APA is limited to whether the military followed proper law, regulation, and procedure.  *See Hill v. Dep't of Air Force*, 844 F.2d 1407, 1408 (10th Cir. 1988) (agreeing "that 1) courts are not permitted to second-guess the merits or wisdom of military or national security decisions [and] 2) the only proper basis for review of a military or national security decision is to determine whether pertinent procedural regulations were followed").  Because the DOD vaccination requirement comports with applicable law, *see supra* Part I, any APA claim against it would fail as well.

the President explicitly relied on the CDC's determination that vaccination is the best way to slow the spread of COVID-19. *See* EO 14043 § 1; Task Force FAQs.[13] That judgment clearly involves "technical or scientific matters within the agency's area of expertise" that are entitled to "especially strong" judicial deference. *Hays*, 956 F.3d at 1264 (citation omitted).

In a different vein, Plaintiffs contend that the Task Force failed to consider certain impacts on the federal workforce, including the problems of disparate vaccination deadlines across the entire federal government and of a "mass exodus" of unvaccinated employees. *See* Mot. at 16. But the Task Force recommended a single deadline for civilian employees: November 22, 2021. And it recognized that the "[u]nique operational needs of agencies and the circumstances affecting a particular employee may warrant departure" from the standard guidelines, and that those needs should be balanced against the need for "consistency across government." Task Force FAQs. Moreover, managing the federal workforce is the federal government's concern, not the concern of state governments. And in any case, Plaintiffs ignore the fact the federal employee vaccination requirement has been highly successful: the overwhelming majority of federal employees have complied with the requirement. *See* Office of Mgmt. & Budget, Update on Implementation of COVID-19 Vaccination Requirement for Federal Employees (Dec. 9, 2021), https://perma.cc/V7DR-5NC6.

Finally, Plaintiffs argue that the Task Force failed to explain its departure from prior practice in the Executive Branch. *See* Compl. ¶ 156; Mot. at 15. But EO 14043 simply imposes

---

[13] CDC public health experts—after conducting an extensive review and issuing a comprehensive brief on the issue—continue to recommend vaccination for individuals who have recovered from a SARS-CoV-2 infection. *See* CDC, *Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity* (updated Oct. 29, 2021), https://perma.cc/CMT3-XU8X.

a new condition of federal employment—it does not constitute a reversal of any "prior policy" position. *Cf. FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009). In any event, the President and the Task Force clearly considered the vaccination requirement to be necessary to supporting the health and safety of the federal workforce, and that judgment was well supported by scientific agency assessments and the government's recent experience during the pandemic. This Court should reject Plaintiffs' invitation to second-guess the President's decisions about how best to run the Executive Branch

### C.   Plaintiffs' Tenth Amendment Claim Fails.

The Court should reject Oklahoma's suggestion that EO 14043 violates the Tenth Amendment or generalized "federalism provisions." Mot. at 17. It is black-letter law that powers specifically delegated to the federal government by the Constitution "are not powers that the Constitution 'reserved to the States.'" *United States v Comstock*, 560 U.S. 126, 144 (2010) (citation omitted); *accord, e.g.*, *Hodel*, 452 U.S. at 291; *Okla. ex rel. Okla. Dep't of Pub. Safety v. United States*, 161 F.3d 1266, 1272 (10th Cir. 1998). So long as federal action is authorized by the Constitution, "the Tenth Amendment gives way." *United States v. Hatch*, 722 F.3d 1193, 1202 (10th Cir. 2013). As explained above, EO 14043 is a valid exercise of the President's authority to set the terms and conditions of employment in the federal workforce that he oversees. That authority is "clearly conferred in the Constitution," *Rydie*, 2021 WL 5416545, at *3, and "endorsed" by several statutory provisions granting the President power to oversee the federal civil service, *see id.*, none of which Oklahoma asserts is unconstitutional.[14]

---

[14] Although Plaintiffs fail to challenge the National Guard vaccination regulations, those too are plainly consistent with the Tenth Amendment because they are valid exercises of Constitutional authority. *See* Part I.

Oklahoma contends that the states' retention of authority over public health renders vaccination requirements "not a matter of federal concern." Mot. at 18. But that contention is wrong because "[t]he federal government's exercise of its enumerated powers does not infringe on powers reserved to the states under the Tenth Amendment." *Rydie*, 2021 WL 5416545, at *3 (citing *Hodel*, 452 U.S. at 291–92; U.S. Const. art. VI, cl. 2); *see also NASA v. Nelson*, 562 U.S. 134, 148 (2011) (the federal government "has a much freer hand" when acting as "manager of its 'internal operation'" than "'when it brings its sovereign power to bear on citizens at large'" (citation omitted)). That settles the Tenth Amendment question here. Because EO 14043 is a constitutional exercise of federal authority, the Court "necessarily must also conclude that the [Plaintiffs'] efforts to invoke abstract principles of federalism through the Tenth Amendment fail." *Town of Johnston v. FHFA*, 765 F.3d 80, 86 (1st Cir. 2014).[15]

Oklahoma's contention that the Supreme Court's decision in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) is "outcome-determinative," Mot. at 18, is "meritless, in addition to being inconsistent with Plaintiffs' federalism argument." *Rydie*, 2021 WL 5416545, at *3. This case does not present a situation where the President has acted outside his congressionally delegated authority.[16]

---

[15] The Tenth Amendment may also impose a bar to federal action that unlawfully "commandee[rs] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program." *Kelley v. United States*, 69 F.3d 1503, 1509 (10th Cir. 1995) (citation omitted). EO 14043, which merely sets conditions for continued federal employment, plainly does not do this. Because the President has not regulated "the States as States," there is "no Tenth Amendment impediment." *Hodel*, 452 U.S. at 286.

[16] Oklahoma's argument that EO 14043 "exceeds the federal government's Commerce Clause authority," Mot. at 19-20, is both wrong and irrelevant in light of the President's constitutional and statutory authority to issue the Executive Order. *See, e.g.*, *Rydie*, 2021 WL 5416545, at *3.

### D.     Plaintiffs' Nondelegation Claim Fails.

Plaintiffs' nondelegation claim is equally infirm.  "In a delegation challenge, the constitutional question is whether the statute has delegated legislative power to the agency." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 471, 472 (2001).  Yet this is not a case in which Congress has "delegate[d] away its own powers" and "lawmaking functions."  Mot. at 20. Rather, the President has authority under Article II to set internal employment policy for the Executive Branch, and the statutes that Plaintiffs invoke do not delegate the President legislative authority that would otherwise belong to Congress.  *See Serv. Emps. Int'l Union Local 200 United v. Trump*, 419 F. Supp. 3d 612, 620–21 (W.D.N.Y. 2019) (executive order was "not an impermissible exercise of legislative power, but a function of the President's role as head of the executive branch and his associated broad statutory authority to regulate executive branch employment policies"), *aff'd*, 975 F.3d 150 (2d Cir. 2020).

Even if this case involved a delegation of legislative power, the claim would still fail. Congress may lawfully delegate decision-making authority so long as it "clearly delineates [1] the general policy, [2] the public agency which is to apply it, and [3] the boundaries of this delegated authority." *Mistretta v. United States*, 488 U.S. 361, 372-73 (1989) (citation omitted). This standard is so deferential that the Supreme Court has "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." *Whitman*, 531 U.S. at 474–75 (quoting *Mistretta*, 488 U.S at 416 (Scalia, J., dissenting)). In fact, the Supreme Court has struck down congressional delegations only twice—both in 1935—and then only because "Congress had failed to articulate *any* policy or standard" to confine discretion. *Gundy v. United States*, 139 S. Ct. 2116,

2129 (2019) (plurality op.).  Over the last eighty years, the Court "has countenanced as intelligible seemingly vague principles in statutory text." *In re Nat'l Sec. Agency Telecomms. Recs. Litig.*, 671 F.3d 881, 896 (9th Cir. 2011) (citing multiple cases); *see also, e.g.*, *Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 646 (1980) (upholding delegation to determine what constituted a "safe" place of employment); *Gundy*, 139 S. Ct. at 2129 (noting that the Supreme Court has, on multiple occasions, "approved delegations to various agencies to regulate in the 'public interest'").  Here, the statutes relied upon are narrow in scope—dealing with the President's authority to set employment policy for the executive branch—and make clear that regulations must be tied to things like "the efficiency of [the] service," 5 U.S.C. § 3301(1), and "good administration," *id.* § 3302.  Plaintiffs' nondelegation challenge fails.[17]

### E.    Plaintiffs' Fourth Amendment Claim Fails.

Plaintiffs allege that requiring employees to be vaccinated violates the Fourth Amendment, Compl. ¶¶ 259–272, which "protects citizens from unreasonable searches and seizures by government actors," *United States v. Smythe*, 84 F.3d 1240, 1242 (10th Cir. 1996).  To begin, Oklahoma cannot assert the Fourth Amendment rights of third parties.  *See supra* Part I.A.2; *see also United States v. Poe*, 556 F.3d 1113, 1121 (10th Cir. 2009).  And in any event, the challenged vaccination requirement is not a "search" or "seizure."  An "invasion of privacy[] is not alone a search unless it is done *to obtain information*." *United States v. Jones*, 565

---

[17] Even if Plaintiffs had challenged the military vaccine regulation that actually applies to the National Guard, their non-delegation argument would fail.  Congress has directed the President to "prescribe regulations, and issue orders, necessary to organize, discipline, and govern the National Guard," 32 U.S.C. § 110, which is more than sufficient to pass constitutional muster.

U.S. 400, 408 n.5 (2012) (emphasis added); *accord id.* at 407; *Gaytan v. New Mexico*, No. 19-cv-0778, 2021 WL 1634383, at *4 (D.N.M. Apr. 27, 2021).  Plaintiffs' own authorities—which involve the collection of biological samples *to be analyzed for evidence of drug or alcohol use*—acknowledge this distinction.  *See Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 606, 616–18 (1989); *Schmerber v. California*, 384 U.S. 757, 767–772 (1966).[18]  By contrast, vaccination is not obtaining information or otherwise "'searching' [an employee] for something within the meaning of the Fourth Amendment."  *See Doe v. Bd. of Educ. of City of Chi.*, --- F. Supp. 3d ----, 2020 WL 1445638, at *8 (N.D. Ill. Mar. 24, 2020).  Moreover, as discussed below, no one is compelled to be vaccinated.

Nor does EO 14043 effect a "seizure," because "freedom of movement" is not being terminated or restrained by receiving a vaccine as a condition of employment.  *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012); *accord Brendlin v. California*, 551 U.S. 249, 254 (2007).  The Fourth Amendment's seizure analysis is not implicated where "an individual chooses [to] voluntarily . . . cooperate."  *United States v. Easley*, 911 F.3d 1074, 1079 (10th Cir. 2018).  An individual who chooses to be vaccinated to start or continue employment is not being coerced into receiving a vaccination.  *Smith*, 2021 WL 5195688, at *8; *see also Easley*, 911 F.3d at 1079.[19]

Ultimately, while Plaintiffs have tried to plead their personal privacy claim under the

---

[18] Plaintiffs also claim that the court in *B.A.B., Jr. v. Board of Education of the City of St. Louis*, 698 F.3d 1037 (8th Cir. 2012), treated "[f]orcible vaccinations" as "searches and seizures" under the Fourth Amendment.  Mot. at 20-21.  But nothing in *B.A.B.* supports this assertion.

[19] Because Plaintiffs cannot show a Fourth Amendment violation, their argument invoking the unconstitutional-conditions doctrine fails *a fortiori*.  *See Reedy v. Werholtz*, 660 F.3d 1270, 1277 (10th Cir. 2011) (explaining that "if no constitutional rights have been jeopardized, no claim for unconstitutional conditions can be sustained"); *see also Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 986 (7th Cir. 2012).

Fourth Amendment, courts have routinely rejected similar arguments asserted as a matter of substantive due process. *See, e.g., Smith,* 2021 WL 5195688, at *8; *Klaassen,* 2021 WL 3073926, at *25; *Norris v. Stanley,* --- F. Supp. 3d ---, 2021 WL 4738827, at *2 (W.D. Mich. Oct. 8, 2021), *appeal filed,* No. 21-1705 (6th Cir. Nov. 5, 2021). This Court should likewise reject Plaintiffs' Fourth Amendment claim.

### F.    Plaintiffs' Take Care Clause And Separation Of Powers Claim Fails.

Finally, there is no merit to Oklahoma's claim that "the President is also violating the separation of powers and the Take Care Clause." Mot. at 24; *see* Compl. ¶¶ 296–312. This claim collapses into Plaintiffs' argument that EO 14043 exceeds the President's statutory authority. The Supreme Court has rejected similar attempts to dress up statutory arguments in constitutional garb, holding that "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims." *Dalton v. Spector,* 511 U.S. 462, 473 (1994). In addition, the Supreme Court has held that "the duty of the President in the exercise of the power to see that the laws are faithfully executed" "is purely executive and political," and not subject to judicial direction. *Mississippi v. Johnson,* 71 U.S. (4 Wall.) 475, 499 (1866). To the government's knowledge, no court has *ever* found a violation of the Take Care Clause. In any event, as shown above, EO 14043 falls comfortably within the President's constitutional and statutory authority to regulate the federal civil service. *See supra* Part IV.A. Thus, Count XI is exceedingly unlikely to succeed.

## V.    The Equities And Public Interest Weigh Against Injunctive Relief.

The third and fourth requirements for issuance of a preliminary injunction "merge when the Government is the opposing party." *Nken v. Holder,* 556 U.S. 418, 435 (2009). These

factors tilt decisively against granting a preliminary injunction here.  Enjoining EO 14043 would harm the public interest in slowing the spread of COVID-19 among millions of federal employees and the members of the public with whom they interact.  In recognition of the Government's "compelling interest" in "[s]temming the spread of COVID-19," *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020), numerous courts reviewing EO 14043 and other "executive action designed to slow the spread of COVID-19" have concluded that "[t]he public interest in protecting human life—particularly in the face of a global and unpredictable pandemic—would not be served by" an injunction.  *Tigges v. Northam*, 473 F. Supp. 3d 559, 573–74 (E.D. Va. 2020); *see also, e.g., Rydie*, 2021 WL 5416545, at *5–6; *Altschuld*, ECF No. 23, at 11; *Church*, 2021 WL 5179215, at *18–19; *Smith*, 2021 WL 5195688, at *9.

An injunction against EO 14043 would also hamper "[t]he effective administration of the federal government, in which Defendants and the public have a deep and abiding interest." *Rydie*, 2021 WL 5416545, at *5.  The COVID-19 pandemic has interfered with numerous aspects of the government's work by, *e.g.*, forcing office closures; hampering employees' access to paper-based records; limiting official travel; and causing staffing shortages.  *See generally* Pandemic Response Accountability Committee, Top Challenges Facing Federal Agencies (June 2020), https://perma.cc/9D8L-J5MN.  Thus, enjoining EO 14043 would harm the public interest by interfering with the government's resumption of normal, pre-pandemic operations.

Although Plaintiffs fail to challenge the military's vaccination requirements, any injunction of those regulations would seriously and adversely impact the national security of the United States.  After consulting with "medical experts and military leadership," the Secretary of Defense "determined that mandatory vaccination against [COVID-19] is

necessary to protect the Force and defend the American people." Aug. 24, 2021 SecDef Memo, https://perma.cc/YZ9F-NNU2; *see also* Dec. 7, 2021 SecAF Memo, https://perma.cc/72K5-SN8E. The Court must "give great deference" to these leaders' "professional military judgments." *See Winter*, 555 U.S. at 24–25 (citation omitted); *see also Church*, 2021 WL 5179215, at *18 (similar).

These professional military judgments are supported by evidence showing COVID-19's harmful impact on the military. *See* Decl. of Maj. S. Stanley, Ex. D, ¶¶ 3–13 (detailing such impacts);[20] Decl. of Col. T. Rans, Ex. E, ¶¶ 9–12; *accord Church*, 2021 WL 5179215, at *18 (DoD vaccination requirement is "supported by a lengthy record replete with data demonstrating the necessity of a general vaccine mandate"); *Military COVID-19 Deaths*, https://perma.cc/T438-3TK5 (80 service members have died and none were fully vaccinated). *Id.* Vaccinations have promoted military readiness by reducing the risk of infections, hospitalizations, and deaths of service members, reducing the number of service members required to quarantine, and permitting a return to higher levels of occupancy in DoD facilities and in-person trainings. Ex. D ¶ 14; *see also* Ex. E ¶¶ 13–25. Vaccinations also permit service members to engage in joint training exercises with other countries that have vaccination requirements. Ex. D ¶ 14. Vaccinations are also required now to ensure troops

---

[20] COVID-19 has "impacted exercises, deployments, redeployments, and other global force management activities," Ex. D ¶ 6 (including rendering one of the Navy's eleven aircraft carriers non-operational because of an outbreak, *id.* ¶ 8); caused the cancellation of "19 major training events, many of which involved preparedness and readiness training with our foreign partners," *id.* ¶ 9; and "required significant operational oversight" by the most senior military leaders, *id.* ¶ 4. In addition, because health care providers have had to care for COVID-19 patients, certain service members have not been able to "address non-emergency conditions and undergo routine medical and health assessments that are required under military directives to maintain medical readiness." *Id.* ¶¶ 12–13.

can respond and deploy quickly.  Ex. B ¶ 9.  For all these reasons, enjoining the vaccination directive would significantly harm national security.

The requested injunction would also impinge upon the military's authority to handle matters of good order and discipline without interference from the Judiciary.  *Chappell v. Wallace*, 462 U.S. 296, 300–01 (1983); *Bois v. Marsh*, 801 F.2d 462, 467-68 (D.C. Cir. 1986).  The National Guard has specific processes that must be followed prior any discipline or adverse employment action, *see* Ex. C ¶¶ 10–23.  An injunction prohibiting the military from initiating or completing those processes "would be a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities."  *Orloff v. Willoughby*, 345 U.S. 83, 95 (1953); *cf. White v. Carlucci*, 862 F.2d 1209, 1212 (5th Cir. 1989) (stating that *Sampson* "explicitly mandates that courts must consider the disruptive effect on the administrative process of the federal government of granting preliminary injunctions in government-employment-related cases").  This, too, would be contrary to the public interest.  *See Chilcott*, 747 F.2d at 33 (noting the "strong judicial policy against interfering with the internal affairs of the armed forces"); *see also Reinhard*, 209 F. Supp. 3d at 221; *Guerra*, 942 F.2d at 275; *Shaw*, 2021 WL 1840397, at *10.

## CONCLUSION

The court should deny Plaintiffs' motion.[21]

Dated: December 22, 2021                    Respectfully submitted,

                                                         BRIAN M. BOYNTON

---

[21] Plaintiffs seek only an injunction within Oklahoma.  *See* Mot. at 25.  If the Court were to enter any relief, there would be no basis for the Court to award broader relief than Plaintiffs are seeking.  *See, e.g.*, *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring) (nationwide injunctions "take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch.").

Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

CHRISTOPHER R. HALL
CARLOTTA P. WELLS
Assistant Directors

/s/ *Zachary A. Avallone*
_____
STEVEN A. MYERS
ANDREW E. CARMICHAEL
Senior Trial Counsels
ZACHARY A. AVALLONE (DC Bar No. 1023361)
JOSEPH J. DEMOTT
COURTNEY D. ENLOW
CODY T. KNAPP
R. CHARLIE MERRITT
KENZIE K. OVERING
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 514-2705
E-mail: zachary.a.avallone@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

On December 22, 2021 I electronically submitted this document to the clerk of court for the U.S. District Court for the Western District of Oklahoma using the electronic case filing system of the Court.  I certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Zachary A. Avallone
ZACHARY A. AVALLONE
Trial Attorney
U.S. Department of Justice