IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

STATE OF OKLAHOMA, *et al.*,
                *Plaintiffs*,

v.

JOSEPH R. BIDEN, JR., *et al.*,
                *Defendants*.

Case No: 5:21-cv-01136-F

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiffs possess the requisite standing to bring this action, and their constitutional and statutory claims have merit. Plaintiffs also have sued to enjoin the correct vaccine mandate, a fact that was always obvious and is now shored up further in the Amended Complaint. Defendants' arguments to the contrary lack merit.

**I.  PLAINTIFFS CHALLENGED THE ORDER GOVERNING THE NATIONAL GUARD.**

Defendants argue that Plaintiffs have failed to challenge the vaccine mandate governing the National Guard. *See* Doc. 37, at 8–11. But that is untrue because the President's September 9, 2022, announcement and Executive Order 14043 was the *fons et origo* of all the Executive Branch vaccine mandates imposed on the federal workforce, including military and National Guard members. Given the high stakes, Defendants should not be allowed to turn this litigation into a shell game.

Specifically, the impetuses for subjecting National Guard members to this mandate are EO 14043 and subsequent U.S. Department of Defense policy. Defendants misleadingly suggest that the vaccine mandate applicable to National Guard members is attributable to U.S. Department of Defense Instruction ("DoDI") 6205.02 §§ 1.2(c),

2.12(b); AR 40-562, §§ 3–2(b), 4–7(b), https://perma.cc/ZU4H-CBA3. But that document was issued on July 23, 2019 (*see* Doc. 37, at 8–11)—well before the COVID-19 pandemic. The real driver for the mandate applicable to National Guard members is that the President decided he wanted to mandate vaccines on federal employees and Guard members. The President, therefore, issued EO 14043 to so effectuate. Then executive agencies, including the U.S. Department of Defense, began implementing rules and instructions to thus enforce the mandate. Those instructions imposed the vaccine mandate on Guard members, among others. Defendants' suggestion to the contrary is an illusion apparently intended to obfuscate the President's overarching role in mandating all these vaccinations.

Out of an abundance of caution, Plaintiffs' Amended Complaint explicitly challenges the President's or the Secretary of Defense's vaccine mandate imposed on the National Guard, whether imposed pursuant to EO 14043, 6205.02 §§ 1.2(c), 2.12(b); AR 40-562, §§ 3–2(b), 4–7(b), or both, which is another source of the injury of which Plaintiffs have complained. *See* Am. Compl., ¶ 14. Any reference to EO 14043 or other federal action in Plaintiffs' Complaint or any other pleading should therefore be construed to include the President's or the Secretary of Defense's vaccine mandate imposed on the National Guard, whatever the source of authority. Defendants should not be permitted to hide the ball by conducting a duplicitous pincer movement aimed at defeating an otherwise meritorious lawsuit.

Finally, individual Plaintiffs challenge just *one* aspect of the injury caused by the vaccine mandate—namely, its impact on the National Guard. *See, e.g.*, Compl., at ¶¶ 9–13, 24–39. Thus, even if the individual Plaintiffs were dropped from this case, the injury

suffered by Oklahoma from the vaccination policy imposed on federal employees and Guard members would still provide ample basis for standing and a preliminary injunction.

## II. ALL THE PLAINTIFFS HAVE STANDING.

Defendants further argue, *see* Doc. 37, at 12, that the individual Plaintiffs have not been properly anonymized and that they have not challenged the correct Executive Branch action. They also argue that State Plaintiffs lack *parens patriae* standing to protect the rights of Oklahomans and that the State has not shown that any injury it would suffer would be concrete and particularized. *See id*. at 11–19. All of these arguments likewise lack merit.

First, as articulated in the previous section, individual Plaintiffs have challenged the correct Executive Branch action. Even if they had not done so, that has now been rectified in the Amended Complaint. *See* Am. Compl., ¶ 14. Moreover, the Motion for Protective Order filed today would resolve any concerns regarding the preservation of individual Plaintiffs' anonymity, as they are currently members of the Oklahoma Air National Guard. In addition, individual Plaintiffs have suffered concrete and particularized injury because the vaccine mandate imposed on them would require them either to submit to a forced vaccination or to lose their jobs if they decline to do so.

With respect to Defendants' contention, *see* Doc. 37 at 12–13, that individual Plaintiffs have not completely demonstrated the injuries this mandate inflicts on them: the declarations, statutory evidence, and common sense adduced by Plaintiffs all foreclose that argument. *See* Doc. 9 at 5–7; Declarations [Doc. 26–33]. In any event, "[a]t the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given

the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (quoting *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)). Here, the individual Plaintiffs have provided evidence in the form of declarations showing that they will be harmed by the vaccine mandate, which would place them in an impossible position—squarely between the proverbial Scylla and Charybdis. *Cf. BST Holdings v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (Plaintiffs "seeking a stay in this case will also be irreparably harmed in the absence of a stay, whether by the business and financial effects of a lost or suspended employee."). That is enough to establish standing as well as irreparable injury.

Second, State Plaintiffs have *parens patriae* standing as well as standing resulting from their sovereign interests. Oklahoma is "entitled to special solicitude in the standing analysis" and is entitled "to litigate" cases against the federal government "as *parens patriae* to protect quasi-sovereign interests—*i.e.*, public or governmental interests that concern the state as a whole." *Massachusetts v. EPA*, 549 U.S. 497, 520 & n.17 (2007). Several other federal courts have already recognized the States' *parens patriae* or sovereign-interest standing to challenge federal COVID-19 vaccine mandates.[1] One decision held that Kentucky has *parens patriae* standing to challenge the federal contractor mandate. *See Kentucky*, 2021 WL 5587446, at *3. Another recognized that "Plaintiff States have a '*parens patriae*' standing and/or a quasi-sovereign interest in protecting its citizens

---

[1] *See Missouri v. Biden*, No. 4:21-CV-1300, 2021 WL 5998204 (E.D. Mo. Dec. 20, 2021); *Georgia v. Biden*, No. 3:21-cv-55, 2021 WL 5779939 (S.D. Ga. Dec. 7, 2021); *Kentucky v. Biden*, No. 3:21-cv-00055-GFVT, 2021 WL 5587446 (E.D. Ky. Nov. 30, 2021); *Louisiana v. Becerra*, No. 3:21-CV-03970, 2021 WL 5609846 (W.D. La. Nov. 30, 2021).

from being required to submit to vaccinations." *Louisiana*, 2021 WL 5609846, at *5. And in *Missouri*, the district court recognized that State Plaintiffs had standing because the States "ha[d] alleged sufficient injuries to establish standing for their sovereign interest claims. Each state alleges that the contractor mandate ostensibly preempts state statutes regarding vaccine mandates." 2021 WL 5998204, at *3. These holdings squarely rebut the Defendants' arguments here.

Both as a matter of the State's *parens patriae* interests and its sovereign interests generally, the harm visited upon Oklahoma and its residents by the vaccine mandate is the State's concrete and particularized concern. Under *Massachusetts*, this vaccine mandate's infliction of harm on individuals in Oklahoma through the violation of their individual rights under the Constitution and laws injures Oklahoma's "well-founded desire to preserve its sovereign territory." 549 U.S. at 519. As Oklahoma has shown, the forcible vaccination or job loss facing Oklahoma residents will harm the State residents' bodily integrity and morale, the State's tax base, its security interests, its laws and public policy—including its right to legislate in the vaccination space—and the State's other sovereign and territorial prerogatives. *See* Doc. 9 at 5–7. Those are all concrete, particularized injuries.

By attempting to preempt the field through the Supremacy Clause, this vaccine mandate is blocking Oklahoma from legislating in this arena and, in so doing, from allowing her residents who happen to be federal employees and Guard members to be free from the obligation to vaccinate. As the *Louisiana* court concluded with respect to another recent federal vaccine mandate, "the Plaintiff States have standing to regulate matters they

believe they control, to attack preemption of state law by a federal agency, and to protect the enforcement of state law." 2021 WL 5609846, at *5. That is also true here.

### III.   DEFENDANTS' ARGUMENTS ON THE MERITS LACK MERIT.

Defendants have also advanced several arguments challenging Plaintiffs' position on the merits. *See* Doc. 37 at 8–11, 23–40. But each of those arguments is meritless.

#### A. Nothing in Title 10 or Title 32 Authorizes the Executive to Forcibly Vaccinate Guard Members.

Defendants first contend that Congress, by enacting various Title 10 and Title 32 provisions, has enabled the Executive to mandate that Guard members be vaccinated against COVID-19. *See id*. at 8–11. But that contention suffers from the same fatal flaw that plagues the rest of the EO 14043-based mandatory vaccination policies—namely that Congress never said so, and that an express authorization would have been required.

Nothing in Titles 10 or 32 permits the President to impose a vaccine mandate on National Guard members or any federal employees. Under the statute's plain language, the President's and his Department of Defense officials' authority is to "organize, discipline, and govern *the National Guard*," 32 U.S.C. § 110 (emphasis added), not individual *members* of the Guard.  That reading is reinforced by court decisions holding that, at least until a State's Guard unit is mobilized, the unit and its members remain under the Governor's control. *See Gilbert v. United States*, 165 F.3d 470, 473 (6th Cir. 1999); *accord Ass'n of Civilian Technicians, Inc. v. United States*, 603 F.3d 989, 993–94 (D.C. Cir. 2010) (cleaned up) ("[t]he daily operations of the national guard units are ... recognized generally to be under the control of the states."). Thus, the plain text of Section 110 gives the President no power to issue vaccine mandates on the private person of a Guard member.

Certainly, the President's authority to "organize" the Guard does not confer the right to mandate vaccination. The Merriam-Webster dictionary defines "organize" as "to form into a coherent unity or functioning whole;" "to set up an administrative structure for;" or "to arrange by systematic planning and united effort." https://www.merriam-webster.com/dictionary/organize. And the American Heritage defines "organize" as "[t]o put in order; arrange in an orderly way" or "[t]o cause to have an orderly, functional, or coherent structure." https://www.ahdictionary.com/word/search.html?q=organize. This authority—in essence, the authority to create a coherent management structure for the Guard—simply doesn't extend to personal decisions by individual Guard members about matters like vaccination.

Nor does the authority to "discipline" the Guard entail the right to mandate vaccination, especially of individual Guard members who haven't been mobilized. "Discipline" is defined as "to punish or penalize for the sake of enforcing obedience and perfecting moral character;" "to bring (a group) under control;" or "to impose order upon." https://www.merriam-webster.com/dictionary/discipline. The authority to "discipline," then, merely includes the authority to enforce compliance with rules that the President *otherwise* has authority to impose; it does not itself give the President the authority to require vaccination of individual Guard members. *See Ass'n of Civilian Technicians*, 603 F.3d at 993–94; *Lipscomb v. Fed. Labor Relations Auth.*, 333 F.3d 611, 614 (5th Cir. 2003).

The same is true of the authority to "govern," defined as "to control, direct, or strongly influence the actions and conduct of" or "to exert a determining or guiding influence in or over." https://www.merriam-webster.com/dictionary/govern. Here again,

7

the word "govern" makes sense only as an authority over the Guard as an institution. And this is confirmed by the principle of *noscitur a sociis*—especially the placement of the word "organize" at the beginning of the list of presidential authorities, before "govern." Thus the authority to "govern the National Guard" concerns the Guard only as an institution and does not permit the President to impose vaccine mandates on non-mobilized Guard members. *See Ass'n of Civilian Technicians*, 603 F.3d at 993–94 (statute does not permit the President to control "[t]he daily operations" such as vaccination requirements on non-mobilized Guard members).

In short, nothing in any of the dictionary definitions, generally reflective of the ordinary meaning, permits the Executive to interfere with the bodily integrity of Guard members, let alone with their core medical decisions like vaccinations. Followed to its logical consequences, Defendants' interpretation is boundless and devoid of a limiting principle. It would allow the Executive to do *anything it wants* to a Guard member.[2]

The Major Questions Doctrine also supports Plaintiffs' interpretation of the statutes on which Defendants rely: Congress has never expressly or directly permitted the

---

[2] Other provisions in the United States Code likewise provide no support to Defendants' claimed statutory authority. *See* Doc. 37, at 8–11. For instance, the authority of the Secretaries of the Army and Air Force to "prescribe such regulations as the Secretary considers necessary to carry out provisions of law relating to the reserve components," 10 U.S.C. § 10202(a), cannot be interpreted to give those Secretaries power beyond the legitimate functions of the Guard when mobilized. And it does not include the vaccine mandate. The same is true of the National Guard Bureau's authority to "[i]ssu[e] directives, regulations, and publications consistent with approved policies of the Army and Air Force." 10 U.S.C. § 10503(11); *see also* 10 U.S.C. §§ 7013(b)(9), 9013(b)(9), 113(b). Both of those authorities merely allow the Secretaries to implement *other* authorities, and therefore cannot be considered sources of substantive authority over Guard members, especially those who haven't been mobilized.

Executive to impose anything as vast in economic, political, moral, or other significance as a vaccine mandate on National Guard members or any federal employees. Under this doctrine, the Supreme Court repeatedly has insisted that courts should refrain from assuming that Congress *implicitly* has delegated questions of "'deep economic and political significance'" to the Executive Branch. *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021) (quoting *Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014)). Indeed, a clear and direct statement from Congress is required before the courts will make that inference. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000). This is a corollary of the familiar interpretive principle that courts should not read "a specific concept into general words when [it is clear] that Congress knew how to identify that concept." W. Eskridge, Interpreting Law 415 (2016); *see also Arlington Cent. Sch. Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 297–98 (2006). Here, Congress needed to have spoken sufficiently clearly to authorize a vaccine mandate—but never did so. As a consequence, nothing in Titles 10 or 32 or any other statutory provision gives the Executive the authority to issue a vaccine mandate on National Guard members.

**B.   Plaintiffs Have a Private Right of Action to Claim That the Executive is Acting Without Statutory Authority.**

Defendants are also wrong to argue that Plaintiffs are without a private right of action under the civil service statutes—5 U.S.C. §§ 3301, 3302, and 7301—to lodge those claims. *See* Doc. 37 at 23. Plaintiffs are not invoking their own rights under those statutory provisions; they are arguing that Defendants are without authority under those provisions to require COVID-19 vaccinations of any federal employees or Guard members.

9

### C.     The Vaccine Mandate Violates the Constitution's Tenth Amendment and Other Federalism Provisions.

Defendants also argue that EO 14043 does not violate the Tenth Amendment and other federalism provisions in the Constitution because the federal government is just managing its own employees, which does not affect States. *See* Doc. 37 at 32–33. However, when the Guard members are not mobilized under Title 10, they report to the Governor of their State as their Commander-in-Chief. *See Gilbert*, 165 F.3d at 473. Therefore, the sovereignty, laws, and public policy of the States are injured by this mandate. Through this mandate, the federal government wants to take over the States' apparatus in violation of the Tenth Amendment's anti-commandeering principle, *see New York v. United States*, 505 U.S. 144, 149 (1992), and other federalism guarantees.[3]

### CONCLUSION

The Court should grant a preliminary injunction and halt the government from forcing Guard members and federal employees to vaccinate on pain of losing their jobs.

---

[3] Defendants also suggest the mandate does not violate the Fourth Amendment because vaccination is not for the purpose of obtaining information and does not restrain movement. *See* Doc. 37 at 35–37. The first contention is pointless (because the goal need not be obtaining information for a forced vaccination to count as a search) and the second is erroneous since a vaccination is impossible unless a person's movement is restrained. *See Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)) ("the 'seizure' of a 'person'" may "take the form of … a 'show of authority' that 'in some way restrain[s] the liberty' of the person."); *B.A.B., Jr. v. Board of Educ. of City of St. Louis*, 698 F.3d 1037, 1039–40 (8th Cir. 2012) (treating forcible vaccinations as "search[es] and seizure[s]" for Fourth Amendment purposes).

Respectfully submitted,

Mithun Mansinghani
 *Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
OF THE STATE OF OKLAHOMA
313 NE 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Mithun.mansinghani@oag.ok.gov

<u>*/s/ Gene C. Schaerr*</u>
Gene C. Schaerr*
H. Christopher Bartolomucci*
Riddhi Dasgupta*
Brian J. Field*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com
cbartolomucci@schaerr-jaffe.com
sdasgupta@schaerr-jaffe.com
bfield@schaerr-jaffe.com
* Admitted *pro hac vice*

*Counsel for Plaintiffs The State of Oklahoma; J. Kevin Stitt, Governor of Oklahoma; John M. O'Connor, Attorney General of Oklahoma; and 16 Oklahoma National Guard Members*

Dated: December 27, 2021