**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| STATE OF OKLAHOMA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | Case No. CIV-21-1136-F |
| | ) | |
| JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

## A. INTRODUCTION

The plaintiffs have filed a motion for protective order, doc. no. 40, seeking permission for sixteen individual plaintiffs, members of the Oklahoma Air National Guard, to proceed anonymously in this action. Defendants have responded, doc. no. 43, and plaintiffs[1] have replied. Doc. no. 45.

Plaintiffs are Guard members who have refused to be vaccinated against COVID-19. As they put it, they "are trying to avoid having to take the COVID-19 vaccine." Doc. no. 45, at 8. Thus, they challenge the defendants' requirement that, as members of a statutory reserve component of the armed forces of the United

[1] The motion was filed by all plaintiffs, but focuses, of course, on the sixteen who seek to proceed anonymously. For brevity, this order will refer to those sixteen simply as the plaintiffs. Plaintiffs' reply in support of the motion included declarations by or on behalf of two of those sixteen, specifically Guard Member No. 8 (declaration filed on his behalf by Ruan J. Meintjes) and Guard Member No. 11 (declaration executed anonymously). Since the gender of those plaintiffs is undisclosed, the court will refer to them using the pronouns commonly used, in appropriate contexts, to indicate indefinite gender ("he" and "his").

States, they take an FDA-approved COVID-19 vaccination (or successfully seek an exemption). Plaintiffs have no objection to their identities becoming known to the court, to defendants' counsel and to defendants' personnel who are "actually engaged in the preparation of this litigation for trial or other proceedings," but they do not want anyone else–in the military or not–to know who they are. Doc. no. 40-1, at 1-2. Plaintiffs assert that they will be harmed in various ways if their identities were to become publicly-available information.[2] The persuasiveness of those assertions will be addressed later in this order. It is necessary, first, to look at the standards governing the court's consideration of this motion, as established by the Court of Appeals.

## B. THE APPLICABLE STANDARD

The definitive Tenth Circuit case guiding the court's discretionary decision as to whether to permit plaintiffs to proceed anonymously is Femedeer v. Haun, 227 F.3d 1244 (10th Cir. 2000). In Femedeer, a convicted sex offender sought to proceed anonymously because he did not want his identity to be known while he prosecuted his constitutional challenge to Utah's system of posting information about sex offenders on the internet. Judge Ebel's opinion for the court pointed out, as an initial matter, that "[p]roceeding under a pseudonym in federal court is, by all accounts, 'an unusual procedure.'" *Id.* at 1246 (quoting from M.M. v. Zavaras, 139 F.3d 798, 800 (10th Cir. 1998)). No specific statute or rule authorizes that practice. *Id.* "To the contrary, the Federal Rules of Civil Procedure mandate that all pleadings contain

[2] Plaintiffs' motion, as filed on December 27, 2021, makes broad factual assertions, but provides no supporting evidence at all, in the form of declarations or otherwise. The factual support for the motion, such as it is, came only with the reply, doc. no. 45. A contention first advanced in a reply brief may be disregarded. Gutierrez v. Cobos, 841 F.3d 895, 903 (10th Cir. 2016). The court has nevertheless reviewed the reply and the factual support proffered, for the first time, in that document. The court will, in its discretion, consider the matters advanced for the first time in the reply.

the name of the parties," and, under Rule 17(a), "[e]very action shall be prosecuted in the name of the real party in interest." *Id*. (quoting Rule 17(a)).

After covering those basics, the court, in Femedeer, looked to the Eleventh Circuit's decision in Doe v. Frank, 951 F.2d 320, 324 (11th Cir. 1992) for the factors to be considered. Specifically: "'Lawsuits are public events. A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving [1] matters of a highly sensitive and personal nature, [2] real danger of physical harm, or [3] where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.'" Femedeer, 227 F.3d at 1246 (quoting from Doe v. Frank; numbering added).

After endorsing the Doe v. Frank factors, the court added its observation–essentially as a fourth factor–that "it is proper to weigh the public interest in determining whether some form of anonymity is warranted." *Id.* On that score, the court elaborated that "the public has an important interest in access to legal proceedings, particularly those attacking the constitutionality of popularly enacted legislation." *Id.* Although the court made no final determination as to whether to permit the plaintiff to proceed anonymously (it gave him permission to file a motion to proceed anonymously), it noted, fairly pointedly, that plaintiff "has not established real, imminent personal danger," and that "[o]rdinarily, those using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials." *Id.*

**C. ANALYSIS**

The court will address the Femedeer factors as follows:

- Do the plaintiffs seek to avoid disclosure of, or does this case otherwise involve, matters of a highly sensitive and personal nature?
- Have plaintiffs demonstrated a real danger of physical harm?
- Would disclosure of plaintiffs' identities cause them to suffer the very injury they seek to avoid in this action?

- Is it in the public interest to permit the plaintiffs to proceed anonymously?

---

1. Matters of a highly sensitive and personal nature.

A decision to be vaccinated, or not, against COVID-19 is certainly a personal matter, but it is not intrinsically sensitive, let alone highly sensitive. Most of the American population has made that decision, one way or the other. Many who get vaccinated spread the word about that far and wide, as do many of those who decline to be vaccinated. Likewise, a decision to participate, or not, as a plaintiff in this case, though surely a personal decision, can be called highly sensitive, if at all, only in the framework of the other three factors discussed below.[3]

Some of the plaintiffs assert, in very general terms, a faith-based reason for objecting to taking the COVID-19 vaccine.[4] It is one thing to accept a profession of faith at face value (as courts should do in virtually every instance). It is quite another to ask a few simple questions for the purpose of at least ascertaining the faith-based reason–as opposed to some other, less protected, basis for a personal preference–for which a plaintiff objects to the COVID-19 vaccine but not to the nine other FDA-

---

[3] In their opening brief, plaintiffs express concern that they "may be called upon to discuss deeply private and personal details of their lives–including medical information and religious positions." Doc. no. 40, at 3. Given the stringency of the approach suggested by the court in Femedeer, it is doubtful that a need to disclose medical information or "religious positions" would provide significant support to a request to litigate anonymously. But there is no need to dwell on that point because if it becomes necessary for the court to review a plaintiff's medical information or to become familiar with his religious beliefs, any legitimate need for privacy can, at that point, be accommodated by way of a routine protective order safeguarding the confidentiality of that information. A district court in Florida reached the same conclusion in the context of a broader challenge to the military vaccination mandate. Doe v. Austin, Case No. 3:21-cv-1211-AW-HTC, N.D. Fla., Order, ECF 49, at 4 (Dec. 1, 2021).

[4] *See*, doc. no. 45, at 5, and declarations there cited.

approved vaccines he has already been required to take.[5] The question now before the court is not whether a proffered faith-based reason is valid. The question presented by the present motion is whether being publicly associated with that faith-based reason would be more "highly sensitive and personal" than the prospect of exposure as a sex offender, which drew the palpable skepticism of the Court of Appeals in Femedeer as a reason to be granted permission to litigate anonymously. The materials before the court provide no basis for a conclusion that public association with a faith-based objection to vaccination would trigger any blowback at all, let alone obloquy commensurate with that accorded sex offenders.[6]

2. Real danger of physical harm.

A declaration signed by Ruan J. Meintjes[7] on behalf of Guard Member No. 8 asserts that if Guard Member No. 8, a pilot, were to be shot down, he

---

[5] Only one of the plaintiffs, Guard Member No. 3, has suggested the possibility of a factual distinction, relevant to his religious faith, which might differentiate a COVID-19 vaccine from other vaccines. Doc. no. 28, at 2, ¶ 7. Although it is not necessary to parse that claim at this point, the court will note that the materials in the record now before the court do not show, one way or the other, whether any of the vaccines which might be administered (let alone all of them) have the characteristic Guard Member No. 3 finds objectionable on religious grounds.

[6] Although not directly relevant to the present motion, it is worth noting that discussion of religious objections, in this judicial forum, may well be premature. Though it refers to religious objections in many places, the first amended complaint discloses nothing about the status of any "Religious Accommodation Requests" which any of the plaintiffs may have submitted. *Cf.*, doc. no. 37-3 (Decl. of Col. Charles Nichols Jr.), at ¶¶ 4-7 (discussing procedure for Religious Accommodation Requests).

[7] Mr. Meintjes identifies himself as a legal intern. His declaration purports to recount factual representations made by Guard Member No. 8. There is no explanation as to why the declaration could not have been written by Guard Member No. 8 himself, with his signature withheld to preserve anonymity, as was the case with the declaration of Guard Member No. 11. This is no small matter, because Mr. Meintjes' declaration is argumentative, overwrought, and, on the whole, of limited persuasive value. Mr. Meintjes' declaration may be a disservice to the person for whom he purports to speak, because it is not possible to determine how much of the hyperbole is that of Mr. Meintjes and how much originated with Guard Member No. 8. Obviously, that deficit is not, in any event, chargeable to the defendants.

> would be viewed as the golden prize by America's enemies. And if America's enemies know who the particular Guard members are because their names are plastered over national media, then it will become easier for them to extort those Guard members' families and their country. Disclosing Guard members' identities in this fashion would undermine all of their training; and almost surely would greatly endanger them.

Doc. no. 45-1, at 1-2. As for the family of Guard Member No. 8, the declaration elaborates that:

> If the public were aware of Oklahoma Air National Guard Member 8's identity, it would also compromise this individual's family's safety. There are unstable people out there, and Oklahoma Air National Guard Member 8 is greatly concerned that such individuals would come after Oklahoma Air National Guard Member 8 or their family if they knew who Oklahoma Air National Guard Member 8 was, given the over-politicized nature of vaccine mandates where some politicians are saying that people like this individual are dangerous to society.

*Id.* at 2.

The first assertion quoted above is a complete *non sequitur*. Taking this hypothetical on its own terms, a downed pilot, bearing no identification,[8] does not become identifiable to his captors because his name was associated with a lawsuit challenging a vaccination mandate. The second assertion, in which Guard Member No. 8 seeks to bring his family into the discussion, is equally unpersuasive. Plaintiffs cite no instances, and none are known to the court, in which persons choosing to go unvaccinated have, for that reason, faced, in the words of the Court of Appeals, a "real danger of physical harm" (other than the danger of physical harm incident to incurring a 14.6-fold increase in the risk of hospitalization with COVID-19[9]). Guard

---

[8] As to a downed pilot's lack of identification, *see* Declaration of Oklahoma Air Guard Member 11, doc. no. 45-2, at ⁋ 5.

[9] Decl. of Maj. Scott Stanley, doc. no. 37-4, ⁋ 16.

Member No. 11 makes a similar assertion. Doc. no. 45-2, ⁋ 7. That version is equally far-fetched.

Guard Member No. 8 also poses the possibility of exposure to "criticism, ostracism, or vitriol" if his objection to taking the vaccine were known. Doc. no. 45-1, ⁋ 10. As subjective, psychogenic harms go, this would be in the same general category as embarrassment. "The risk that a plaintiff may suffer some embarrassment is not enough." Femedeer, 227 F.3d at 1246. If the embarrassment inherent in being exposed as a sex offender (as in Femedeer) will not suffice, the possibility of criticism for not taking the vaccine would not support a request to proceed anonymously. Criticism, ostracism and vitriol plainly fall short of a "real danger of physical harm." *Id*. As the district court for the District of Columbia noted in Doe v. Raimondo, Case No. 1:21-mc-00127-UNA, D.D.C., Memorandum and Order, ECF 1 (Oct. 14, 2021), "[p]ublic and non-public figures routinely speak out in favor of or against vaccine requirements without facing the kinds of retaliation that plaintiffs hypothesize. In any event, being subject to criticism in the public sphere, even if intense, does not pose a risk of mental harm sufficient to support anonymity." *Id.* at 7. Moreover, to the extent that criticism, or retaliation, might come from above Guard Member No. 8 in the chain of command, it is undisputed that his vaccination status is known within the military. Proceeding anonymously in this litigation would have no impact on that. *See*, Doe v. Austin, Case No. 3:21-cv-1211-AW-HTC, N.D. Fla., Order, ECF 49, at 5 (Dec. 1, 2021) (challenge to military vaccine mandate).

3. Suffering the very harm they seek to avoid in this action.

If the "injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity," Femedeer, 227 F.3d at 1246, that factor cuts in favor of anonymity. In Femedeer, the "injury litigated against" was dissemination of information about plaintiff's sex offender status via Utah's sex offender website. Denial of the opportunity to litigate anonymously would have substantially defeated the

whole purpose of the lawsuit (although it does not appear that the Court of Appeals was impressed with that argument as a justification for proceeding anonymously). In the case at bar, the primary "injury" litigated against is the application of the vaccine mandate to plaintiffs, as members of the Oklahoma Guard. First Amended Complaint, doc. no. 38, at 90. Denial of the opportunity to litigate anonymously will not impair any substantive right plaintiffs may have to avoid application of the mandate to them. To be sure, plaintiffs complain of possible collateral consequences, such as criticism and ostracism. To the extent that those consequences might ensue *within* the Oklahoma Guard, the operative facts as to vaccination status are already known (or readily available) within the chain of command. To the extent that plaintiffs are concerned about criticism and ostracism from outside sources, the sufficiency of those concerns is addressed elsewhere in this order.

4. The public interest.

If anything is clear from the court's guidance in Femedeer, it is clear that there is an important public interest in openness of legal proceedings. That is the beginning point.

In their motion and their reply, plaintiffs focus almost entirely on their personal preferences, giving only the most fleeting attention to the issue of the public interest. With one exception (addressed below), the declarations of Guard Member No. 8 and No. 11 make only passing, and unsupported, references to compromise of their military missions if their identities are known. *E*.g., doc. no. 45-1, at ¶ 7 (Guard Member No. 8). Guard Member No. 11 does get more specific on one point. Guard Member No. 11 states that disclosure of his identity would be likely "to take me out of the fight" and, consequently, that "our enemies would be aware of this reduction in forces that could be brought against them, and could take additional hostile action based on that knowledge." Doc. no. 45-2, ¶ 6. To say no more, there is no semblance of a showing in this record that any foreign power, knowing that Guard Member No.

11 (or, for that matter, any combination of individual plaintiffs in this case) would be nondeployable, would thereby be emboldened to initiate or intensify hostilities against the United States. Aside from that, it is clear to the court that the proximate cause of any of the plaintiffs being classified as nondeployable would be his vaccination status, not his identification as a plaintiff in this action.

Running counter to these feeble assertions by the plaintiffs is the fact that "[a]s many courts have recognized, there is a heightened public interest when an individual or entity files a suit against the government." In re Sealed Case, 971 F.3d 324, 329 (D.C. Cir. 2020). The court also notes that plaintiffs' motion states that some of the plaintiffs "hold some very senior positions within their respective units." Doc. no. 40, at 3. They state that they hold "sensitive and consequential positions" in the Oklahoma Air National Guard. Doc. no. 45, at 2. That also heightens the public interest in knowing who is involved, the relief they seek, and the factual and legal contentions they proffer in support of their claims.

When public employees sue other public employees (including the Secretary of Defense), raising an array of public law issues, "the public interest in knowing the detail[s] of the litigation that could affect government policy all around the country is particularly great." Doe v. Raimondo, at 8 (civilian vaccine mandate challenge). The court concludes that the public interest would not be served by permitting plaintiffs to proceed anonymously in this case.

## D. CONCLUSION

For the foregoing reasons, the plaintiffs' motion for protective order, doc. no. 40, is **DENIED**.

To facilitate compliance with this ruling, it is **FURTHER ORDERED** that plaintiffs shall file a second amended complaint, not later than February 15, 2022, identifying by name those individual plaintiffs who elect to proceed as named and

identified plaintiffs in this action. The only change in the second amended complaint, from the first amended complaint (doc. no. 38), shall be the identification of the plaintiffs who elect to proceed as named and identified plaintiffs. With the filing of the second amended complaint, this action shall be deemed dismissed without prejudice as to all individual plaintiffs referred to in paragraphs 28 through 44 of the first amended complaint who do not elect to proceed as named and identified plaintiffs. As per the enter order at doc. no. 47, defendants shall respond to the second amended complaint not later than February 23, 2022.

Dated this 2nd day of February, 2022.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-1136p008.docx