## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

STATE OF OKLAHOMA, *et al.*,

    Plaintiffs,

      v.

JOSEPH R. BIDEN, JR., in his official
capacity as President of the United States, *et al.*,

    Defendants.

No. 5:21-cv-01136-F

## **DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

BACKGROUND ............................................................................................................1

I.      Factual Background ............................................................................................1

        A.      Department Of Defense COVID-19 Vaccination Directive .................................1

        B.      Organization And Regulation Of The National Guard .......................................3

        C.      Executive Order 14043 ...................................................................................5

II.     Procedural Background .....................................................................................6

LEGAL STANDARD ...................................................................................................6

ARGUMENT .................................................................................................................7

I.      The Court Lacks Jurisdiction. ............................................................................7

        A.      The State Of Oklahoma Lacks Standing To Challenge Executive Order 14043 Or The Military Mandate. ......................................................................................7

        B.      The Individual Plaintiffs Lack Standing To Challenge Executive Order 14043. .........10

                1.      Title 32 Guard Members And Dual-Status Technicians Are Not Subject To Executive Order 14043 .........................................................................10

                2.      The Title 5 Civilians' Claims Are Precluded By The CSRA And Otherwise Unripe. ...............................................................................................10

        C.      The Individual Plaintiffs Who Are Not Civilian Employees Have Not Exhausted Administrative Remedies As To The Military Mandate. ..................................13

II.     Plaintiffs Fail To State A Claim On Which Relief May Be Granted. ..........................13

        A.      The Military's Vaccine Requirements Are Valid Exercises Of Constitutional And Statutory Authority (Count XII). ..................................................................14

        B.      Executive Order 14043 Is A Valid Exercise Of The President's Authority, And Plaintiffs Lack A Cause Of Action To Challenge It. (Counts I, II, III). ......................15

                1.      The Civil Service Statutes Do Not Create An Implied Right Of Action. ..........15

                2.      EO 14043 Falls Within The President's Constitutional And Statutory Authority. ...........................................................................................15

        C.      Plaintiffs' APA Claims Should Be Dismissed (Count IV) .....................................19

        D.      Plaintiffs' Structural Constitutional Claims Fail (Counts V, VI, XI) ........................20

        E.      The Challenged Vaccine Requirements Do Not Violate Due Process (Count VII). .21

        F.      The Challenged Vaccine Requirements Do Not Violate The Fourth Amendment (Count VIII) ....................................................................................................23

        G.      Plaintiffs Fail To Plead A Free Exercise Or RFRA Claim (Counts IX–X). ..................24

III.    CONCLUSION ....................................................................................................25

## TABLE OF AUTHORITIES

## CASES

*Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.*,
   141 S. Ct. 2485 (2021)...........................................................................................18

*Am. Fed. of Gov't Emps. v. Hoffman*,
   543 F.2d 930 (D.C. Cir. 1976)...............................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................6, 7

*Bard v. Seamans*,
   507 F.2d 765 (10th Cir. 1974)...............................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................7

*Biden v. Missouri*,
   142 S. Ct. 647 (2022) .............................................................................................19

*Borough of Duryea v. Guarnieri*,
   564 U.S. 379 (2011) ...............................................................................................19

*Brass v. Biden*,
   No. 21-2778, 2021 WL 6498143 (D. Colo. Dec. 23, 2021)....................................5

*Brnovich v. Biden*,
   --- F. Supp. 3d ---, 2022 WL 252396 (D. Ariz. Jan. 27, 2022) .......................5, 22

*Cafeteria & Restaurant Workers Union v. McElroy*,
   367 U.S. 886 (1961) ...............................................................................................18

*Church v. Biden*,
   --- F. Supp. 3d ----, 2021 WL 5179215 (D.D.C. Nov. 8, 2021).............12, 23, 25

*Clapper v. Amnestly Int'l USA*,
   568 U.S. 398 (2013) ...............................................................................................12

*Clarry v. United States*,
   85 F.3d 1041 (2d Cir. 1996)...................................................................................17

*Dep't of Commerce v. New York*,
   139 S. Ct. 2551 (2019).............................................................................................20

*Doe #1 – #14 v. Austin,*
    --- F. Supp. 3d ----, 2021 WL 5816632 (N.D. Fla. Nov. 12, 2021)........................20, 22, 23

*Doe v. Zucker,*
    520 F. Supp. 3d 217 (N.D.N.Y. 2021) ............................................................................ 22

*Dyer v. Dep't of Air Force,*
    971 F.3d 1377 (Fed. Cir. 2020) ...................................................................................... 11

*Elgin v. Dep't of Treasury,*
    567 U.S. 1 (2012) ............................................................................................................ 11

*Engquiat v. Or. Dep't of Agric.,*
    553 U.S. 591 (2008) ........................................................................................................ 19

*FDA v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000) ........................................................................................................ 18

*Feds for Medical Freedom v. Biden,*
    --- F. Supp. 3d ----, 2022 WL 188329 (S.D. Tex. Jan. 21, 2022).........................................6

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) ........................................................................................................ 19

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010) ........................................................................................................ 16

*Giesler v. Merit Sys. Prot. Bd. of the U.S.,*
    686 F.2d 844 (10th Cir. 1982) ....................................................................................... 17

*Gonzaga Univ. v. Doe,*
    536 U.S. 273 (2002) ........................................................................................................ 15

*Harris v. Univ. of Mass., Lowell,*
    --- F. Supp. 3d ----, 2021 WL 3848012 (D. Mass. Aug. 27, 2021) ................................ 22

*Hein v. Freedom from Religion Found.,*
    551 U.S. 587 (2007) ..........................................................................................................9

*Heller v. Doe ex rel. Doe,*
    509 U.S. 312 (1993) ........................................................................................................ 23

*Horn v. Schlesinger,*
    514 F.2d 549 (8th Cir. 1975).......................................................................................... 13

*Jacobson v. Massachusetts,*
    197 U.S. 11 (1905).......................................................................................................... 22

*Kan. Judicial Review v. Stout,*
   562 F.3d 1240 (10th Cir. 2009) .................................................................. 12

*Klaassen v. Trs. of Ind. Univ.,*
   7 F.4th 592 (7th Cir. 2021) ...................................................................... 22

*Klaassen v. Trs. of Ind. Univ.,*
   --- F. Supp. 3d ----, 2021 WL 3073926 (N.D. Ind. July 18, 2021) ................... 22

*Kowalski v. Tesmer,*
   543 U.S. 125 (2004) ............................................................................... 9

*McCray v. Biden,*
   No. 21-2882, 2021 WL 5823801 (D.D.C. Dec. 7, 2021) ................................ 12

*NASA v. Nelson,*
   562 U.S. 134 (2011) ............................................................................. 18

*Norris v. Stanley,*
   --- F. Supp. 3d ---, 2021 WL 3891615 (W.D. Mich. Aug. 31, 2021) ................ 22

*Petrini v. Howard,*
   918 F.2d 1482 (10th Cir. 1990) ............................................................... 11

*Phillips v. City of N.Y.,*
   775 F.3d 538 (2d Cir. 2015) ................................................................... 22

*Rodriguez-Vélez v. Pierluisi-Urrutia,*
   No. 21-1366, 2021 WL 5072017 (D.P.R. Nov. 1, 2021) ................................ 22

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott,*
   748 F.3d 583 (5th Cir. 2014) .................................................................. 23

*Prince v. Massachusetts,*
   321 U.S. 158 (1944) ............................................................................. 22

*Roberts v. Roth,*
   No. CV 21-1797 (ABJ), 2022 WL 834148 (D.D.C. Mar. 21, 2022) .................. 13

*Rodden v. Fauci,*
   --- F. Supp. 3d ----, 2021 WL 5545234 (S.D. Tex. Nov. 27, 2021) ............. 7, 19

*Rostker v. Goldberg,*
   453 U.S. 57 (1981) .............................................................................. 20

*Rydie v. Biden,*
   --- F. Supp. 3d ----, 2021 WL 5416545 (D. Md. Nov. 19, 2021) .............. *passim*

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
    140 S. Ct. 2183 (2020) ........................................................................... 16

*Serv. Emps. Int'l Union Local 200 United v. Trump,*
    419 F. Supp. 3d 612 (W.D.N.Y. 2019) .................................................. 21

*Smith v. Biden,*
    No. 21-19457, 2021 WL 5195688 (D.N.J. Nov. 8, 2021) ....................... 6

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 84 (1998) ................................................................................... 7

*Steele v. United States,*
    19 F.3d 531 (10th Cir. 1994) ................................................................ 11

*Tompkin v. U.S. Army Dep't of Veterans Affs.,*
    16 F.4th 733 (10th Cir. 2020) .............................................................. 19

*Thornton v. Coffey,*
    618 F.2d 686 (10th Cir. 1980) .............................................................. 13

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ............................................................................ 7

*Trump v. New York,*
    141 S. Ct. 530 (2020) ............................................................................ 12

*U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers,*
    413 U.S. 548 (1973) ............................................................................... 16

*U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.,*
    190 F.3d 1156 (10th Cir. 1999) .............................................................. 6

*United States v. Fausto,*
    484 U.S. 439 (1988) ............................................................................... 11

*United States v. Jones,*
    565 U.S. 400 (2012) ............................................................................... 24

*United States v. Nichols,*
    184 F.3d 1169 (10th Cir. 1999) ............................................................ 17

*United States v. Poe,*
    556 F.3d 1113 (10th Cir. 2009) .............................................................. 9

*Utility Air Regulatory Grp. v. EPA,*
    573 U.S. 302 (2014) ............................................................................... 18

*Valdez v. Grisham,*
  ---F. Supp. 3d ---, 2021 WL 4145746 (D.N.M. Sept. 13, 2021)........................... 22

*Whitman v. Am. Trucking Ass'ns,*
  531 U.S. 457 (2001) ................................................................................................ 21

*Williams v. Brown,*
  --- F. Supp. 3d ----, 2021 WL 4894264 (D. Or. Oct. 19, 2021) ......................... 22

*Workman v. Mingo Cnty. Bd. of Educ.,*
  419 F. App'x 348 (4th Cir. 2011) ......................................................................... 22

*Zucht v. King,*
  260 U.S. 174 (1922) ................................................................................................ 22

**STATUTES**

5 U.S.C. § 1214 ......................................................................................................... 11

5 U.S.C. § 2105 ........................................................................................................... 5

5 U.S.C. § 2302 ......................................................................................................... 11

5 U.S.C. § 3301 ................................................................................................... 15, 17

5 U.S.C. § 3302 ................................................................................................... 15, 17

5 U.S.C. § 7301 ................................................................................................... 15, 17

5 U.S.C. § 7512 ......................................................................................................... 11

5 U.S.C. § 7513 ......................................................................................................... 11

5 U.S.C. § 7703 ......................................................................................................... 11

10 U.S.C. § 1552 ....................................................................................................... 13

10 U.S.C. § 10101 ...................................................................................................... 3

10 U.S.C. § 10202 .................................................................................................. 3, 14

32 U.S.C. § 108 ......................................................................................................... 14

32 U.S.C. § 110 ................................................................................................ 2, 14, 21

32 U.S.C. § 328 ........................................................................................................... 3

32 U.S.C. § 510 ......................................................................................................... 14

32 U.S.C. § 709..................................................................................................... 11

**REGULATIONS**

Exec. Order No. 11491,
    34 Fed. Reg. 17,605 (Oct. 31, 1969)................................................. 18

Exec. Order No. 12674,
    54 Fed. Reg. 15,159 (Apr. 14, 1989) ............................................... 18

Exec. Order No. 14043,
    86 Fed. Reg. 50,989 (Sept. 9, 2021)........................................*passim*

**U.S. CONSTITUTION**

U.S. Const. art. I, § 8................................................................... 14, 21

U.S. Const. art. II, § 1.......................................................................... 16

**OTHER AUTHORITIES**

1 Annals of Cong. 463 (1789)....................................................... 16

Aug. 24, 2021 Secretary of Defense Memo,
    https://perma.cc/YZ9F-NNU2 ...................................................... 2

Oklahoma's National Guard Nov. 2, 2021 Ltr.,
    https://perma.cc/76G4-74Z5................................................................ 2

Nov. 30, 2021 Secretary of Defense Memo,
    https://perma.cc/XA83-FNRM ................................................. 2, 15

Secretary of the Air Force Memo, Supplemental Coronavirus Disease 2019
    Vaccination Policy (Dec. 7, 2021),
    https://perma.cc/72K5-SN8E........................................................... 3

Task Force, Frequently Asked Questions ("Task Force FAQs"), Vaccinations,
    https://perma.cc/6RM9-5T5U .......................................................... 5

Update on Implementation of COVID-19 Vaccination Requirement for Federal
    Employees (Dec. 9, 2001),
    https://go.usa.gov/xttgj................................................................... 9

## INTRODUCTION

In a comprehensive opinion issued last December, this Court denied Plaintiffs' motion for a preliminary injunction. *See* ECF No. 41 ("Order"). As the Court explained, the Secretary of Defense is "acting well within the authority granted by the Constitution and laws of the United States" in requiring members of the Oklahoma Air National Guard to be vaccinated against COVID-19, a "virus which has, in less than two years, killed more Americans than have been killed in action in all the wars the United States has ever fought." *Id.* at 1-2, 18. That fundamental conclusion, along with those discussed more fully below, requires dismissal of the second amended complaint (ECF No. 49, "2AC").

## BACKGROUND

### I.    Factual Background

### A.    Department Of Defense COVID-19 Vaccination Directive

Vaccines have been a cornerstone of U.S. military strategy since 1777, when General Washington instituted the first program to inoculate troops. Indeed, in warfare, disease and non-battle injury have historically accounted for more service member deaths than battlefield injuries. Up until World War II, deaths due to infectious diseases outnumbered those due to direct combat injuries.[1] The tide turned around World War II, "chiefly as a result of major medical advances in prevention (vaccines) and treatment (antibiotics)."[2] Accordingly, even before COVID-19 emerged, the Department of Defense ("DoD") immunization program required that all service members obtain nine immunizations (including an annual flu shot),

---

[1] Lemon S, et al., eds., Protecting Our Forces: Improving Vaccine Acquisition and Availability in the US Military, National Academies Press, 2002.

[2] Cirillo, Vincent J, "Two faces of death: fatalities from disease and combat in America's principal wars, 1775 to present" Perspect Biol. Med., vol. 51.1 (2008): 121–33.

and listed an additional eight that may be required depending on circumstances like deployment and duty assignment. AFI 48–110_IP, Table D-1. This case simply concerns the addition of one more immunization to that list.

After FDA approved the Pfizer COVID-19 vaccine, Secretary Austin directed the Secretaries of the Military Departments to immediately vaccinate all members of the armed forces, including the National Guard, under Department of Defense ("DoD") authority. *See* Aug. 24, 2021 SecDef Memo, https://perma.cc/YZ9F-NNU2. On November 2, 2021, Oklahoma asked the Secretary of Defense to reconsider the vaccine requirement for Oklahoma's National Guard. Nov. 2, 2021 Ltr., https://perma.cc/76G4-74Z5. The Secretary responded on November 29, 2021, explaining the importance of the vaccine requirement and noting that the President has authority under 32 U.S.C. § 110 to regulate the National Guard. Nov. 29, 2021 Ltr., ECF No. 36-1.

On November 30, the Secretary of Defense issued a memo regarding vaccination requirements for the National Guard. *See* Nov. 30, 2021 SecDef Memo, https://perma.cc/XA83-FNRM. The memo explained that after the compliance deadline, National Guard members "must subsequently become vaccinated, in order to participate in drills, training and other duty conducted under title 32, U.S. Code." *Id.* The Secretary explained that "[n]o Department of Defense funding may be allocated for payment of duties performed under title 32 for members of the National Guard who do not comply with Department of Defense COVID-19 vaccination requirements," and that "[n]o credit or excused absence shall be afforded to members who do not participate in drills, training, or other duty due to failure to be fully vaccinated against COVID-19." *Id.*

The Secretary of the Air Force followed with specific regulatory guidance for the Air National Guard. *See* Secretary of the Air Force Memo, Supplemental Coronavirus Disease 2019 Vaccination Policy (Dec. 7, 2021), https://perma.cc/72K5-SN8E. The memo explained that members of the Air National Guard had until December 31, 2021, to initiate a vaccination regimen or have a pending exemption request, and that those who failed to comply "may not participate in drills, training, or other duty conducted under Title 10 or Title 32." *Id.* The Secretary also withdrew consent for Active Guard Service "for members not fully vaccinated" by December 31, 2021, pursuant to 32 U.S.C. § 328. *Id.*

The completion goal for the Army National Guard vaccination requirement is June 30, 2022, and after July 1, 2022, the federal government will enforce a requirement for compliance as a condition for federal funding and for participation in federally funded activities. *See* Excerpted Copy of FRAGO 17, ¶ 3.D.3.C.7.C. (attached as Exhibit B).

## B.     Organization And Regulation Of The National Guard

The National Guard is an important strategic component of our Nation's military forces. The Guards are "reserve components," 10 U.S.C. § 10101, and their purpose "is to provide trained units and qualified persons available for active duty in the armed forces, in time of war or national emergency, and at such other times as the national security may require, to fill the needs of the armed forces whenever more units and persons are needed than are in the regular components," *id.* § 10102. Within the past twenty years, the Oklahoma Guard has deployed to more than sixteen countries, including to Afghanistan and Iraq, and has provided "medical support to the civilian population throughout the pandemic." Order at 12. As a reserve component, the Guard is required to maintain medical readiness, in order to be fit and

prepared to deploy anywhere in the world on very short notice. *Id.* at 20 (citing Army Regulation 40–562, Air Force Instruction 48–110, and DoD Instruction 6205.02).

The Oklahoma National Guard includes employees and military members serving in different roles, and individuals who may be subject to one (or more) of the following titles of the United States Code: "Title 5, which applies to most federal civilian employees, Title 10, which generally applies to active duty armed forces, and Title 32, which applies to the Guard." Order at 10. As relevant here, there are five categories of Guard personnel. The majority of the Oklahoma National Guard consists of Drill Status Guardsmen who train "one weekend a month and two weeks a year," whose service is "generally governed by Title 32," and who "are not subject to" Executive Order 14043 ("EO 14043"), which, as explained below, requires civilian employees of the federal government to be vaccinated against COVID-19, absent a valid exception. *Id.* Title 32 Active Guard and Reserve are "full-time uniformed service members who serve at the state level but are paid with federal funds." *Id.* "Their service is generally governed by Title 32, and they are not subject to EO 14043." *Id.* Dual-status technicians are full-time Guard employees who serve in civilian roles but "are required to maintain their military position as a condition of their employment." *Id.* at 11. Dual-status technicians "are governed by both Title 5 (civilian employment) and Title 32 (as Guard members)"; under National Guard Bureau guidance, they are required to be vaccinated pursuant to their role as Guard members only. *Id.* Title 5 civilian employees are "federal civilian employees working in, and for, Guard units," and they are subject to EO 14043. *Id.* Finally, when Guard members serve in an active-duty capacity, they are "subject to direct federal control under Title 10." *Id.*

C.      Executive Order 14043

Executive Order 14043 instructs each federal agency to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its federal employees, with exceptions only as required by law." EO 14043 §§ 1, 2, 86 Fed Reg. 50,989, 50,989-90.  It also directs the Safer Federal Workforce Task Force ("Task Force") to "issue guidance . . . on agency implementation of this requirement." *Id.* § 2. EO 14043 applies to federal "employees" as defined by 5 U.S.C. § 2105, *see* EO 14043 § 3(b), which would not include members of the National Guard unless they hold civilian employment under Title 5. *See generally* Order at 2-3.

Task Force guidance recognizes that federal employees may be eligible for exceptions based on a medical condition or religious objection and advises that federal employees who have not requested or received an exception should have been fully vaccinated no later than November 22, 2021.  It further advises that an employee who requests an exception should not be disciplined while the request is pending and should be given a period of two weeks in which to begin the vaccination process in the event that a request is denied.  *See generally* Task Force, Frequently Asked Questions ("Task Force FAQs"), Vaccinations, https://perma.cc/6RM9-5T5U.

EO 14043 has been subject to extensive litigation, and numerous courts, like this Court, have found that it falls within the President's authority to manage the federal workforce.[3]

---

[3] *See Rydie v. Biden*, --- F. Supp. 3d ----, 2021 WL 5416545, at *3 (D. Md. Nov. 19, 2021), *appeal filed*, No. 21-2359 (4th Cir. Dec. 7, 2021); *Brnovich v. Biden*, --- F. Supp. 3d ---, 2022 WL 252396, at *12 (D. Ariz. Jan. 27, 2022); *Brass v. Biden*, No. 21-2778, 2021 WL 6498143, at *3 (D. Colo. Dec. 23, 2021) (report and recommendation), *adopted*, 2022 WL 136903 (D. Colo.

Nevertheless, on January 21, 2022, a district court in the Southern District of Texas entered a nationwide preliminary injunction prohibiting the government from "implementing or enforcing Executive Order 14043 until this case is resolved on the merits." *Feds for Medical Freedom v. Biden*, --- F. Supp. 3d ----, 2022 WL 188329, at *8 (S.D. Tex. Jan. 21, 2022). The government has appealed that ruling, *see* No. 22-40043 (5th Cir. Jan. 21, 2022), and both a motion to stay the injunction (which was carried with the appeal) and the appeal itself are fully briefed. The injunction does not in any way impair the government's enforcement of Secretary Austin's directive to members of the military services.

## II.     Procedural Background

Plaintiffs commenced this action by filing a complaint on December 2, 2021, *see* ECF No. 1 ("Compl."), and they filed a motion for a temporary restraining order and preliminary injunction the following day, *see* ECF No. 9. On December 28, 2021, the Court denied Plaintiffs' motion. *See* Order. On February 2, 2022, it denied a subsequent motion seeking permission for Plaintiffs to proceed pseudonymously. *See* ECF No. 48. On February 15, 2022, Plaintiffs filed a second amended complaint. *See* 2AC.

## LEGAL STANDARD

Under Rule 12(b)(1), a plaintiff bears the burden of establishing that the court has jurisdiction to hear his claims. *U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999). Under Rule 12(b)(6), a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

Jan. 14, 2022); *see also Smith v. Biden*, No. 21-19457, 2021 WL 5195688, at *6 (D.N.J. Nov. 8, 2021), *appeal filed*, No. 21-3091 (3d Cir. Nov. 10, 2021).

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

I.     **The Court Lacks Jurisdiction.**

Plaintiffs bear the burden of proving the "irreducible constitutional minimum of standing," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 84, 102 (1998)—*i.e.*, (1) "an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury was likely caused by the defendant; and (3) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citation omitted).   Neither the individual Plaintiffs nor Oklahoma can carry that burden here.[4]

   A.     **The State Of Oklahoma Lacks Standing To Challenge Executive Order 14043 Or The Military Mandate.**

Oklahoma lacks standing to challenge either EO 14043 or the military vaccine mandate. As the Court has already held, Oklahoma lacks *parens patriae* standing.   *See* Order at 6-7. Oklahoma has also not "identif[ied] any state law with which EO 14043 or the military mandate interferes," nor has it "made a clear showing of how EO 14043 or the military vaccine mandate has caused, or will cause, economic injury to the State."   *Id.*   The Court has thus already rejected these theories of standing.

The Court did, however, hold that Oklahoma's concern that "the Guard members'

---

[4] The Court should also dismiss all claims against the Task Force, the Federal Acquisition Regulatory ("FAR") Council, and their members.  *See* 2AC ¶¶ 41-53.  Relief against the Task Force cannot redress any claimed injury because it issues nonbinding guidance; the federal employee vaccination requirement flows from EO 14043 and implementing actions by each federal agency.  *See Rodden v. Fauci*, --- F. Supp. 3d ----, 2021 WL 5545234, at *2-3 (S.D. Tex. Nov. 27, 2021) (so holding, in challenge to EO 14043).  And Plaintiffs make no allegations against the FAR Council.

departures will deprive the State of law enforcement resources to protect itself and its citizens and will require the State to incur costs to mitigate or avoid the loss" sufficiently alleged an Article III injury. *See* Order at 8. Defendants respectfully urge the Court to revisit that conclusion because that theory of standing relies on a speculative chain of events. The fact that some individual Guard members *might* leave the Oklahoma National Guard is not sufficient to show injury because Guard members regularly retire, move out-of-state, or otherwise leave the Guard. In any case, Oklahoma has not provided anything to suggest that an unusually large number of Guard members may be leaving—indeed, they only identify eight service members who object to the vaccination requirement, which is insufficient to establish that Oklahoma will suffer any serious injury from enforcement of that requirement.

In any case, even if the potential separation of Guard members might impose an Article III injury on Oklahoma, that would not give it standing to challenge EO 14043, which applies only to federal civilian employees. In accepting this theory of standing as to the military mandate, the Court credited statistics from a New York Times article published on November 18, 2021, showing "that 89 percent of the airmen in the Guard have been vaccinated, while only 40 percent of Army guardsmen have been vaccinated." Order at 8; ECF No. 9, at 6. Not only are those statistics inconclusive since the military vaccine deadlines for the Guard had not yet passed (and for the Army National Guard are still months away), but Guard members are also generally not subject to EO 14043; if they are removed from the Guard for failing to become vaccinated, it will not be because of EO 14043, but because of the separate military vaccination requirement. With respect to EO 14043, Oklahoma does not allege that any meaningful number of federal employees serving the people of Oklahoma will be removed

from federal employment—indeed, the overwhelming majority of federal employees are in compliance with the Executive Order, *see* Update on Implementation of COVID-19 Vaccination Requirement for Federal Employees (Dec. 9, 2001), https://go.usa.gov/xttgj—and in any event Article III does not permit a state to micromanage the federal government's oversight of its own workforce on the theory that states, like the public at large, benefit from the effective functioning of the federal government.   *Cf., e.g., Hein v. Freedom from Religion Found.*, 551 U.S. 587 (2007) (rule against taxpayer standing).

Finally, even if Oklahoma had standing to assert some claims against the military mandate and EO 14043, it does not have standing to contend that Defendants violated individual rights under the Religious Freedom Restoration Act ("RFRA") and the First, Fourth, and Fifth Amendments.  Oklahoma does not have "due process rights to bodily integrity" or the right "to refuse" medical treatment under the Fifth Amendment.  It likewise cannot be subject to an unconstitutional "seizure" under the Fourth Amendment.  *See United States v. Poe*, 556 F.3d 1113, 1121 (10th Cir. 2009).  Oklahoma does not have a religion, consistent with the Establishment Clause, and so cannot plead a RFRA or Free Exercise claim. Nor can Oklahoma stand in its citizens' shoes to assert constitutional claims, since this Court has already concluded "that the State [of Oklahoma] does not have *parens patriae* standing to bring this action."  Order at 7.  Indeed, principles of third-party standing require both that a litigant asserting someone else's rights have a "'close' relationship" with the third party and that there be a "hindrance" to the third party bringing his own claim, *see Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004), but here Oklahoma does not allege that it satisfies either of those requirements.  To the contrary, the presence of individual Guard members in this suit

demonstrates that there is no hindrance to their attempting to litigate any claims they possess on their own behalves.

**B.     The Individual Plaintiffs Lack Standing To Challenge Executive Order 14043.**

The second amended complaint brings claims on behalf of ten individual Plaintiffs. *See* 2AC ¶¶ 29-38. These individuals fall into three categories: two serve exclusively under Title 32 (Plaintiffs Lott and Randell); six are dual-status technicians (Plaintiffs David Gritsavage; Kennedy, Goeppinger, Guernsey, Phillips, and Coloney), and two are Title 5 civilians (Plaintiffs Regina Gritsavage and Turner). *See* Ex. A ¶¶ 8-9. As described below, none of these individuals may challenge EO 14043.

**1.     Title 32 Guard Members And Dual-Status Technicians Are Not Subject To Executive Order 14043.**

First, Guard members serving exclusively under Title 32 are not subject to EO 14043. *See* Order at 10. They lack standing to challenge a directive that does not apply to them.

Second, National Guard Bureau guidance provides that "civilian vaccine requirements pursuant to EO 14043" do not apply "to Title 32 dual status military technicians." First Decl. of Kevin A. Mulcahy, ECF No. 37-1, ¶¶ 10-11; *see also* Second Mulcahy Decl. ¶ 7 (attached as Exhibit A) ("As set out in my first declaration, dual-status guardsmen are not required to comply with civilian vaccination requirements flowing from Executive Order 14043."). The dual-status technicians thus lack standing to challenge EO 14043.

**2.     The Title 5 Civilians' Claims Are Precluded By The CSRA And Otherwise Unripe.**

Plaintiffs Regina Gritsavage and Christopher Turner are Title 5 employees subject to EO 14043. This Court lacks jurisdiction over their claims, for those claims are both precluded

by the Civil Service Reform Act ("CSRA") and unripe.

Under the CSRA, "adverse actions" taken against federal employees, including removals and suspensions of more than fourteen days, *see* 5 U.S.C. § 7512, can generally be appealed directly to the Merit Systems Protection Board ("MSPB"), with judicial review in the Federal Circuit.  *Id.* §§ 7513(d), 7703(b)(1).[5]  This scheme provides the exclusive and preemptive means for federal employees to challenge workplace decisions and conditions, including claims alleging constitutional violations.  *See, e.g., Elgin v. Dep't of Treasury*, 567 U.S. 1, 11-12 (2012) ("Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court."); *United States v. Fausto*, 484 U.S. 439, 455 (1988); *Steele v. United States*, 19 F.3d 531, 532-33 (10th Cir. 1994); *Petrini v. Howard,* 918 F.2d 1482, 1483–85 (10th Cir. 1990).[6]  The proper remedy for the Title 5 plaintiffs, therefore, is to pursue any claims (including constitutional and RFRA claims) through these avenues, not to proceed directly into federal district court.

Even if the CSRA did not preclude these claims, they would be unripe because the Title 5 employees do not allege that they have requested and been denied a religious exception. Both Title 5 employees allege that they have religious objections to COVID-19 vaccination,

---

[5] Corrective action for a less severe "personnel action" may generally be sought from any agency administrative or negotiated grievance rights, through Equal Employment Opportunity Commission complaints if an EEO protected basis is alleged, or from the Office of Special Counsel ("OSC") if the applicant or employee alleges a prohibited reason for the action. 5 U.S.C. §§ 1214(a)(3), 2302.

[6] The National Defense Authorization Act of 2017 amended 32 U.S.C. § 709 to clarify that National Guard technicians may generally appeal adverse actions to the MSPB.  *See generally Dyer v. Dep't of Air Force*, 971 F.3d 1377, 1381 (Fed. Cir. 2020).

*see* 2AC ¶¶ 29, 33, which means that they could request a religious exception from the adjutant general under the express terms of the Executive Order and implementing guidance. *See* Ex. A ¶ 9 (explaining that "the Adjutants General of the State National Guards are deemed the head of the agency for administrative actions and are responsible for adjudicating any request for medical or religious accommodation from a National Guard civilian employee"). Although Plaintiffs do not allege whether they have requested such exceptions from the adjutant general, that failure does not affect the conclusion that this Court lacks jurisdiction. *First*, if they have already been granted exceptions, their claims are moot because they will not be subject to the vaccination requirement. *See, e.g., Kan. Judicial Review v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009). *Second*, if they have pending requests, their claims are unripe because Task Force guidance provides that individuals with pending exception requests should not be subject to discipline while their requests are pending. *See, e.g., Church v. Biden*, --- F. Supp. 3d ----, 2021 WL 5179215, at *8-10 (D.D.C. Nov. 8, 2021); *McCray v. Biden*, No. 21-2882, 2021 WL 5823801, at *8-9 (D.D.C. Dec. 7, 2021). *Third*, if they failed to request exceptions from the adjutant general, any injury is self-inflicted. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013). *Fourth* and finally, even if these individuals have already been denied a religious exception by the adjutant general (which they do not allege), their claims would remain unripe because any discipline that the adjutant general might impose is speculative. *See, e.g., Trump v. New York*, 141 S. Ct. 530, 535 (2020). Whatever the case, Plaintiffs' failure to allege whether they have requested or been granted exceptions—a fact readily available to them, but not to Defendants—should not redound to their benefit.

C.     **The Individual Plaintiffs Who Are Not Civilian Employees Have Not Exhausted Administrative Remedies As To The Military Mandate.**

The claims of the individual plaintiffs challenging the military mandate should be dismissed because they have not alleged that they have exhausted available administrative remedies. *See Bard v. Seamans*, 507 F.2d 765, 770 (10th Cir. 1974). Courts require administrative exhaustion in cases involving the military "to allow 'the military an opportunity to exercise its own expertise, and to correct its own errors.'" *Thornton v. Coffey*, 618 F.2d 686, 692 (10th Cir. 1980) (quoting *Horn v. Schlesinger*, 514 F.2d 549, 553 (8th Cir. 1975)). Courts "will indulge, until otherwise convinced, in the presumption that the military will be astute to afford to the plaintiff all of the rights and the protections afforded him by the Constitution, the statutes, and its own regulations." *Horn*, 514 F.2d at 553. Here, Plaintiffs who have a religious or medical objection can seek an exemption, which is reviewed through the command and can be appealed. Even members facing discharge still must avail themselves of the military's robust administrative processes before their case is ripe. *See* ECF No. 37-1, ¶¶ 42–43; *Roberts v. Roth*, No. CV 21-1797 (ABJ), 2022 WL 834148, at *6 (D.D.C. Mar. 21, 2022). And even if a member is ultimately discharged, that decision can be appealed to the appropriate Board for Correction of Military Review. ECF No. 37-1 ¶ 43 (citing 10 U.S.C. § 1552). Plaintiffs have not alleged that they have availed themselves of any of these administrative processes, much less that they have *exhausted* them, and their claims should thus be dismissed.

II.     **Plaintiffs Fail To State A Claim On Which Relief May Be Granted.**

Even if the Court had jurisdiction, Plaintiffs' claims fail on the merits—as the Court has already held with respect to most of the claims.

13

### A. The Military's Vaccine Requirements Are Valid Exercises Of Constitutional And Statutory Authority (Count XII).

The Court has already "concluded that the defendants are acting well within the authority granted by the Constitution and laws of the United States" by requiring members of the National Guard to be vaccinated against COVID-19. Order at 17–18. "The Constitution grants to Congress the power to 'provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress.'" *Id.* at 18 (quoting U.S. Const., art. 1, § 8, cl. 16). And "[t]he constitutional allocation of responsibility for Guard matters has been fleshed out by Congress." *Id.* at 19; *see generally id.* (citing 32 U.S.C. § 110, 10 U.S.C. § 10202(a), 32 U.S.C. § 510, and 32 U.S.C. § 108). Oklahoma is thus wrong that "[n]othing in Titles 10 or 32 of the United States Code permits the President of the United States to impose a vaccine mandate on the National Guard members." 2AC ¶ 321.[7]

The federal government is not required to pay for reserve training or service that does not meet federal regulations. *See* 32 U.S.C. § 108. "If the Guard fails to comply with federal standards, the President is empowered to cut off its funding." Order at 19 (citing 32 U.S.C. § 108). The federal government exercised that power and now "[n]o Department of Defense

---

[7] Although Plaintiffs invoke what they refer to as the "major questions" doctrine, 2AC ¶ 318, the cases on which they rely are inapposite because "adding a tenth FDA-approved vaccine to the list of nine that all service members are already required to take would hardly amount to 'an enormous and transformative expansion [of the] regulatory authority the Secretary of Defense already possesses." Order at 22. And even if "major questions" principles applied here, the military is acting well within constitutionally- and "congressionally-granted administrative authority." *Id.*

funding may be allocated for payment of duties performed under title 32 for members of the National Guard who do not comply with Department of Defense COVID-19 vaccination requirements." Nov. 30, 2021 Secretary of Defense Memo, https://perma.cc/XA83-FNRM.

**B.     Executive Order 14043 Is A Valid Exercise Of The President's Authority, And Plaintiffs Lack A Cause Of Action To Challenge It.   (Counts I, II, III).**

In Counts I through III, Plaintiffs challenge EO 14043 as violating the civil service statutes. That claim fails for lack of a cause of action and on the merits.

**1.     The Civil Service Statutes Do Not Create An Implied Right Of Action.**

Counts I, II, and III are asserted directly under the federal civil service statutes. *See* 5 U.S.C. §§ 3301, 3302, 7301. Yet "even where a statute is phrased in . . . explicit rights-creating terms," a plaintiff still must show that Congress has created "not just a private *right* but also a private *remedy*." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (citation omitted). None of the statutes that Plaintiffs invoke creates a private right of action: they are silent about a "private remedy," and they are not "phrased" in "rights-creating terms." *Id*. at 284. Instead, these statutes speak exclusively to the authority of the *President* to issue rules. *Cf. id*. at 287 (statute did not create individual rights because its "provisions speak only to the Secretary of Education"). To the contrary, Congress has spoken clearly as to how federal employees must allege violations of their rights: through the exclusive scheme of the CSRA. *See supra* Part I.B.2.

**2.     EO 14043 Falls Within The President's Constitutional And Statutory Authority.**

In any event, EO 14043 is a valid exercise of the President's authority—as the Court

has already recognized.  *See* Order at 21 ("To the extent that the issues actually placed before the court may include a challenge to EO 14043 as applied to civil service employees who are not Guard members, the court concludes that the executive order is a permissible exercise of executive authority." (citing *Rydie*, 2021 WL 5416545)).  Several other courts have similarly determined that the Executive Order falls within the President's authority.  *See supra* note 3.

As those decisions make clear, the President has substantial independent constitutional authority to manage the operation of the Executive Branch.  The President is the head of the Executive Branch, and, "[u]nder our Constitution, the 'executive power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'"  *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2191 (2020) (quoting U.S. Const. art. II, § 1, cl. 1 & § 3).  And "if any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws."  *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492 (2010) (quoting 1 Annals of Cong. 463 (1789)).  Against the backdrop of the President's constitutional authority, the appropriate question is whether Congress has *precluded* the President from requiring federal employees to be vaccinated.  *Cf., e.g.*, *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 557-58 (1973) (describing spoils system that predated statutory civil service reform).  Congress has limited the President's plenary power over federal employees in some ways (such as through Title VII and the CSRA), but not even Plaintiffs suggest that Congress has barred him from requiring vaccination of federal employees.

Far from limiting the President's authority, Congress has vested the President with broad authority to set the terms of employment in the federal government, and has thereby

"endorsed his action here," *Rydie*, 2021 WL 5416545, at *3; *see also Clarry v. United States*, 85 F.3d 1041, 1047 (2d Cir. 1996) ("The President has broad authority pursuant to 5 U.S.C. §§ 3301 and 7301 to regulate employment matters").   *First*, Plaintiff's contention that the vaccination requirement is not tied to the "efficiency of th[e] service" under 5 U.S.C. § 3301 is an unsupported attempt to second-guess the President's judgment about the operations of the federal government.   Plaintiffs claim "nothing about 'efficiency' in any part of the federal bureaucracy enables the President to issue a vaccine mandate," 2AC ¶ 99, but the President specifically found that "[t]he health and safety of the Federal workforce, and the health and safety of members of the public with whom they interact, are foundational to the efficiency of the civil service."   EO 14043 § 1.   That judgment is self-evidently reasonable—indeed, it is why numerous private sector CEOs have similarly required their workforces to be vaccinated against COVID-19.   In light of "the obvious intent of Congress to confer broad discretion upon the President," this Court must "restrict [itself] to the limited scope of judicial review which follows."   *Am. Fed. of Gov't Emps. v. Hoffman*, 543 F.2d 930, 938 (D.C. Cir. 1976); *see also, e.g., Giesler v. Merit Sys. Prot. Bd. of the U.S.*, 686 F.2d 844, 849 (10th Cir. 1982).

*Second*, Plaintiffs' suggestion that 5 U.S.C. § 3302 "concerns only selection procedures for the competitive service," 2AC ¶ 123, is also wrong.   The text authorizes "rules governing the competitive service," 5 U.S.C. § 3302, and there is no warrant for this Court to read into the statute language that is not there.   *See United States v. Nichols*, 184 F.3d 1169, 1171 (10th Cir. 1999) ("[W]here a statute is clear on its face, we give its words literal effect.").

*Third*, Congress has confirmed the President's authority to "prescribe regulations for the conduct of employees in the executive branch."   5 U.S.C. § 7301.   Plaintiffs suggest that

"conduct" is limited to "behavior and activity" as opposed to "status," but the act of becoming vaccinated plainly is conduct that the President may require—just as the act of taking illegal drugs is conduct that the President may prohibit (as Plaintiffs concede). *See* 2AC ¶ 143 (discussing Executive Order 12564).[8]

Finally, Plaintiffs' invocation of "major questions" principles misses the mark. *See* Order at 21 (rejecting this argument). Most fundamentally, the terms of employment that the government sets for its own workforce is not a question of "vast economic and political significance"; the government is not seeking to ban evictions across the United States, *see Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.*, 141 S. Ct. 2485 (2021), regulate billions of dollars of carbon emissions, *Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302 (2014), or regulate the entire tobacco industry, *see FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000). The government is not claiming "the power to regulate or license, as lawmaker," but rather "as proprietor, to manage [its] internal operation." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 896 (1961). As the Supreme Court has repeatedly instructed lower courts, the government's role—as either regulator or proprietor—is a critical distinction. *See, e.g., NASA v. Nelson*, 562 U.S. 134, 148 (2011) ("Time and again our cases have recognized that the Government has a much freer hand in dealing 'with citizen employees than it does

---

[8] Indeed, these statutory provisions serve as the basis for many other familiar conditions of federal service, including requirements that federal employees refrain from engaging in conduct on or off the job that would conflict with their official duties, *see* Exec. Order No. 12674, § 101(j), 54 Fed. Reg. 15,159 (Apr. 14, 1989); and satisfy all "just financial obligations," including by paying federal, state, and local taxes, *id.* § 101(*l*); *see also* Exec. Order No. 11491, 34 Fed. Reg. 17,605 (Oct. 31, 1969) (specifying that Executive Branch employees have the right "to form, join, and assist a labor organization," while requiring that the labor organization's "internal business . . . shall be conducted during the non-duty hours").

when it brings its sovereign power to bear on citizens at large.'" (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008))); *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 392-93 (2011) (similar).

### C.    Plaintiffs' APA Claims Should Be Dismissed (Count IV).

Plaintiffs' APA claims should be dismissed for numerous reasons.  At the outset, "[P]laintiffs' APA claim is directed at the actions of the President and the Safer Federal Workforce Task Force."  Order at 22.  But neither of those entities is subject to the APA because "the President is not an agency within the meaning of the APA" and "the Task Force is not an agency" either.  *Id.* (citing *Franklin v. Massachusetts*, 505 U.S. 788, 796, 800–801 (1992); *Rodden*, 2021 WL 5545234).  Furthermore, "the Task Force guidance is not final agency action reviewable under the APA."  *Id.* at 23.  Any APA challenge to EO 14043 fails for the additional reason that the CSRA precludes the claims.  *See, e.g.*, *Rydie*, 2021 WL 5416545, at *2; *see also Tompkin v. U.S. Army Dep't of Veterans Affs.*, 16 F.4th 733, 743 (10th Cir. 2020) (employee "cannot utilize the APA to obtain the very review he is denied by" a comprehensive federal employment scheme).[9]

*Second*, the APA allegations do not challenge any action of the Secretary of Defense or any action by any of the Service Secretaries.  *See* 2AC ¶ 319 (incorporating Count IV without

---

[9] Even if Plaintiffs could theoretically plead an APA claim against EO 14043, they have failed to plead a plausible claim here.  EO 14043 is not contrary to law, as set out above.  And to the extent Plaintiffs contend that it is arbitrary and capricious to require federal employees to be vaccinated against a deadly and highly transmissible pathogen, that claim is not plausible in light of (1) public health experts' findings, adopted by the President, "that the best way to slow the spread of COVID-19 and to prevent infection by the Delta variant or other variants is to be vaccinated," EO 14043 § 1, and (2) the exceedingly deferential standard that applies on arbitrary and capricious review, *see, e.g.*, *Biden v. Missouri*, 142 S. Ct. 647, 653 (2022).

elaboration); Count IV (no mention of the Secretary of Defense or other military decisions). But even if Plaintiffs had brought an APA claim against the Secretary of Defense's decision to require COVID-19 vaccination, that APA claim would likewise fail. The military vaccine mandate is not contrary to law. *See* Order at 18-19. Nor can Plaintiffs succeed on their arbitrary and capricious claim, for as this Court has explained, there is "substantial deference accorded to administrative decisions." *Id.* at 23 n.29 (citing *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019)). And even more deference is owed to military decisions given "the [marked] lack of competence on the part of the courts" in the area of regulating the military. *Id.* (citing *Rostker v. Goldberg*, 453 U.S. 57, 65 (1981); *see also Doe #1 – #14 v. Austin*, --- F. Supp. 3d ----, 2021 WL 5816632, *4 (N.D. Fla. Nov. 12, 2021) (finding plaintiffs had not shown a likelihood of success on the merits of their APA claim challenging the military vaccination mandate). Nothing in Plaintiffs' second amended complaint shows that the military's decision to require a vaccine to protect service members from COVID-19 was arbitrary or capricious.

### D.   Plaintiffs' Structural Constitutional Claims Fail (Counts V, VI, XI).

Plaintiffs assert structural constitutional claims under the Tenth Amendment (count V), non-delegation principles (count VI), and the Take Care Clause (count XI). For the reasons this Court has already articulated, these claims all fail. First, the Court has already explained that powers assigned to the federal government, like running the military and overseeing the federal workforce, are not reserved to the states under the Tenth Amendment. *See* Order at 23-24.

Second, with respect to Plaintiffs' nondelegation claim, Plaintiffs overlook that the President has substantial *independent* authority under Article II to set internal employment

policy for the Executive Branch. Congress is not prohibited by nondelegation principles from confirming the President's broad discretion to set such policies; here the two political branches have acted harmoniously. *See Serv. Emps. Int'l Union Local 200 United v. Trump*, 419 F. Supp. 3d 612, 620–21 (W.D.N.Y. 2019), *aff'd*, 975 F.3d 150 (2d Cir. 2020). And with respect to the military mandate, the Constitution authorizes Congress to "provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States." U.S. Const., art. 1, § 8, cl. 16. Congress has expressly delegated that authority to the President as it relates to the National Guard. 32 U.S.C. § 110 ("The President shall prescribe regulations, and issue orders, necessary to organize, discipline, and govern the National Guard."). The Court has already ruled that Plaintiffs' nondelegation challenge is "unpersuasive" in light of the Supreme Court's unwillingness to "'second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law.'" Order at 24-25 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474-75 (2001)).

Third and finally, Plaintiffs' claim under the Take Care Clause fails, as the Court has held. *See* Order at 26-27.

### E.     The Challenged Vaccine Requirements Do Not Violate Due Process (Count VII).

In Count VII, Plaintiffs contend that the vaccine requirements violate their Fifth Amendment rights to due process, to bodily integrity, and to refuse medical treatment. That claim fails because vaccination requirements (and, *a fortiori*, conditions on employment) are subject to rational basis review, under which the challenged requirements easily pass muster.

Federal courts have uniformly held that the American legal tradition does not recognize

a fundamental right to refuse vaccination. *See, e.g.*, *Brnovich*, 2022 WL 252396, at *25–26; *Rodriguez-Vélez v. Pierluisi-Urrutia*, No. 21-1366, 2021 WL 5072017, at *15 (D.P.R. Nov. 1, 2021), *appeal filed*, No. 21-2005 (1st Cir. Dec. 22, 2021); *Valdez v. Grisham*, --- F. Supp. 3d ---, 2021 WL 4145746, at *5 (D.N.M. Sept. 13, 2021), *appeal filed*, No 21-2105 (10th Cir. Sept. 15, 2021).   Indeed, "vaccination requirements, like other public-health measures, have been common in this nation." *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021); *see also Doe v. Zucker*, 520 F. Supp. 3d 217, 249–53 (N.D.N.Y. 2021).   Over a century ago, the Supreme Court held "that a state may require all members of the public to be vaccinated against smallpox," under penalty of criminal sanctions.   *Klaassen*, 7 F.4th at 593 (citing *Jacobson v. Massachusetts*, 197 U.S. 11 (1905)); *see also Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944); *Zucht v. King*, 260 U.S. 174, 177 (1922) (similar).   *Jacobson* is binding precedent demonstrating that "there can't be a constitutional problem with [requiring] vaccination against SARS-Cov-2."   *Klaassen*, 7 F.4th at 593; *see also Phillips v. City of N.Y.*, 775 F.3d 538, 542 (2d Cir. 2015).

Courts have "consistent[ly] use[d] . . . rational basis review to assess mandatory vaccination measures."   *Klaassen v. Trs. of Ind. Univ.*, --- F. Supp. 3d ----, 2021 WL 3073926, at *24 (N.D. Ind. July 18, 2021), *vacated due to mootness*, 24 F.4th 638 (7th Cir. 2022); *accord, e.g.*, *Workman v. Mingo Cnty. Bd. of Educ.*, 419 F. App'x 348, 355–56 (4th Cir. 2011) (table); *Doe #1-#14*, 2021 WL 5816632, at *11; *Williams v. Brown*, --- F. Supp. 3d ----, 2021 WL 4894264, at *8 (D. Or. Oct. 19, 2021); *Valdez*, 2021 WL 4145746, at *5; *Norris v. Stanley*, --- F. Supp. 3d ---, 2021 WL 3891615, at *1–*2 (W.D. Mich. Aug. 31, 2021); *Harris v. Univ. of Mass., Lowell*, --- F. Supp. 3d ----, 2021 WL 3848012, at *6 (D. Mass. Aug. 27, 2021), *appeal filed*, No. 21-1770 (1st Cir. Sept. 28, 2021); *Zucker*, 520 F. Supp. 3d at 249–53. And "[u]nder rational basis review,

courts must presume that the [measure] in question is valid and sustain it so long as [it] is rationally related to a legitimate state interest." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 583, 594 (5th Cir. 2014). The challenged measure "is presumed constitutional," and "[t]he burden is on the one attacking the [measure] to negative every conceivable basis which might support it." *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993) (quotation omitted).

EO 14043 is rationally related to the government's strong interest in promoting "the health and safety of the Federal workforce, and the health and safety of members of the public with whom they interact" during the COVID-19 pandemic. EO 14043 § 1; *see, e.g.*, *Church*, 2021 WL 5179215, at *19 ("Enjoining the Federal Employee Vaccine Mandate could risk sickening swathes of the civil service, prolonging remote work, impeding public access to government benefits and records, and slowing governmental programs."); *Rydie*, 2021 WL 5416545, at *5 (noting that the "effective administration of the federal government, in which Defendants and the public have a deep and abiding interest, would likely be hampered by an injunction").

There is likewise no question that the military's vaccination requirements satisfy this "highly deferential" review where courts look to see if there is "at least some arguable basis for" the challenged policy. *Doe #1-#14*, 2021 WL 5816632, at *11. The military's vaccine requirement is a "common sense" response to protect our Armed Forces against a deadly disease that has killed nearly a million Americans. *See* Order at 2.

F.   **The Challenged Vaccine Requirements Do Not Violate The Fourth Amendment (Count VIII).**

Plaintiffs allege that requiring employees to be vaccinated violates the Fourth

23

Amendment.  *See* 2AC ¶¶ 260-273.  The Court has already held that Plaintiffs' arguments "misconceive and trivialize the Fourth Amendment," Order at 25: vaccination is not a search because it is not performed "'to find something or to obtain information,'" *id.* at 25 (quoting *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012)), and not a seizure because it is not coercive, *id.* at 26.  There is no basis for the Court to hold otherwise now.

### G. Plaintiffs Fail To Plead A Free Exercise Or RFRA Claim (Counts IX–X).

Even if any plaintiff had standing to assert claims under the Free Exercise Clause and RFRA, those claims would fail.  Plaintiffs appear to bring a facial challenge to the military's requirements, arguing that the vaccine requirement fails to accommodate sincere religious belief where less restrictive means are available.  *See* 2AC ¶ 295.  But the military already has a process to provide exemptions for individuals who demonstrate a burden to a sincerely held religious belief and where a less restrictive means is available.  *See, e.g.*, Department of Defense Instruction (DoDI) 1300.17 "Religious Liberty in the Military Services"; Air Force Instruction (AFI) 48-110_IP, ¶ 2-6.b.(3)(a); AFI 52-201.  There is no redressable claim here because Oklahoma asks the Court to order the military to do what it *already* is doing.

Nor is there a basis to hold that EO 14043 is facially invalid.  The EO recognizes that federal employees may be legally entitled to exceptions, *see* EO 14043 §§ 1, 2, and Task Force Guidance explicitly indicates that employees may be entitled to an exception on the basis of "a sincerely held religious belief, practice, or observance," Task Force FAQs, *supra*.  As another court has held in rejecting a premature challenge to EO 14043, "Task Force Vaccine Guidance directs agencies to consider requests on a case-by-case basis," and there is "no basis on the current record to assume that the Federal Employee Plaintiffs' exemption requests will be

24

denied." *Church*, 2021 WL 5179215, at *9 (internal quotation marks omitted). A generally applicable policy that permits religious exceptions where legally required does not facially violate the First Amendment or RFRA. Finally, to the extent that individual plaintiffs bring an as-applied Free Exercise or RFRA challenge, those claims fail because no Plaintiff alleges that he has sought and been denied a religious exception.

## III.    CONCLUSION

The Court should dismiss the complaint in its entirety.

Dated: March 25, 2022                    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

CHRISTOPHER R. HALL
CARLOTTA P. WELLS
Assistant Directors

/s/ *Zachary A. Avallone*
STEVEN A. MYERS
ANDREW E. CARMICHAEL
Senior Trial Counsels
ZACHARY A. AVALLONE (DC Bar No. 1023361)
JOSEPH J. DEMOTT
COURTNEY D. ENLOW
CODY T. KNAPP
R. CHARLIE MERRITT
KENZIE K. OVERING
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 514-2705
E-mail: zachary.a.avallone@usdoj.gov

25

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

On March 25, 2022, I electronically submitted this document to the clerk of court for the U.S. District Court for the Western District of Oklahoma using the electronic case filing system of the Court.  I certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Zachary A. Avallone
ZACHARY A. AVALLONE
Trial Attorney
U.S. Department of Justice