**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

STATE OF OKLAHOMA, *et al.*,

*Plaintiffs*,

v.

JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*,

*Defendants*.

Case No: 5:21-cv-01136-F

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. The Complaint Sufficiently Pleads Standing .......... 2

A. The Complaint Sufficiently Pleads Oklahoma's Standing .......... 2

1. The Complaint Adequately Alleges The Elements Of Article III Standing .......... 2

2. The Court Has Already Correctly Ruled That Oklahoma Meets The Prudential Standing Requirements .......... 4

B. The Complaint Sufficiently Pleads The Individual Plaintiffs' Standing .......... 6

C. There Is No Definitive Exhaustion Requirement .......... 9

II. Plaintiffs' Claims Are Sufficiently Pled .......... 11

A. The Claims Alleging That Executive Order 14043 Exceeds the President's Statutory and Constitutional Authority Are Sufficiently Pled .......... 12

1. The Civil Service Statutes Do Not Preclude An Equitable Cause of Action Challenging The President's Authority And The Court Cannot Rule Out Plaintiffs' Claims On The Merits At This Stage .......... 12

2. Plaintiffs' APA Claim Is Sufficiently Pled .......... 15

3. The Structural and Power-Based Constitutional Claims Are Sufficiently Pled .......... 17

B. The Complaint Sufficiently Pleads Violations of the Individual Plaintiffs' Rights .......... 20

1. Plaintiffs Have Stated a Due Process Claim .......... 20

2. Plaintiffs Have Stated a Fourth Amendment Claim .......... 22

3. Plaintiffs Have Adequately Alleged Violations of RFRA and the Free Exercise Clause .......... 24

CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592 (1982) ............... 5

*Am. Fed'n of Gov't Emps. v. Hoffman*, 543 F.2d 930 (D.C. Cir. 1976)............................ 13

*Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87 (1983).............. 16

*Bard v. Seamons*, 507 F.2d 765 (10th Cir. 1974) .......................................................9, 10

*Berman v. Parker*, 348 U.S. 26 (1954)......................................................................... 20

*BST Holdings LLC v. OSHA*, 17 F.4th 604 (5th Cir. 2021) ............................................. 21

*California v. Greenwood*, 486 U.S. 35 (1988) ................................................................ 23

*Cellect, LLC v. Samsung Elecs. Co.*, No. 19-CV-00438-CMA-MEH, 2019 WL 10960257 (D. Colo. Sept. 17, 2019), *report and recommendation adopted*, 2019 WL 10960253 (D. Colo. Oct. 2, 2019).................................................. 11

*Chicago, B. & Q. Ry. Co. v. Illinois*, 200 U.S. 561 (1906) ............................................. 20

*Church v. Biden*, No. 21-2815, 2021 WL 5179215 (D.D.C. Nov. 8, 2021) ..................... 24

*City & Cnty. of S.F. v. Trump*, 897 F.3d 1225 (9th Cir. 2018)........................................... 3

*Colbruno v. Kessler*, 928 F.3d 1155 (10th Cir. 2019)...................................................... 23

*Cressman v. Thompson*, 719 F.3d 1139 (10th Cir. 2013) ............................................2, 11

*Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261 (1990)............................................... 21

*DHS v. Regents of Univ. of Cal.*, 140 S. Ct. 1891 (2020) ................................................ 17

*Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir. 2003) .......................................22, 23

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012) ................................................................... 8

*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872 (1990) ........................ 25

*Feds for Med. Freedom v. Biden,* No. 3:21-cv-356, 2022 WL 188329 (S.D. Tex. Jan. 21, 2022), *vacated and remanded on other grounds*, 30 F.4th 503 (5th Cir. 2022) ........................................................................ 14, 15, 17

*Feds for Medical Freedom v. Biden*, No. 22-40043, 2022 WL 1043909 (5th Cir. Apr. 7, 2022) ............................................................................................... 8

*Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.,* 561 U.S. 477 (2010) ........................................................................................................ 17

*Fulton v. City of Phila.,* 141 S. Ct. 1868 (2021).........................................................24, 25

*Gilmore v. Weatherford*, 694 F.3d 1160 (10th Cir. 2012)............................................9, 10

*Gov't of Man. v. Bernhardt*, 923 F.3d 173 (D.C. Cir. 2019)................................................ 4

**Cases (cont'd)** **Page(s)**

*Gundy v. United States*, 139 S. Ct. 2116 (2019)....................19

*Hawaii v. Trump*, 859 F.3d 741 (9th Cir. 2017), *vacated and remanded on other grounds*, 138 S. Ct. 377 (2017) ....................3

*Hodges v. Callaway*, 499 F.2d 417 (5th Cir. 1974)....................9

*Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179 (10th Cir. 2001)....................23

*In re MCP No. 165*, 20 F.4th 264 (6th Cir. 2021) ....................17

*Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082 (10th Cir. 2006)....................2

*Jacobsen v. Massachusetts*, 197 U.S. 11 (1905) ....................21

*Kentucky v. Biden*, 23 F.4th 585 (6th Cir. 2022)....................5, 19

*Kentucky v. Biden*, No. 3:21-cv-00055, 2021 WL 5587446 (E.D. Ky. Nov. 30, 2021) ....................19

*Lujan v. Def. of Wildlife*, 504 U.S. 555 (1992)....................3

*McDaniel v. Paty*, 435 U.S. 618 (1978) ....................25

*McKart v. United States*, 395 U.S. 185 (1969)....................10

*Michigan v. EPA*, 576 U.S. 743 (2015)....................16

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ....................16

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005) ....................16

*Nat'l Fed. of Ind. Bus. v. Sebelius*, 567 U.S. 519 (2012) ....................11

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., OSHA,* 142 S. Ct. 661 (2022)....................19

*Padilla v. Rumsfeld*, 352 F.3d 695 (2d Cir. 2003), *rev'd and remanded on other grounds*, 542 U.S. 426 (2004) ....................18

*Patterson v. Kentucky*, 97 U.S. 501 (1878) ....................20

*Petrella v. Brownback*, 697 F.3d 1285 (10th Cir. 2012) ....................2, 3

*Petrini v. Howard*, 918 F.2d 1482 (10th Cir. 1990)....................8

*PHH Corp. v. CFPB*, 881 F.3d 75 (D.C. Cir. 2018) ....................13

*Printz v. United States*, 521 U.S. 898 (1997) ....................20

*Safe Streets All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017)....................11

*Schmerber v. California*, 384 U.S. 757 (1966)....................22

**Cases (cont'd)** **Page(s)**

*Sierra Club v. Trump*, 963 F.3d 874 (9th Cir. 2020), *vacated and remanded*, 142 S. Ct. 46 (2021) ........ 12

*Skinner v. Ry. Lab. Exec. Ass'n*, 489 U.S. 602 (1989) ........ 22

*Steele v. United States*, 19 F.3d 531 (10th Cir. 1994) ........ 8

*Terry v. Ohio*, 392 U.S. 1 (1968) ........ 23

*Texas v. United States*, 524 F. Supp. 3d 598 (S.D. Tex. 2021) ........ 18

*Thornton v. Coffey*, 618 F.2d 686 (10th Cir. 1980) ........ 9

*Torres v. Madrid*, 141 S. Ct. 989 (2021) ........ 23

*U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022), *modified, Austin v. U.S. Navy Seals 1–26*, 142 S. Ct. 1301 (2022) ........ 7, 9, 10, 24

*United States v. Fausto*, 484 U.S. 439 (1988) ........ 8

*United States v. Jacobsen*, 466 U.S. 109 (1984) ........ 23

*United States v. Juarez-Escobar*, 25 F. Supp. 3d 774 (W.D. Pa. 2014) ........ 18

*United States v. Sup. Ct. of N.M.*, 839 F.3d 888 (10th Cir. 2016) ........ 6, 7

*United Tribe of Shawnee Indians v. U.S.*, 253 F.3d 543 (10th Cir. 2001) ........ 10

*Vacco v. Quill*, 521 U.S. 793 (1997) ........ 21

*Washington v. Harpe*r, 494 U.S. 210 (1990) ........ 21

*Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457 (2001) ........ 13

*Yin v. California*, 95 F.3d 864 (9th Cir.1996) ........ 23

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ........ 3, 12, 18

*Zucht v. King*, 260 U.S. 174 (1922) ........ 20

**Constitutional Provisions**

U.S. Const. amend. X ........ 20

U.S. Const. art. 1, § 8, cl. 16 ........ 11

U.S. Const. art. II, § 3 ........ 18

**Statutes**

5 U.S.C. § 706(2) ........ 16

5 U.S.C. § 706(2)(C) ........ 16

5 U.S.C. § 1101 *et seq.* ........ 1

5 U.S.C. § 3301 ........ 12, 13, 19

**Statutes (cont'd)** **Page(s)**

5 U.S.C. § 3302 ........................................ 12, 14, 19

5 U.S.C. § 7301 ........................................ 12, 14, 19

5 U.S.C. § 7512 ........................................ 8, 9

32 U.S.C. § 108 ........................................ 19

32 U.S.C. § 110 ........................................ 19

42 U.S.C. § 2000bb-1 ........................................ 24

**Other Authorities**

BLACK'S LAW DICTIONARY (6th ed. 1990) ........................................ 14

MERRIAM-WEBSTER DICTIONARY ........................................ 13, 15

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1986) ........................................ 14

## INTRODUCTION

Plaintiffs' Second Amended Complaint alleges that Defendants' vaccine mandates —embodied in Executive Order 14043 governing the federal workforce and policy directives from the Department of Defense—violate the sovereign interests of the State of Oklahoma and the rights of the individual plaintiffs. Defendants proffer a laundry list of objections to Plaintiffs' standing and arguments on the merits, resting in large part on this Court's order denying Plaintiffs' motion for a preliminary injunction. But Plaintiffs have a lighter burden in opposing Defendants' motion to dismiss than they had in seeking a preliminary injunction, and the Court's prior rulings do not *a fortiori* govern now. Under the well-settled standards that govern this motion, the Complaint withstands dismissal.

First, Plaintiffs have standing to maintain this suit. The Court has already recognized Oklahoma's injury-in-fact as well as its prudential standing. As shown below, the remaining elements of the standing analysis are manifestly met, including the State's *parens patriae* standing, as the Sixth Circuit held as to three states challenging the federal contractor mandate in a decision postdating the Court's preliminary injunction order. The individual plaintiffs have standing because they are injured by the vaccine mandates, and their claims are not precluded by the Civil Service Reform Act ("CSRA").

Defendants' attacks on the merits likewise do not warrant dismissal. Plaintiffs have sufficiently pled that the mandates lack constitutional and/or statutory authority and, contrary to Defendants' arguments, the CSRA, 5 U.S.C. § 1101 *et seq.*, does not prevent the Court from considering Plaintiffs' claims. The Complaint also sufficiently pleads a violation of the Administrative Procedure Act ("APA"), the Constitution's structural

provisions, and the individual plaintiffs' due process, Fourth Amendment, and religion-based rights. For these reasons, elaborated below, the Court should deny the motion.

## ARGUMENT

### I. The Complaint Sufficiently Pleads Standing

"When evaluating a plaintiff's standing at [the motion to dismiss] stage," the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Cressman v. Thompson*, 719 F.3d 1139, 1144 (10th Cir. 2013) (citing *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (en banc)) (brackets in original). At "the pleading stage," a plaintiff's "burden in establishing standing is lightened considerably." *Petrella v. Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012). Application of these "considerably" lighter standards than the "clear showing" the Court required at the preliminary injunction stage, PI Order at 5, makes clear that the Complaint sufficiently alleges the "three requirements of Article III standing—injury-in-fact, causation, and redressability." *Petrella*, 697 F.3d at 1293.

#### A. The Complaint Sufficiently Pleads Oklahoma's Standing

##### 1. The Complaint Adequately Alleges The Elements Of Article III Standing

The Court has already recognized, applying a more demanding standard, that Oklahoma has met the injury-in fact requirement, based on the "substantial risk of harm which would occur as a result of the involuntary separation of Guard members[.]" PI Order at 8. Defendants' argument for revisiting that determination—that the ruling relies on a "speculative chain of events," Br. 8—is misplaced at the motion to dismiss stage, since on a motion to dismiss the court "presume[s] the general allegations embrace those specific

facts that are necessary to support the claim." *Petrella*, 697 F.3d at 1292 (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992)). In any event, it is far from speculative that individual Guard members will be discharged if they do not become vaccinated: that is Defendants' stated policy.

The Complaint also readily satisfies the causation and redressability prongs of Article III standing. There is no doubt that, but for the vaccine mandates, Oklahoma would not be facing the "substantial risk of harm," PI Order, at 8, that will result from application of the mandates. And the requested relief—an injunction against enforcement of the mandates as requested in the Complaint—would undeniably provide relief against the risk of harm the Court has recognized.

Moreover, contrary to the Court's view that it cannot enjoin the President, *see* PI Order at 9 n.5, courts can and regularly do grant even permanent injunctive relief restraining enforcement of presidential executive orders, including when the President is among the defendants. *See, e.g., Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 589 (1952) (affirming grant of preliminary injunction against executive order directing government's seizure of steel mills because order was beyond president's powers); *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1231, 1245 (9th Cir. 2018) (affirming grant of permanent injunction against executive order allowing executive branch to withhold federal grant funds from sanctuary cities on grounds that Order violated separation of powers and Spending Clause). In any event, the Court may simply order relief against the defendants other than the President who have a role in enforcing the mandates. *See Hawaii v. Trump*, 859 F.3d 741, 788 (9th Cir. 2017) (affirming grant of preliminary injunction

against executive order suspending entry of nationals from certain countries, while carving out president, as "Plaintiffs' injuries can be redressed fully by injunctive relief against the remaining Defendants"), *vacated and remanded on other grounds*, 138 S. Ct. 377 (2017). And there is no such concern as to the military vaccine mandate issued by officials other than the President. Thus, the State's harm is fully redressable.

**2. The Court Has Already Correctly Ruled That Oklahoma Meets The Prudential Standing Requirements**

The Court has also previously ruled that Oklahoma "has satisfied the prudential requirements for standing with respect to [the] military vaccine mandate as applied to the Guard." PI Order at 9. The Court also held that "a state's concern for the health and well-being of its residents falls within the recognized category of quasi-sovereign interests which justifies *parens patriae* standing." *Id.* at 6. Nonetheless, the Court rejected the State's *parens patriae* standing on the grounds that a state lacks such standing as against the federal government, as the federal government "is presumed to represent the State's citizens." *See id*. at 6–7. But "the *Mellon* bar [that a state lacks standing as *parens patriae* to bring an action against the federal government] speaks to prudential, not Article III, standing." *Gov't of Man. v. Bernhardt*, 923 F.3d 173, 180 (D.C. Cir. 2019) (cited in PI Order at 7). Because it is a prudential doctrine, the *Mellon* bar does not, for example, bar a state from suing the federal government in its *parens patriae* capacity when "Congress may by statute authorize" such a suit. *Id.* The Court thus correctly recognized that the doctrine creates only a presumption.

In a decision issued after the Court's preliminary injunction order, the Sixth Circuit

held that the *Mellon* bar did not preclude three states' standing to sue the federal government over its contractor vaccine mandate, because the sovereign-and-quasi-sovereign interest theories the states advanced did not rely "on impermissible notions of third-party standing in which a state asserts in a purely vicarious manner the interests of its citizens." *Kentucky v. Biden*, 23 F.4th 585, 599 (6th Cir. 2022). "Rather, as the Supreme Court has recognized, these theories involve 'interest[s] apart from the interests of particular private parties.'" *Id*. (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 607 (1982), cited in PI Order at 6). There, as here, the states' sovereign and quasi-sovereign interests included that the federal contractor vaccine mandate was contrary to the states' vaccination policy; that it "intruded upon an area traditionally left to the states—the regulation of the public health of state citizens in general and the decision whether to mandate vaccination in particular;" and that it "threatens to damage each of the states' economies." *Kentucky v. Biden*, 23 F.4th at 599.

The same analysis applies here. Indeed, the Court has already recognized Oklahoma's sovereign and quasi-sovereign interests in protecting the public health of its citizens and against the economic harm of the mandates at issue. Moreover, given Plaintiffs' lighter burden in pleading standing at the motion to dismiss stage, and the fact that the Court has already ruled that the State has met the prudential standing requirements as to the military vaccine mandates, the *Mellon* presumption should not, at this stage, act

as a bar to Oklahoma's standing for the reasons well explained by the Sixth Circuit.[1]

### B. The Complaint Sufficiently Pleads The Individual Plaintiffs' Standing

Defendants are also wrong in arguing that the individual plaintiffs lack standing. Even if the Title 32 Plaintiffs are not subject to EO 14043, Plaintiffs challenge not only the Executive Order but also the military's vaccination requirements to which all individual plaintiffs are subject. *See* 2 Am. Compl. ¶ 14.

There is no merit to Defendants' argument that the Title 5 Plaintiffs' claims are unripe due to their not having alleged that they have requested and been denied a religious exemption. *See* Defs.' Br. in Support of Mot. to Dismiss ("Br.") 11. First, an effort to seek a religious exemption would have no bearing on any counts other than the RFRA and Free Exercise Clause claims. But even as to the plaintiffs asserting religion-based claims, Defendants' argument mistakenly suggests that ripeness turns on exhaustion-like conduct by Plaintiffs—they should have first sought an exemption. Br. 11–12. But that is not the test. "The requirements of standing and constitutional ripeness overlap; if an injury "is sufficiently 'imminent' to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied." *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 903 (10th Cir. 2016). The "prudential requirements" of ripeness then "turn on both the fitness of the issues for judicial decision and the hardship to the parties of withholding

---

[1] In addition, Plaintiffs' Guard affidavits at the preliminary injunction stage make a *prima facie* case rebutting the presumption that the federal mandates "represent the State's citizens." *See* ECF Nos. 28–32; *Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013) (when evaluating standing at motion to dismiss stage, court "must construe the statements made in the affidavits in the light most favorable to the [plaintiff]").

court consideration." *Id*. (internal quotation marks omitted).

Both elements are met here. The mandates are final and the likelihood of any plaintiff's obtaining an exemption is effectively illusory. The Navy, for example, "has not accommodated any religious request to abstain from any vaccination in seven years, and to date it has denied all religiously based claims for exemption from COVID-19 vaccination." *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 347 (5th Cir. 2022), *modified, Austin v. U.S. Navy Seals 1–26*, 142 S. Ct. 1301 (2022) (per curiam). According to data released three months ago, the entire military had granted only fifteen service members' religious exemption requests, out of sixteen thousand, and the Army had granted *no* such requests.[2] Under almost identical circumstances, the Fifth Circuit held that servicemembers' claims were justiciable even though the military had not yet rendered a decision on their accommodation requests. *See id.* at 347.

There is similarly no doubt of hardship absent the Court's consideration. If the mandates are enforced, Guardsmen will leave or be terminated from their jobs, careers, and livelihoods, with life-destroying results. 2 Am. Compl. ¶¶ 17–18; ECF Doc. Nos. 28–32 (Guard Member Declarations). In short, Plaintiffs' claims are not unripe.

Finally, the CSRA does not preclude any of the individual plaintiffs' standing. The CSRA created a "new framework for evaluating adverse personnel actions against [federal employees]," prescribing "the protections and remedies applicable to such action,

---

[2] *See* Oren Lieberman & Ellie Kaufman, *U.S. Military Has Approved Religious Exemptions to Vaccine Mandate for 15 Service Members Out of 16,000 Requests*, CNN (Feb. 17, 2022), https://www.cnn.com/2022/02/17/politics/us-military-religious-exemptions-covid-vaccine/index.html.

including the availability of administrative and judicial review." *United States v. Fausto*, 484 U.S. 439, 443 (1988) (internal quotation marks omitted). It "governs … major adverse actions taken against employees." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012); *see also, e.g.*, 5 U.S.C. § 7512 (covered actions include removal, suspension for more than 14 days, reduction in grade or pay, furlough for 30 days or less). Manifestly, in other words, the CSRA is a scheme through which federal employees may seek relief *after* they have been subjected to an adverse action.

Here, however, the individual plaintiffs are not challenging an adverse action after the fact, but across-the-board policies of requiring the Covid vaccine as a condition of *remaining* in their positions. As Judge Barksdale explained in *Feds for Medical Freedom v. Biden*, No. 22-40043, 2022 WL 1043909 (5th Cir. Apr. 7, 2022) ("*FMF II*"):

> … [EO 14043's] enactment … does not constitute an adverse action subject to CSRA. The case[, like the case at issue here,] is instead a pre-enforcement challenge to a government-wide policy, imposed by the President, that would affect the 2.1 million federal civilian workers … Enacting the EO and then requiring federal … employees who may later receive adverse action to seek relief now through CSRA would result in the very type of lengthy and haphazard results CSRA was enacted to prevent.

*Id.* at *7 (Barksdale, J., dissenting). Not surprisingly, Defendants' cited cases all involve relegating an employee to his or her CSRA remedies *after* the adverse action has occurred.[3] They do not support applying the CSRA to bar a pre-enforcement challenge to sweeping federal policies that are not among the covered actions identified in the statutory text. *See*

[3] *See Fausto*, 484 U.S. at 440 (suspension); *Steele v. United States*, 19 F.3d 531, 532 (10th Cir. 1994) (termination); *Petrini v. Howard*, 918 F.2d 1482, 1483 (10th Cir. 1990) (non-renewal of contract, retaliation), cited in Br. 11.

*e.g.*, 5 U.S.C. § 7512 (specifying covered actions).

### C. There Is No Definitive Exhaustion Requirement

Any lack of administrative exhaustion does not warrant dismissal. Congress has not required exhaustion; the usual factors that support an exhaustion requirement are not present here; and Plaintiffs have raised an issue of fact that exhaustion would be futile.

*Bard v. Seamons*, 507 F.2d 765, 770 (10th Cir. 1974), and *Thornton v. Coffey*, 618 F.2d 686, 692 (10th Cir. 1980), cited by Defendants, *see* Br. 13, do not support requiring exhaustion. First, both cases recognize that exhaustion is not necessary when it would be futile. *See Thornton*, 618 F.2d at 692 (quoting *Bard*, 507 F.2d at 769). As explained above, seeking relief through the military's review process is self-evidently futile because exemptions to the vaccine mandate are virtually never granted. Plaintiffs need not resort to a futile administrative review process. *See Gilmore v. Weatherford*, 694 F.3d 1160, 1169 (10th Cir. 2012) (futility exception to exhaustion applies when "resort to the administrative process would be 'clearly useless'"); *Hodges v. Callaway*, 499 F.2d 417, 420 (5th Cir. 1974) (noting that, in the military, "as with exhaustion of administrative remedies in other contexts, … only those remedies which provide a real opportunity for adequate relief need be exhausted."). Indeed, the Fifth Circuit has already recognized the futility of requiring servicemembers to go through the military's religious exemption process. *See U.S. Navy Seals 1-26,* 27 F.4th at 347. To the extent this Court questions whether pursuit of administrative relief would be futile, the proper course is to deny the motion to dismiss and allow Plaintiffs discovery to further develop their futility argument.

Furthermore, *Bard* recognizes that military exhaustion is a policy judgment, not

an "inflexible requirement." *Bard*, 507 F.2d at 769–770 (citing *McKart v. United States*, 395 U.S. 185 (1969)). That policy is based on the "twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Gilmore*, 694 F.3d at 1167 (quoting *United Tribe of Shawnee Indians v. U.S.*, 253 F.3d 543, 550 (10th Cir. 2001)). Neither purpose is served here.

First, no agency authority counsels in favor of exhaustion. Agency authority is premised on Congress's grant of "discretionary power" to the agency and an agency's "special expertise." *United Tribe of Shawnee Indians*, 253 F.3d at 550; s*ee also McKart*, 395 U.S. at 194 (administrative exhaustion premised on agency expertise). But agency expertise is not at play here, where Plaintiffs seek vindication of constitutional and statutory rights. *See U.S. Navy Seals 1-26,* 27 F.4th at 347 (declining to require exhaustion of vaccine mandate challenge raising constitutional and RFRA claims; "[c]ourts are specifically equipped to address RFRA claims and, by the same token, the issues are less suitable for administrative adjudication"). Here, as the Supreme Court put it in *McKart*, "[t]here is simply no overwhelming need for the court to have the agency finally resolve this question in the first instance[.]" *McKart*, 395 U.S. at 199.

In addition, requiring administrative exhaustion would not promote judicial efficiency, considering that the Court will in any event have to adjudicate the claims of the civilian plaintiffs. And, considering that the military grants virtually no exemption requests, the non-civilian plaintiffs would then be right back in court, resulting in piecemeal litigation and a greater, not lesser, expenditure of judicial resources.

## II. Plaintiffs' Claims Are Sufficiently Pled

Plaintiffs, moreover, have adequately satisfied the pleading requirements applicable to their claims. As the Tenth Circuit has explained, "[a]t the motion-to-dismiss stage, [courts] must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Cressman,* 719 F.3d at 1152–53 (internal quotation marks omitted). The court then "determine[s] whether the plaintiff has provided 'enough facts to state a claim to relief that is plausible on its face.'" *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (internal quotation marks omitted). "Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cellect, LLC v. Samsung Elecs. Co.*, No. 19-CV-00438-CMA-MEH, 2019 WL 10960257, at *4 (D. Colo. Sept. 17, 2019) (internal quotation marks omitted), *report and recommendation adopted*, 2019 WL 10960253 (D. Colo. Oct. 2, 2019). In light of these distinct standards that apply on a motion to dismiss, Defendants may not simply rest on the Court's determinations at the preliminary injunction stage, when the Court was assessing whether Plaintiffs had made the requisite evidentiary showing.

As an initial matter, contrary to Defendants' suggestion (Br. 14), the Constitution's Militia Clause, *see* U.S. Const. art. 1, § 8, cl. 16, provides no support—both because the Constitution confers on *Congress*—not the President—the authority to legislate as to the militia, and because a policy's conformity with one provision of higher law is no guarantee of its consistency with others. *See Nat'l Fed. of Ind. Bus. v. Sebelius*, 567 U.S. 519, 561 (2012); Br. 14, 21. Here, the Complaint adequately alleges that the mandates exceed

statutory grants of authority to the Executive and violate the Constitution.

### A. The Claims Alleging That Executive Order 14043 Exceeds the President's Statutory and Constitutional Authority Are Sufficiently Pled

#### 1. The Civil Service Statutes Do Not Preclude An Equitable Cause of Action Challenging The President's Authority And The Court Cannot Rule Out Plaintiffs' Claims On The Merits At This Stage

Defendants argue that, because Congress has not spelled out a private remedy under 5 U.S.C. §§ 3301, 3302, and 7301, Plaintiffs may not invoke these provisions in challenging the President's authority to issue Executive Order 14043. *See* Br. 15. The argument misses the mark here. As another Circuit has put it, "[e]quitable actions to enjoin *ultra vires* official conduct do not depend upon the availability of a statutory cause of action; instead, they seek a 'judge-made remedy' for injuries stemming from unauthorized government conduct, and they rest on the historic availability of equitable review." *Sierra Club v. Trump*, 963 F.3d 874, 890–91 (9th Cir. 2020), *vacated and remanded*, 142 S. Ct. 46 (2021) (vacating and remanding in light of "changed circumstances"). At the motion to dismiss stage, the Court cannot preclude as a matter of law the availability of an equitable basis for seeking relief under these statutes. That leaves only the question on the merits, which cannot be answered as a matter of law at this stage, as would be required for dismissal. And, contrary to Defendants' argument, the question is not whether Congress has precluded the President from issuing the mandate, *see* Br. 16, but whether the authority can be "fairly implied" from the relevant statutes. *Youngstown Sheet & Tube Co.*, 343 U.S. at 585.

5 U.S.C. § 3301. Defendants first argue that the vaccine mandate is within the President's authority to promote "'the efficiency of th[e] service.'" Br. 17. But the full text of this statute confers only a narrower authority: to "prescribe such regulations for the admission of individuals into the civil service in the executive branch as will best promote the efficiency of that service." 5 U.S.C. § 3301(1). On its face this provision pertains only to "the admission of individuals," not to rules for existing employees. *See Am. Fed'n of Gov't Emps. v. Hoffman*, 543 F.2d 930, 938 (D.C. Cir. 1976) (5 U.S.C. § 3301 extends only to "standards of admission").

Furthermore, "efficiency" refers to productivity and output. *See PHH Corp. v. CFPB*, 881 F.3d 75, 132 (D.C. Cir. 2018) (common understanding of "efficiency" always has referred to the "produc[tion]" of "some desired effect" or the "perform[ance] or accomplish[ment] [of] some task") (Griffith, J., concurring in judgment); *Efficiency*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/efficiency ("the ability to do something or produce something without wasting materials, time, or energy."). Forced mass vaccination with a vaccine that does not prevent federal workers from becoming infected with or transmitting Covid has little to do with their ability to function efficiently.[4] Defendants' *ipse dixit* that the President's "self-evidently reasonable" "judgment" that the vaccine mandate promotes efficiency, Br. 17, does not persuade otherwise.

[4] The Major Questions Doctrine reinforces this conclusion. Defendants seek to discover an "elephant[]" in a "mousehole[]." *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001). It is too much to presume that Congress, without speaking clearly, authorized this intrusion into the bodies of federal employees.

5 U.S.C. § 3302. For its part, Section 3302 starts out by empowering the President to "prescribe rules governing the competitive service" for career civil servants in the federal government. "That language sounds broad until one reads the next sentence: 'The rules shall provide, as nearly as conditions of good administration warrant, for … (1) necessary exceptions of positions from the competitive service; and (2) necessary exceptions from the provisions of sections 2951, 3304(a), 3321, 7202, and 7203 of this title.'" *Feds for Med. Freedom v. Biden,* No. 3:21-cv-356, 2022 WL 188329, at *5 (S.D. Tex. Jan. 21, 2022) ("*FMF I*"), *vacated and remanded on other grounds*, 30 F.4th 503 (5th Cir. 2022).

The best that can be said of Defendants' position is that Section 3302 concerns how the meritocratic federal competitive service system will function and operate. And, "[w]hen the cross-referenced provisions [of Section 3302] are checked, it becomes evident that the 'rules' the President may prescribe under [Section] 3302 are quite limited." *Id*. Those rules include possible Presidential exemptions regarding "certain reports and examinations" and rules concerning "marital and disability discrimination within the civil service," yet "not even a generous reading of the text provides authority for a vaccine mandate." *Id*.

5 U.S.C. § 7301. Section 7301 also fails to authorize the vaccine mandate. Its plain text states that "The President may prescribe regulations for the conduct of employees in the executive branch." 5 U.S.C. § 7301. But the vaccine mandate does not concern the "conduct" of federal employees. "Conduct" concerns activity,[5] and is very different from

[5] *Conduct*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 474 (1986) (defining conduct as "behavior in a particular situation or relation or on a specified occasion"); *Conduct*, BLACK'S LAW DICTIONARY 295 (6th ed. 1990) ("personal behavior; deportment; mode of action; any positive or negative act").

"status," which refers to a state of being.[6] Being vaccinated is not an activity.

Even "[a]ssuming that getting vaccinated is indeed 'conduct,' … under § 7301, it must be *workplace* conduct before the President may regulate it." *FMF I*, 2022 WL 188329, at *5. Section 7301 "authorizes the President to regulate the workplace conduct of executive-branch employees, but not their conduct *in general*." *Id.* (emphasis added). Being vaccinated, if conduct at all, is *general* conduct concerning the lives of employees, not specifically workplace conduct. As such, it is beyond the purview of Section 7301. *See also FMF I*, 2022 WL 188329, at *5 ("the Supreme Court [in *NFIB*] specifically held that COVID-19 is not a workplace risk, but rather a 'universal risk' that is 'no different from the day-to-day dangers that all face from crime, air pollution, or any number of communicable diseases'"). "Any broader reading would allow the President to prescribe, or proscribe, certain private behaviors by civilian federal workers outside the context of their employment," encroaching upon "traditional notion[s] of personal liberty." *Id.* "[T]he plain language of § 7301" clearly fails to "tolerate such a sweeping grant of power." *Id.*

**2. Plaintiffs' APA Claim Is Sufficiently Pled**

Plaintiffs respectfully ask this Court to reconsider its rejection of their APA claims on the ground that the President and SFWTF are not agencies within the meaning of the APA. PI Order at 22–23. Plaintiffs challenge not just EO 14043 but also DoD's directives that make up the military mandate; review of the APA claims is thus appropriate. And the vaccine mandate violates the APA for two reasons.

[6] *Status*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/status ("state or condition with respect to circumstances").

First, as discussed above, the mandate has no statutory authorization. Therefore it is "not in accordance with law" and is "in excess of statutory … authority." 5 U.S.C. § 706(2)(A), (C). Accordingly, this Court should "hold unlawful and set aside" the agency action. *Id.* Second, the mandate is arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). Defendants simply assert that their decisionmaking could not be arbitrary and capricious because of the deference afforded to administrative decisions. *See* Br. 20. But they engage in no analysis of why deference is appropriate here; they have therefore failed to show that dismissal is warranted. Indeed, Plaintiffs have shown that deference is *not* warranted because the agencies did not "examine the relevant data and articulate a satisfactory explanation for [their] action[s]." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983). The defendant agencies failed to act "within the bounds of reasoned decisionmaking." *Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc*., 462 U.S. 87, 105 (1983). Defendants' policies ignore costs to the States, a "centrally relevant factor when deciding whether to regulate." *Michigan v. EPA*, 576 U.S. 743, 752–53 (2015). Nor do they consider the natural immunity or many employees' ability to work remotely. *State Farm*, 463 U.S. at 43 (agency action arbitrary and capricious where it "entirely failed to consider an important aspect of the problem").

Defendants have also failed to explain their departure from the Executive Branch's prior policy "without any consideration whatsoever" of a less drastic or extreme measure. *State Farm*, 463 U.S. at 51. Such an "unexplained inconsistency" is fatal. *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs*., 545 U.S. 967, 981 (2005). Any *post hoc* rationalization would be insufficient. Reviewing courts evaluating agency action must

consider only "the grounds that the agency invoked when it took the [challenged] action." *DHS v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020) (internal quotation marks omitted). This claim, therefore, should not fall at the motion to dismiss stage.

**3. The Structural and Power-Based Constitutional Claims Are Sufficiently Pled**

Defendants further suggest that Article II, including the Vesting Clause, enables the President to issue the EO vaccine mandate. *See* Br. 16, 20–21. But they "point[] to no example of a previous chief executive invoking the power to impose medical procedures on civilian federal employees." *FMF I*, 2022 WL 188329, at *6; *see also In re MCP No. 165*, 20 F.4th 264, 289 (6th Cir. 2021) (Sutton, C.J., dissenting from denial of rehearing en banc). "A 'lack of historical precedent' tends to be the most 'telling indication' that no authority exists." *FMF I*, 2022 WL 188329, at *6. No President has ever even asserted such a power.

Defendants also take *Free Enterprise Fund v. Public Company Accounting Oversight Board,* 561 U.S. 477 (2010) ("*FEF*"), out of context. *See* Br. 16. That case "concern[ed] certain 'Officers of the United States who exercise significant authority … not federal employees in general." *FMF I*, 2022 WL 188329, at *6 (quoting *FEF*, 561 U.S. at 486). And the *FEF* court made explicit that even that grant of authority "is not without limit." 561 U.S. at 483. Yet Defendants propose no limiting principle to cabin their claimed authority. *See* Br. 16. "[H]owever extensive th[e] [federal government's] power is, [this vaccine] mandate exceeds it." *FMF I*, 2022 WL 188329, at *6.

Moreover, "[t]he President's power, if any, to issue the order must stem either from

an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co.*, 343 U.S. at 585. As there is no statute authorizing the President to issue a vaccine mandate, "if the President had authority to issue the order he did, it must be found in some provisions of the Constitution." *Id*. at 587.

But none of the constitutional provisions invoked by Defendants confer this power; Defendants instead ask the Court to imply that the power exists from *Congress's* powers with respect to the Militia and an unspecified Article II authority "to set internal employment policy for the Executive Branch." Br. 20–21. Even in a sphere of expansive executive power such as "the President's exercise of his authority as Commander-in-Chief," and in times of "grave national emergencies," the President "does not have the power to legislate." *Padilla v. Rumsfeld*, 352 F.3d 695, 714 (2d Cir. 2003), *rev'd and remanded on other grounds*, 542 U.S. 426 (2004). But the vaccine mandate has the essential character of legislation—a sweeping policy imposing a categorical rule on millions of people. As such, the mandate "cross[es] the line[] [and] constitutes legislation," *United States v. Juarez-Escobar*, 25 F. Supp. 3d 774, 786 (W.D. Pa. 2014) (Executive Action deferring deportation of four million illegal immigrants, which "effectively changes the United States' immigration policy," violated separation of powers and Take Care clause) (first brackets in original). Part and parcel of the structural prohibition on the executive branch engaging in lawmaking, the Constitution's mandate that the President "'take care that the laws be faithfully executed'" also "means that [he] is not permitted to dispense with … statutes." *Texas v. United States*, 524 F. Supp. 3d 598, 649 (S.D. Tex. 2021) (citations omitted); *see also* U.S. Const. art. II, § 3.

The related non-delegation doctrine also "bars Congress from transferring its legislative power to another branch of Government." *Gundy v. United States*, 139 S. Ct. 2116, 2121 (2019). Even with legislative acquiescence, the Executive may not act unilaterally on public health, which "should be left to Congress (or, more appropriately, the States)." *See Kentucky v. Biden*, No. 3:21-cv-00055, 2021 WL 5587446, at *8 (E.D. Ky. Nov. 30, 2021) (plaintiffs established likelihood of success on the merits on non-delegation claim against federal contractor vaccine mandate); *see also Kentucky v. Biden*, 23 F.4th at 607, n.14 (if government's interpretation of statute were correct—"that the President can do essentially whatever he wants so long as he determines it necessary to make federal contractors more 'economical and efficient'—then that *certainly* would present non-delegation concerns") (denying government's motion for stay) (emphasis in original).

In short, whether the delegation here is deemed rooted in 5 U.S.C. §§ 3301, 3302, or 7301 or in 32 U.S.C. §§ 108 or 110, Congress may not delegate away its powers on the issue as significant as a vaccine mandate, and certainly not through the generalized delegation upon which Defendants rely. Under Defendants' reading, the law would afford them "almost unlimited discretion—and certainly impose no 'specific restrictions' that 'meaningfully constrain'" them. *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., OSHA,* 142 S. Ct. 661, 669 (2022) (Gorsuch, J., concurring) (brackets omitted).

Finally, Plaintiffs have sufficiently pled that the mandate violates the Tenth Amendment. Defendants' overarching assertion—applicable to *all* of Plaintiffs' structural constitutional claims—that those claims fail because the States lack the constitutional

authority to "run[] the military and oversee[] the federal workforce" avoids the real issue. Br. 20. Plaintiffs are not trying to redirect any of those powers to the States, only to stop Defendants from encroaching on public health prerogatives that belong to the States—a far cry from taking over the military or federal bureaucracy.

Under the Tenth Amendment, all powers not delegated by the Constitution to the federal government are reserved for the States. U.S. Const. amend. X. To this end, the Supreme Court has recognized that "the police power of the States," involving public health, safety, and morals, "was not surrendered" when the Constitution conferred the commerce power on the federal government. *Patterson v. Kentucky*, 97 U.S. 501, 505 (1878); *see also Printz v. United States*, 521 U.S. 898, 919 (1997); *Berman v. Parker*, 348 U.S. 26, 32 (1954) (characterizing "public health" laws as a "traditional application of the police power"); *Chicago, B. & Q. Ry. Co. v. Illinois*, 200 U.S. 561, 592 (1906) ("[T]he police power of a State embraces … regulations designed to promote the public health.").

If there is any governmental power to mandate vaccinations at all, it belongs only to the states. *See*, *e.g.*, *Zucht v. King*, 260 U.S. 174, 176 (1922). Accordingly, Plaintiffs have stated a colorable claim that the federal mandates exceed the constitutional limitations attending federal power.

### B. The Complaint Sufficiently Pleads Violations of the Individual Plaintiffs' Rights

#### 1. Plaintiffs Have Stated a Due Process Claim

The Complaint also adequately pleads violations of the individual plaintiffs' rights, including their right to due process. Contrary to Defendants' assertions (Br. 21–22), the

Supreme Court has long recognized a due process right to bodily integrity, including a right to refuse medical treatment. *See Vacco v. Quill*, 521 U.S. 793, 803 n.7 (1997); *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990). And the Supreme Court has specifically recognized that a "forcible injection … into a nonconsenting person's body represents a substantial interference with that person's liberty." *Washington v. Harpe*r, 494 U.S. 210, 229 (1990). In light of these more recent precedents at odds with *Jacobsen v. Massachusetts*, 197 U.S. 11 (1905), *see* Br. 22, it cannot be said that Plaintiffs' due process claim fails as a matter of law.

Even if this Court applies rational basis review, moreover, Plaintiffs have alleged sufficient facts to show that the vaccine mandate is not rationally related to the government's interest in fighting the spread of COVID-19: namely, that the mandate does not account for natural immunity and that vaccinations do not prevent individuals from carrying and transmitting COVID-19. 2 Am. Compl. ¶ 256. This want of effectiveness raises a substantial factual issue that cannot be resolved on a motion to dismiss. Certainly there can be no rational interest in mass vaccination with a vaccine that does not prevent federal workers or Guard members from becoming infected with or transmitting COVID. Even the federal government has admitted that its vaccination requirements are a "workaround," based on the President's personal pique. *BST Holdings LLC v. OSHA*, 17 F.4th 604, 612 (5th Cir. 2021) ("After the President voiced his displeasure with the country's vaccination rate in September [2021], the Administration pored over the U.S. Code in search of authority, or a 'work-around,' for imposing a national vaccine mandate.") (cleaned up).

### 2. Plaintiffs Have Stated a Fourth Amendment Claim

The Complaint also sufficiently pleads a Fourth Amendment violation. The Fourth Amendment forbids "unreasonable searches and seizures" by the government. A "compelled intrusio[n] into the body," *Schmerber v. California*, 384 U.S. 757, 767–68 (1966), one "penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable" under the Fourth Amendment. *Skinner v. Ry. Lab. Exec. Ass'n*, 489 U.S. 602, 616 (1989). Such seizures "implicate[] privacy interests" and "concern[] … bodily integrity." *Id.* at 616–17. The vaccine mandates involve into-the-bloodstream intrusion, not just beneath-the-skin penetration. *A fortiori*, it pleads a plausible claim to allege that such a seizure is unreasonable.

The Tenth Circuit recognizes a Fourth Amendment interest in bodily integrity—and breaches of bodily integrity for non-investigatory purposes may constitute forbidden searches under the Fourth Amendment. For example, the Tenth Circuit held in *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1207 (10th Cir. 2003), that physical examinations of pre-school students were an unconstitutional search under the Fourth Amendment. In *Dubbs*, the government simply sought to provide healthcare to the child; the searches were done for "administrative" reasons and there was no criminal or investigatory purpose. *Id.* at 1205. Just as in this matter, the defendants there argued that the absence of criminal or other investigatory motives for a breach of bodily integrity removed the government's actions from the ambit of the Fourth Amendment. *Id.* at 1206. Yet the Tenth Circuit rejected such a "restrictive interpretation" of the Fourth Amendment. *Id.*

Specifically, the court observed that the Fourth Amendment "is expressed in passive

voice ('the right of the people to be secure in their persons … shall not be violated') without specifying or limiting the governmental actors who are to be constrained." *Id.* Put differently, "[t]he basic purpose of this Amendment … is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Id.* (quoting *Yin v. California*, 95 F.3d 864, 874 (9th Cir.1996) (O'Scannlain, J., concurring)). And "[i]t should go without saying that adequate consent is elemental to proper medical treatment." *Dubbs*, 336 F.3d at 1207.

Following this trend, the Tenth Circuit recently held that "the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy interests—a person's sense of security and individual dignity." *Colbruno v. Kessler*, 928 F.3d 1155, 1161–62 (10th Cir. 2019) (quoting *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001)). The vaccine mandate commits the very breach of bodily integrity the Tenth Circuit protects.

Contrary to Defendants' contention, the vaccine mandates are indisputably "coercive": a covered employee must comply or lose her livelihood. *See* Br. 23–24. The loss of liberty attendant to such coercion qualifies as a seizure. *See Torres v. Madrid*, 141 S. Ct. 989, 995 (2021); *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *California v. Greenwood*, 486 U.S. 35, 43 (1988); *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Construing the allegations in the light most favorable to Plaintiffs, any categorical denial that a seizure occurred is unwarranted.

**3. Plaintiffs Have Adequately Alleged Violations of RFRA and the Free Exercise Clause**

Plaintiffs have also adequately alleged the elements of a RFRA claim: the vaccine mandates (1) impose a substantial burden on religious exercise, and (2) are not the least restrictive means of furthering a compelling government interest. *See* 42 U.S.C. § 2000bb-1. The vaccine mandate requires Oklahomans, including some individual plaintiffs, to violate their religious beliefs by taking a vaccine or lose their employment. By any measure that pleads a substantial burden on religious beliefs. The military's exemption process at best raises a factual issue particularly because, as noted earlier, exemptions are virtually never granted. And Plaintiffs may also bring an as-applied challenge; they need not first allege they were denied a religious exemption. *See U.S. Navy Seals 1-26,* 27 F.4th at 347.

The sole case Defendants cite to argue for dismissal of Plaintiffs' RFRA claim, *Church v. Biden*, No. 21-2815, 2021 WL 5179215, at *7 (D.D.C. Nov. 8, 2021), is inapposite. *Church* was decided at the preliminary injunction stage, and thus required the court to consider whether plaintiffs had made a "clear showing" of likelihood of success on the merits. *Id.* at *7. The Court cannot on a motion to dismiss leapfrog to an ultimate decision on the merits of this factual issue before Plaintiffs even have an opportunity to develop a record.

Plaintiffs have also adequately alleged that the vaccine mandate violates the Free Exercise Clause because it is not neutral and generally applicable, and burdens religious exercise without being a narrowly tailored means to achieving interests of the highest order. *See Fulton v. City of Phila.,* 141 S. Ct. 1868, 1881 (2021). A law burdening religion is

subject to strict scrutiny under the Free Exercise Clause if it is not neutral and generally applicable. *See id.* at 1876. And a law is not generally applicable if it "invites the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Id*. (cleaned up) (quoting *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 884 (1990)).

As the Supreme Court held in *Fulton,* whether or not an exemption is granted, "[t]he [very] creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless of whether any exceptions have been given, because it invite[s] the government to decide which reasons for not complying with the policy are worthy of solicitude." *Id*. Here, the vaccine mandate allows for individualized exemptions at the sole discretion of the military. *See* 2 Am. Compl. Ex. 2 (stating that exemptions are granted in accordance with Defense Department policy). It is thus not neutral and generally applicable, and any burden it imposes on religious belief must therefore meet the demands of strict scrutiny. In addition, the government imposes a burden on religious belief when it compels individuals to choose between their religious exercise and benefits to which they would otherwise be entitled. *See McDaniel v. Paty*, 435 U.S. 618, 626–27 (1978) (plurality opinion). Thus, Plaintiffs' Free Exercise claim is more than sufficiently pled.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motion to dismiss in its entirety.

Respectfully submitted,

Zach West
*Acting Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
OF THE STATE OF OKLAHOMA
313 NE 21st Street
Oklahoma City, OK 73105
(405) 521-3921
zach.west@oag.ok.gov

/s/ Gene C. Schaerr
Gene C. Schaerr*
H. Christopher Bartolomucci*
Brian J. Field*
Riddhi Dasgupta*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com
cbartolomucci@schaerr-jaffe.com
sdasgupta@schaerr-jaffe.com
bfield@schaerr-jaffe.com
* Admitted *pro hac vice*

*Counsel for Plaintiffs The State of Oklahoma; J. Kevin Stitt, Governor of Oklahoma; John M. O'Connor, Attorney General of Oklahoma; and 10 Oklahoma Air National Guard Members*

Dated: May 16, 2022